**RECORD NO. 13-1644**

IN THE

# United States Court of Appeals
### FOR THE FOURTH CIRCUIT

JACQUELINE RICE,

*Plaintiff - Appellant,*

v.

ALPHA SECURITY, INCORPORATED;
BUDGET MOTELS, INCORPORATED, d/b/a Comfort Inn Alexandria;
WATERLOO HOSPITALITY, INCORPORATED,
d/b/a Comfort Inn Alexandria,

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

## RESPONSE BRIEF OF APPELLEES

Stephen W. Robinson
Nicholas D. SanFilippo
MCGUIREWOODS, LLP
Suite 1800
1750 Tysons Boulevard
Tysons Corner, VA 22102-3915
(703) 712-5469
srobinson@mcguirewoods.com
nsanfilippo@mcguirewoods.com

Douglas C. Meister
MYERS, RODBELL & ROSENBAUM, PA
Suite 400, Berkshire Building
6801 Kenilworth Avenue
Riverdate, MD 20737-1385
(301) 699-5800
dmeister@mrrlaw.net

*Counsel for Appellees*
*Budget Motels, Indorporated*
*and Waterloo Hospitality, Incorporated*

*Counsel for Appellee*
*Alpha Security, Incorporated*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1644__        Caption: __Jacqueline Rice v. Alpha Security, Inc. et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Alpha Security, Inc.__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Douglas C. Meister        Date:   May 17, 2013

Counsel for: Alpha Security, Inc.

## CERTIFICATE OF SERVICE
****************************

I certify that on ___May 17, 2013___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Mary Ann Kelly
The Law Offices of Mary Ann Kelly
3977 Chain Bridge Road, Ste 301
Fairfax VA 22030

Stephen Robinson
MCGUIREWOODS, LLP
1750 Tysons Blvd., Ste 1800
Tysons Corner VA 22102-4215

Michael J. Hoare
Michael J. Hoare, P.C.
1383 Potomac Ave., SE
Washington DC 20003

/s/ Douglas C. Meister               May 17, 2013
(signature)                        (date)

07/19/2012          - 2 -
SCC

### UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1644__     Caption: __Jacqueline Rice v. Alpha Security, Incorporated; Budget Motels,__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__BUDGET MOTELS, INCORPORATED, d/b/a Comfort Inn Alexandria; WATERLOO HOSPITALITY,__
(name of party/amicus)

__INCORPORATED, d/b/a Comfort Inn Alexandria__

who is __DEFENDANTS/APPELLEES__ , makes the following disclosure:
    (appellant/appellee/amicus)

1.     Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations? ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    Budget Motels Inc. is the Parent Corporation
    Waterloo Hospitality, Inc. is a subsidiary (100% owned by Budget Motels Inc.)

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
    If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ ~Stephen W. Robinson _____     Date: _____ May 31, 2013 _____

Counsel for: Appellees BMI and Waterloo Hosp. _____

## CERTIFICATE OF SERVICE
***************************

I certify that on _____ May 31, 2013 _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Mary Ann Kelly / Laws Office of Mary Ann Kelly
3977 Chain Bridge Rd., Ste. 301, Fairfax, VA 22030

Douglas Meister / Meyers,Rodbell & Rosenbaum PA
6801 Kenilworth Ave., Ste. 400, Riverdale Park,
Maryland 20737

Michael J. Hoare / Michael J. Hoare, PC
1383 Potomac Ave., SE
Washington, DC 20003

/s/ Stephen W. Robinson _____          _____ May 31, 2013 _____
        (signature)                                    (date)

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................ iii

I.    Statement of Issues Presented for Review .................................. 1

II.   Statement of the Case ................................................................ 1

    A.    Nature of the Case ............................................................ 1

    B.    Course of Proceedings ...................................................... 3

    C.    Decision Below ................................................................. 4

III.  Summary of Argument .............................................................. 5

IV.   Argument .................................................................................. 8

    A.    Standard of Review ........................................................... 8

    B.    Service was Improper and Occurred Outside One Year ............... 9

        1.    The Order Vacating the Nonsuit Order Made the
            Nonsuit Order a Legal Nullity and Returned the
            Status Quo Ante. ................................................. 11

        2.    Even if this Court Finds that the Service Period
            was Tolled, Service Occurred Outside One Year .............. 15

        3.    Rice Did Not Exercise Due Diligence to Serve
            the Complaint with One Year ............................... 16

    C.    Section 1448 Does Not Permit Service to Save Cases
        that Arrive Jurisprudentially Dead .............................. 17

        1.    Removal to Federal Court Did Not Provide Rice
            Additional Time to Serve .................................... 18

        2.    Rice Did Not Take a Nonsuit after Service and
            Prior to Removal .............................................. 23

i

3.    Had Rice Taken a Nonsuit and Re-Filed her Case, It Would be Jurisprudentially Dead Upon Re-Filing Due to the Requirement that a Title VII Suit be Filed within 90 Days of the Receipt of the Notice of Right to Sue ....................................................................... 24

4.    Rice's Arguments are Waived Because She Did Not Properly Re-Serve Her Complaint within the Time Permitted by Section 1448, Rule 4(m) and Local Rule 4(A) ............................................................... 26

D.    Virginia Procedure Does Not Burden Rice's Federal Civil Rights ......................................................................... 27

E.    The District Court Had No Personal Jurisdiction Over Defendants ........................................................................ 28

V.  Conclusion ..................................................................... 29

Request for Oral Argument ................................................... 29

Certificate of Compliance ..................................................... 31

Certificate of Service .......................................................... 32

Statutory Supplement ...........................................................A

# TABLE OF AUTHORITIES

## CASES

### UNITED STATES SUPREME COURT

Baldwin County Welcome Center v. Brown,
466 U.S. 147 (1984) ...............................................................24

Felder v. Casey, 487 U.S. 131 (1988) ............................................ 27, 28

Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.,
526 U.S. 344 (1999) ..............................................................9

### UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.,
733 F.2d 1087 (4th Cir. 1984) ...................................................9

Beaudett v. City of Hampton,
775 F.2d 1274 (4th Cir.1985) ................................................... 12

Ente Nazionale Per L'Energia Electtrica v. Baliwag Navigation, Inc.,
774 F.2d 648 (4th Cir. 1985) ................................................. 8, 17

Gilbane Building Co. v. Fed. Reserve Bank of Richmond,
80 F.3d 895 (4th Cir. 1996) ......................................................8

Koehler v. Dodwell, 152 F.3d 304 (4th Cir. 1998) .............................. 28

Patterson v. Whitlock, 392 Fed. Appx. 185 (4th Cir. 2010) ................... 23

Russell v. Gennari, 284 Fed. Appx. 98 (4th Cir. June 18, 2008) ............. 21

Stokes v. Pullen,
1997 U.S. App. LEXIS 25200 (4th Cir. Sept. 18, 1997) ...................... 25

Vieira v. Anderson (In re: Beach First Nat'l Bancshares),
702 F.3d 772 (4th Cir. 2012) .....................................................8

## OTHER UNITED STATES CIRCUIT COURTS

Action on Smoking & Health v. Civ. Aero. Bd.,
713 F.2d 795 (D.C. Cir. 1983) ............................................................ 11

Bradshaw v. Gen. Motors Corp., Fisher Body Div.,
805 F.2d 110 (3d Cir. 1986) .............................................................. 21

Brockmeyer v. May, 383 F.3d 798 (9th Cir. 2004) ................................9

Brown v. Hartshorne Pub. Sch. Dist. No. 1,
926 F.2d 959 (10th Cir. 1991) ........................................................... 25

Del Raine v. Carlson, 826 F.2d 698 (7th Cir. 1987) ..............................9

Freight Terminals, Inc. v. Ryder Sys., Inc.,
461 F.2d 1046 (5th Cir. 1972) ........................................................... 19

Garfield v. J.C. Nichols Real Estate, 57 F.3d 662 (8th Cir. 1995) ..................... 25

Lee v. City of Beaumont, 12 F.3d 933 (9th Cir. 1993) ......................... 21

Marshall v. Warwick, 155 F.3d 1027 (8th Cir. 1998) ....................19, 21

NLRB v. Goodless Bros. Elec. Co.,
285 F.3d 102 (1st Cir. 2002) ............................................................. 11

Osborne v. Sandoz Nutrition Corp., 67 F.3d 289 (1st Cir. 1995) ....................... 21

Price v. Digital Equip. Corp., 846 F.2d 1026 (5th Cir. 1988) ............................. 25

Romo v. Gulf Stream Coach, Inc.,
250 F.3d 1119 (7th Cir. 2001) .....................................................19, 21

Usatorres v. Marina Mercante Nicaraguenses, S.A.,
768 F.2d 1285 (11th Cir. 1985) ......................................................... 19

Wallace v. Microsoft Corp., 596 F.3d 703 (10th Cir. 2010) .............................. 21

Wilson v. Grumman Ohio Corp., 815 F.2d 26 (6th Cir. 1987) ........................... 25

Witherow v. Firestone Tire & Rubber Co.,
530 F.2d 160 (3d Cir. 1976) .................................................................. 21

**UNITED STATES DISTRICT COURTS**

Braxton v. Virginia Folding Box Co., 72 F.R.D. 124 (E.D. Va. 1976) ............... 25

Elkins v. Broome, 213 F.R.D. 273 (M.D.N.C. 2003) ............................................9

Hertel v. Mortg. Elec. Registration Sys.,
2012 U.S. Dist. LEXIS 143598 (W.D. Mich. Oct. 4, 2012) ................................ 23

Lawrence v. Hanson, 197 F. Supp. 2d 533 (W.D. Va. 2002) ............................. 20

McKinley v. Sanderson Farms, Inc.,
2006 U.S. Dist. LEXIS 16869 (E.D. La. Mar. 6, 2006) ..................................... 19

Morton v. Meagher, 171 F. Supp. 2d 611 (E.D. Va. 2001) ..........................21, 22

Neal v. Xerox Corp., 991 F. Supp. 494 (E.D. Va. 1998) ........................ 10, 24, 25

Patterson v. Brown,
2008 U.S. Dist. LEXIS 9312 (W.D.N.C. Jan. 23, 2008) .................................... 23

Russell v. Gennari, 2007 U.S. Dist. LEXIS 83771 (E.D. Va. 2007) ...... 21, 22, 23

**VIRGINIA SUPREME COURT**

Bowman v. Concepcion, 722 S.E.2d 260 (Va. 2012) ......................................... 10

Collins v. Shepard, 649 S.E.2d 672 (Va. 2007) .............................................12, 13

Frey v. Jefferson Home Builders, 467 S.E.2d 788 (Va. 1996) ....................12, 13

Gilbreath v. Brewster, 463 S.E.2d 836 (Va. 1995) ............................................. 11

Ward v. Ins. Co. of N. Am., 482 S.E.2d 795 (Va. 1997) ..................................... 15

Waterman v. Haverson, 540 S.E.2d 867 (Va. 2001) .......................................... 10

**VIRGINIA CIRCUIT COURTS**

Hernandez v. Awld, 73 Va. Cir. 497 (Loudoun County 2007) .......................... 16

**FEDERAL STATUTES AND RULES**

28 U.S.C. §1448 ....................................................... 1, 7, 8, 18, 19, 26, 27

42 U.S.C. § 2000e ........................................................................ 1, 24

Fed. R. Civ. P. 4 ....................................................................20, 26, 28

Fed. R. Civ. P. 12(b)(5) ............................................................... 9, 10

Fed. R. Civ. P. 15(a) ........................................................................3

Fed. R. Civ. P. 58 ............................................................................3

**VIRGINIA STATUTES AND RULES**

Va. Code Ann. § 1-210 ....................................................................14

Va. Code Ann. § 1-223 ....................................................................15

Va. Code Ann. § 1-13.3:1 ................................................................13

Va. Code Ann. § 8.01-275.1 ..................................1, 6, 9, 10, 12, 16, 20

Va. Code Ann. § 8.01-277 ....................................................11, 16, 20

Va. Code Ann. § 8.01-335 ..................................................................1

Va. Code Ann. § 8.01-380 ................................................................24

Va. Sup. Ct. R. 3:5 ................................................. 1, 6, 9, 10, 12, 20

## **TREATISES**

CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE
AND PROCEDURE, CIVIL 3D. § 1082 (West 2002 & Supp. 2003) ..........................19

<u>**BRIEF OF DEFENDANTS-APPELLEES**</u>

**I.    <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>**

(1) Whether service is fatally improper under Virginia Rule 3.5 and Virginia Code Annotated § 8.01-275.1 where Plaintiff failed to exercise due diligence to serve her Complaint within one year, took a nonsuit in Virginia state court one day before the expiration of the statutory one-year service period, the state court vacated the nonsuit order, upon Plaintiff's motion, seventeen days later, and Plaintiff perfected service one day after the nonsuit was vacated.

(2) Whether 28 U.S.C. §1448 retroactively extends the time limits prescribed by Virginia law to perfect service of process in cases where service was completed untimely before the action is removed to federal court, and, had the case not been removed, a Virginia state court would have dismissed the case.

**II.    <u>STATEMENT OF THE CASE</u>**

**A.    <u>Nature of the Case</u>**

After exhausting her administrative remedies, Plaintiff Jacqueline Rice ("Rice") filed her Complaint in Fairfax Circuit Court on August 15, 2011, asserting claims for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, <u>et</u> <u>seq.</u> (JA 10).

On July 27, 2012, Fairfax Circuit Court issued two Notices of Hearing Pursuant to Virginia Code § 8.01-335(D) ("Notices of Hearing") instructing Rice's

counsel of record to appear for a hearing on September 21, 2012 "to determine whether service has been obtained in a timely manner, whether due diligence has been exercised to obtain service, or whether this case should be discontinued for failure to effect service within one (1) year after commencement of this action." (JA 16-17).  The Notices of Hearing further instructed Rice's counsel of record "to present for entry any Dismissal Orders, non-Suit Orders, or other Final Orders as may be appropriate <u>before</u> any such hearing."  <u>Id.</u> (emphasis added).

On August 3, 2012, Rice filed an Unopposed Motion for Nonsuit.  (JA 18-19).  The Unopposed Motion for Nonsuit expressly noted that "[s]ervice has not yet been made on any Defendant."  <u>Id.</u>  On August 14, 2012, the Fairfax Circuit Court entered an Order granting Rice a nonsuit "as to all claims against all Defendants" (the "Nonsuit Order").  (JA 20-21).  On August 30, 2012, counsel for Rice appeared before a Calendar Control Judge for Fairfax Circuit Court seeking to "vacate order of nonsuit or suspend and set for emergency hearing by September 4, 2012."  (JA 22).  The same day, the Fairfax Circuit Court entered an Order vacating the Nonsuit Order and noting that "Plaintiff's suit with all claims against all Defendants is pending in this Court."  (JA 23-24)  On August 30, 2012, counsel for Rice also filed a hand-written request asking the Clerk of Fairfax Circuit Court to "prepare summons to serve all three defendants immediately, by private process

server." (JA 25-26). The following day, August 31, 2012, all three Defendants were served with process via private process server. (JA 28-30).

On September 6, 2012, Rice filed a motion to amend her original Complaint and noticed it for a hearing on September 14, 2012. (JA 31-46). However, Defendants Budget Motels, Inc. d/b/a Comfort Inn Alexandria and Waterloo Hospitality, Inc. d/b/a Comfort Inn Alexandria (collectively the "Comfort Inn Defendants"), with the consent of Defendant Alpha Security, Inc. ("Alpha Security" and, with the Comfort Inn Defendants, the "Defendants"), removed this action on September 13, 2012. (JA 47-49). Thereafter, Rice filed her Amended Complaint in the District Court on September 20, 2012, pursuant to Federal Rule of Civil Procedure 15(a). (JA 50). At no point after removal did Rice re-serve her Complaint, or serve her Amended Complaint, in the same manner as in cases originally filed in the District Court.

### B.    Course of Proceedings

On September 21, 2012, Alpha Security filed its Motion to Dismiss the Amended Complaint and on October 3, 2012 the Comfort Inn Defendants filed their Motion to Dismiss the Amended Complaint (collectively the "Motions to Dismiss"). (JA 63-65 and 66-68). On October 26, 2012, a hearing was held on Defendants' Motions to Dismiss. (JA 73-98). Later that day, the District Court entered an Order denying the Motions to Dismiss. (JA 99).

3

On December 19, 2012, the District Court entered an Order staying the October 26, 2012 Order, staying discovery in the case, and ordering the parties to appear before the court on January 11, 2013 for further argument. (JA 100). On January 11, 2013, the parties appeared before the District Court for further argument on the Motions to Dismiss. (JA 101-19).

On March 29, 2013, the District Court entered an Order granting Defendants' Motions to Dismiss with prejudice. (JA 120). The March 29, 2013 Order specifically noted that it "[did] not constitute a final judgment and the time for appeal would not run until the District Court issued a Memorandum Opinion and Judgment Order in accordance with Federal Rule of Civil Procedure 58." Id. On April 16, 2013, the District Court issued its Memorandum Opinion and Order. (JA 121-49). That same day, the District Court entered its Final Judgment Order in favor of Defendants against Rice. (JA 150).

Rice timely filed her Notice of Appeal on May 15, 2013. (JA 151-52).

### C.    __Decision Below__

In a comprehensive and well-reasoned 29-page opinion, the District Court properly granted the Defendants' Motions to Dismiss with prejudice. (JA 121-49). As an initial matter, the District Court correctly ruled that federal courts apply state procedural rules in evaluating the sufficiency of service of process occurring before removal. (JA 126). The District Court then correctly held that service of

process was untimely under Virginia law because it did not occur within one year from the filing of the Complaint (JA 127-29), a fact that was unchanged by the entry, and subsequent vacation, of the Nonsuit Order (JA 129-34), and because she failed to exercise due diligence to serve the Complaint within one year (JA 134-36).

The District Court next correctly ruled that "removal does not provide Plaintiff with extra time to perfect service where a fatal defect in completed service, requiring dismissal under Virginia law, occurs prior to removal." (JA 136-47).

The District Court then correctly held that Virginia's one-year service rule did not burden Rice's federal civil rights because Virginia law provided Rice with more time to serve her Complaint than she would have received under federal law had she filed her Complaint in federal court. (JA 147-48).

Finally, the District Court correctly held that it could not exercise personal jurisdiction over Defendants because Rice failed to timely serve them.  (JA 148).

## III.   <u>SUMMARY OF ARGUMENT</u>

The District Court properly dismissed Rice's Amended Complaint with prejudice.  In sum, the District Court's Order dismissing Rice's action should be affirmed because a plaintiff should not be permitted to use removal of an action from state court as a savings mechanism to revive an otherwise legally dead case –

especially where the reason the case is legally dead is the plaintiff's own delay and neglect. To rule otherwise would improperly place the stigma of such neglect on defendants and burden their ability to exercise their right to remove a case within the original jurisdiction of the federal courts to a federal court.

In this case, Rice filed her action more than four and a half years after the events in the Complaint are alleged to have occurred. Nevertheless, she waited 382 days to serve her Complaint without taking <u>any</u> efforts – let alone reasonably diligent ones – to serve her Complaint. This failure was in violation of Rule 3:5 of the Rules of the Supreme Court of Virginia and Virginia Code Annotated § 8.01-275.1. As such, Rice's case was jurisprudentially "dead" upon removal.

This fact is unaffected by Rice's taking of a nonsuit in state court, and the Circuit Court of Fairfax County's subsequent entry of an order vacating the Nonsuit Order because the vacation of the Nonsuit Order had the legal effect of rendering the nonsuit Order null and void and returned the case to the <u>status quo ante</u>. As a result, the sixteen days the case was stayed while the Nonsuit Order was in effect were effectively added back in to the case. Importantly, it was the actions of Rice, <u>ex parte</u>, before service of process, despite the fact that Rice's counsel knew who represented the Defendants from the administrative process, which caused every problem preventing her case from proceeding – the failure to serve or

act with due diligence within one year, the entry of the nonsuit order, the subsequent vacation thereof, and the untimely service thereafter.

The jurisprudentially "dead" nature of Rice's case also is unaffected by removal because, as the District Court correctly found, 28 U.S.C. § 1448 does not permit additional time for service where improper service completed prior to removal mandates dismissal under state law. Although there is a split among the districts within the Fourth Circuit as to this issue, the District Court correctly agreed with the decisions within this Circuit – and with the six other sister Circuits who have examined this issue – that hold that § 1448 cannot revive a procedurally dead case.

Rice concedes that this is the correct legal position, arguing only that her case was not jurisprudentially dead upon removal because she could have taken a nonsuit. Rice is incorrect for several reasons. First, Rice already exercised her first nonsuit prior to having it vacated. She points to no legal authority supporting the proposition that a Virginia state court plaintiff may take a nonsuit, have that order vacated, and then take a second first nonsuit. Moreover, due to the 90-day limitations period for Title VII claims, had she effectively taken a nonsuit, her subsequent action would have been time barred. This fact is unaffected by Virginia's six-month tolling period provided in the nonsuit statute because the

7

timeliness of a federal cause of action subject to a federal statute of limitations is unaffected by a state savings provision.

Finally, Rice's arguments that 28 U.S.C. § 1448 provided her with an additional 120 days to serve her case upon removal are waived because she failed to serve her Complaint (or Amended Complaint) by the end of the 120th day after removal in the manner provided by that Section.

For all these reasons, the Order of the District Court dismissing Rice's Amended Complaint with prejudice should be affirmed.

## IV.  ARGUMENT

### A.  STANDARD OF REVIEW.

This Court reviews the District Court's findings of fact for clear error, construing the evidence in the light most favorable to the Defendants, the prevailing party below.  Ente Nazionale Per L'Energia Electtrica v. Baliwag Navigation, Inc., 774 F.2d 648, 654 (4th Cir. 1985).  This Court reviews questions of law de novo.  Vieira v. Anderson (In re: Beach First Nat'l Bancshares), 702 F.3d 772, 776 (4th Cir. 2012).  Mixed questions of law and fact are reviewed "under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining de novo the legal conclusions derived from those facts."  Gilbane Building Co. v. Fed. Reserve Bank of Richmond, 80 F.3d 895, 905 (4th Cir. 1996).

**B.**     **SERVICE WAS IMPROPER AND OCCURRED OUTSIDE ONE YEAR.**

The District Court correctly ruled that service was improper and untimely because it occurred outside the one-year period provided by Va. Sup. Ct. R. 3:5 and Va. Code Ann. § 8.01-275.1. In doing so, the District Court correctly applied Virginia state law, as service was completed, though legally improper, prior to removal.

Where the sufficiency of service of process is challenged, the plaintiff bears the burden of establishing the validity of service on each defendant. See, e.g., Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004); Elkins v. Broome, 213 F.R.D. 273, 275 (M.D.N.C. 2003). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). The requirement of proper service of process "is not some mindless technicality." Del Raine v. Carlson, 826 F.2d 698, 704 (7th Cir. 1987). Rather, this Court has stated that "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984).

The Defendants moved the District Court to dismiss Rice's Amended Complaint under Rule 12(b)(5) of the Federal Rules of Civil Procedure, which

authorizes a defendant to move for dismissal due to insufficient service of process. Fed. R. Civ. P. 12(b)(5).

As noted above, the original Complaint was filed on August 15, 2011 and served on all Defendants on August 31, 2012. Pursuant to Va. Code, § 8.01-275.1:

> Service of process in an action or suit within twelve months of commencement of the action or suit against a defendant shall be timely as to that defendant. Service of process on a defendant more than twelve months after the suit or action was commenced shall be timely upon a finding by the court that the plaintiff exercised due diligence to have timely service made on the defendant.

Id. (emphasis added). Moreover, Rule 3:5(e) provides that "[n]o order, judgment or decree shall be entered against a defendant who was served with process more than one year after the institution of the action against that defendant unless the court finds as a fact that the plaintiff exercised due diligence to have timely service on that defendant." Thus, "there is no variance between Rule [3:5(e)] and Code § 8.01-275.1. Both of these provisions seek to promote a policy of timely prosecution of law suits and to avoid abuse of the judicial system." Waterman v. Haverson, 540 S.E.2d 867, 868 (Va. 2001). The Supreme Court of Virginia has held that, when service is not made within one year and there is no showing of due diligence, dismissal may be with prejudice.[1] Bowman v. Concepcion, 722 S.E.2d

---

[1] Due to the 90-day limitations period provided in Title VII for service of a lawsuit after receipt of a notice of right to sue, dismissal without prejudice in this case would have the identical effect as dismissal with prejudice, as any

260, 267 (Va. 2012) (affirming dismissal with prejudice for failure to serve within one year or exercise due diligence); Gilbreath v. Brewster, 463 S.E.2d 836, 837-38 (Va. 1995); see also Va. Code Ann. § 8.01-277(B).

In this case, there can be no question that Rice's service of the Complaint occurred outside one year, having occurred 382 days after she filed her Complaint. As such, the District Court's dismissal of the Amended Complaint with prejudice was proper. In fact, Rice concedes that service occurred outside one year and argues only that the period the case was stayed prior to the Nonsuit Order tolled the service period despite the fact that the Nonsuit Order was vacated and, in the alternative, that removal provided her with extra time to serve her Complaint. These arguments fail and the District Court should be affirmed.

### 1. The Order Vacating the Nonsuit Order Made the Nonsuit Order a Legal Nullity and Returned the Status Quo Ante.

The District Court correctly ruled that the order vacating the Nonsuit Order rendered the Nonsuit Order a legal nullity and returned the case to the status quo ante because, where an order is entered vacating a prior order, the prior order is rendered void. NLRB v. Goodless Bros. Elec. Co., 285 F.3d 102, 110 (1st Cir. 2002) ("vacate" means "to render inoperative; deprive of validity; void; annul" and order to vacate "wipes the slate clean"); see also Action on Smoking & Health v.

---

subsequent action would be time barred. See Neal v. Xerox Corp., 991 F. Supp. 494, 498 (E.D. Va. 1998). This issue is briefed in Section IV(C)(3), infra.

Civ. Aero. Bd., 713 F.2d 795, 797 (D.C. Cir. 1983) ("To vacate, as the parties should well know, means to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside. Thus, by vacating or rescinding the recessions proposed by ER-1245, the judgment of this court had the effect of reinstating the rules previously in force.").

It was the actions of Plaintiff that caused this predicament, as she failed to make any attempt to serve the Complaint within one year, took her first nonsuit and then, assumedly in an effort to avoid the preclusive effects of the 90-day limitations period for filing a Title VII suit or the modest expense of a new suit, or both, decided to vacate the Nonsuit Order without considering the consequences of her actions.  Importantly, Plaintiff is represented by experienced counsel in this case.  It is not as though Plaintiff is pro se and should be given latitude from being "tripped up in court on technical niceties."  See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.1985).

Plaintiff's deficiencies in timely serving her Complaint are not saved by the Supreme Court of Virginia's holdings in Collins v. Shepard, 649 S.E.2d 672 (Va. 2007) and Frey v. Jefferson Home Builders, 467 S.E.2d 788 (Va. 1996).  As an initial matter, Defendants do not argue that failure to serve a Complaint within one year pursuant to Virginia Supreme Court Rule 3:5(e) and Virginia Code § 8.01-275.1 requires a trial court to dismiss the case in all instances, as Plaintiff seems to

imply. It is clear that the <u>Frey</u> court carved out an exception to this rule. However, it is equally clear that the <u>Frey</u> exception is wholly inapplicable to the facts of the record before this Court. In fact, Plaintiff's arguments appear to be premised on this Court ignoring the actual record in this case.

Rather, Appellant would like this Court to decide this appeal based on the record she wishes she had created – one in which perhaps she had not waited so late to begin to think about service of process – and on August 3, 2012, rather than filing a Motion for a Nonsuit, had requested that a Summons be issued and proceeded to effect service of process. Appellant asks the Court to forgive her lack of attention to her case and ignore the Rules of the Supreme Court of Virginia and Virginia Code section that mandate the dismissal of her case. Neither law nor equity requires so extraordinary a result.

In <u>Frey</u>, the Supreme Court of Virginia held that, where the last day of the one-calendar year period for service fell on a legal holiday, the clerk's office was closed, and the plaintiff could not obtain summons, service was permitted on the following day that was not a Saturday, Sunday or legal holiday. 467 S.E.2d at 789-90. In so holding, the Supreme Court of Virginia relied on a statutory exception providing for an extension of service "[w]hen the last day for performing an act during the course of a judicial proceeding falls on a Saturday, Sunday, legal holiday, or any day or part of a day on which the clerk's office is closed as

13

authorized by an act of the General Assembly . . . ."  See Frey, 467 S.E.2d at 790; Va. Code Ann. § 1-210 (2010) (current statute capturing language of § 1-13.3:1). It is clear upon a reading of the statute that it, and thus Frey, has no application to this case because none of the dates at issue here – August 14, 15, 30 and 31, 2012 – were a Saturday, Sunday, legal holiday, or day on which the clerk's office is closed as authorized by the General Assembly.  Thus, in order for this Court to find the Frey exception applicable, it would first have to engage in a legal fiction. Moreover, it would have to do so to save the Plaintiff from her own negligence.

Equally unavailing is Plaintiff's citation to Collins v. Shepard, 649 S.E.2d 672 (Va. 2007).  As the District Court noted, "[i]n that case, the Circuit Court of the City of Norfolk's dismissed a case for defective service pursuant to a local rule that permitted courts to dismiss cases sua sponte where service had not been effected within one year of filing the complaint."  (JA 132) (citing Collins, 649 S.E.2d at 676).  It was the sua sponte nature of the dismissal that the Supreme Court of Virginia found offensive because it conflicted with the plaintiff's substantive right to take a nonsuit.  649 S.E.2d at 677-78.  As the District Court correctly held, Collins is inapplicable to the current case because no analogous local rule is in effect and dismissal did not interfere with Plaintiff's right to take a nonsuit.

14

Plaintiff asks this Court to find both that her taking of a nonsuit tolled the service period <u>and</u> that she did not take the first nonsuit, and therefore had a second first nonsuit available. This position is logically inconsistent. Moreover, as discussed in Section IV(C)(2), <u>infra</u>, Plaintiff has cited no authority for the proposition that a Virginia state court would have permitted her to take another nonsuit after she took her first nonsuit and had the Nonsuit Order vacated. In any event, the issue is moot because Plaintiff did not, in fact, take or attempt to take a second nonsuit between the time she had the Nonsuit Order vacated and the time the case was removed, a period of approximately two weeks.

Plaintiff should bear the burden of her failure to prosecute her case in a timely manner and the District Court should be affirmed.

### 2. Even if this Court Finds that the Service Period was Tolled, Service Occurred Outside One Year.

Having filed the original Complaint on August 15, 2011, Rice was required to serve the Defendants by the end of the day on August 14, 2012, or within one calendar year. <u>See</u> <u>Ward v. Ins. Co. of N. Am.</u>, 482 S.E.2d 795, 797 (Va. 1997) ("we hold that courts in this Commonwealth must utilize calendar years and not '365-day periods' when computing whether a statute of limitations has expired"); Va. Code Ann § 1-223 ("'Month' means a calendar month and 'year' means a calendar year."). Instead, Rice moved for a nonsuit and a Nonsuit Order was entered on August 14, 2012. Instead of filing a new action, Rice chose to have the

Nonsuit Order vacated on August 30, 2012. This had the effect of returning the status quo ante,

A calendar year runs from a date certain through the date just prior to that date in the following year (i.e., January 1 to December 31). Thus, the last date that Rice could have served her Complaint was August 14, 2012, the date of the entry of the Nonsuit Order. Assuming arguendo this Court were to overrule the District Court and find that the time the case was stayed due to the effect of the Nonsuit Order tolled Virginia's one-year service rule and found that August 14, 2013 – the date of the Nonsuit Order – and August 30, 2013 – the date of the entry of the Order vacating the Nonsuit Order – were effectively the same day for the purposes of service, Rice's service was still untimely as it did not occur until the following day – August 31, 2013. For this independent reason, the ruling of the District Court dismissing the Amended Complaint because Rice's service of process was untimely and improper should be affirmed.

### 3. Rice Did Not Exercise Due Diligence to Serve the Complaint with One Year.

The District Court correctly found that Rice failed to exercise due diligence to serve the original Complaint within one year. Frankly, Rice has never even argued that she did. Moreover, Rice can make no such showing. See Hernandez v. Awld, 73 Va. Cir. 497, 500 (Loudoun County 2007) ("One defective attempt at service is not the due diligence required by Rule 3:5(e) or Va. Code § 8.01-

275.1."); See Va. Code Ann. § 8.01-277(B).  The finding of the District Court is a factual finding that is due deference upon review.  Ente Nazionale Per L'Energia Electtrica, 774 F.2d at 654.

This Court should affirm the District Court in this regard.  Rice made no effort to serve the Defendants within one year and was able to serve every Defendant in this case the very next day after summonses were issued.  Rice's opening brief appears to concede this point, as she has made no argument that she exercised due diligence within one year.  As Rice failed to serve her Complaint within one year and failed to exercise due diligence to do so, the District Court should be affirmed.

## C.  SECTION 1448 DOES NOT PERMIT SERVICE TO SAVE CASES THAT ARRIVE JURISPRUDENTIALLY DEAD.

The District Court correctly ruled that removal did not provide Rice with additional time to serve her Complaint because the case arrived to federal court jurisprudentially "dead."  Rice's arguments that the District Court was incorrect because she could have taken a nonsuit prior to removal, even if true,[2] are

---

[2]    It is not clear that Plaintiff is correct in this regard.  Plaintiff cites no authority that a Virginia plaintiff may take a first nonsuit, have the order granting the nonsuit vacated, and then take a second first nonsuit.  While it is clear that vacating the first order renders it a legal nullity, it is less clear whether Virginia state courts, as a practical matter, would permit a Plaintiff to take a second first nonsuit, without leave of court, after having her first nonsuit order vacated ex parte.  It appears that no court has ever addressed the issue.  The District Court below found that Plaintiff had used her first nonsuit.  Defendants submit that this is

academic because (1) Rice <u>did not</u> take a nonsuit between the time she had the Nonsuit Order vacated on August 30, 2012 and the case was removed on September 13, 2012, and (2) had Rice taken a nonsuit, her subsequent case would have been time barred by operation of Title VII's 90-day limitations period for filing a Title VII suit. Finally, Rice's arguments that 28 U.S.C. § 1448 provided her with an additional 120 days to serve her case upon removal are moot because she failed to serve her Complaint (or Amended Complaint) by the end of the 120th day after removal (January 11, 2013) in the manner provided by that Section, despite the fact that the District Court's short order dismissing her Amended Complaint was not entered until March 29, 2013.

### 1. Removal to Federal Court Did Not Provide Rice Additional Time to Serve.

This Court should affirm the District Court and refuse to apply 28 U.S.C. § 1448 to save Rice's Amended Complaint because service in this case was completed prior to removal in a manner that is expressly prohibited by both the Virginia Code and the Virginia Rules of Civil Procedure and, thus, arrived in the District Court jurisprudentially "dead."

---

the correct decision, as it prevents future plaintiffs from effecting what otherwise effectively would be a unilateral stay of the case by continually taking first nonsuits followed by orders vacating the nonsuits.

Section 1448 provides:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.
>
> This section shall not deprive any defendant upon whom process is served after removal of his right to move to remand the case.

28 U.S.C. § 1448.  Contrary to Rice's assertion below, and as the District Court correctly found, Section 1448 does not require application of federal law to service of process made while in state court prior to removal.  Rather, "[t]he district court must look to state law to ascertain whether service was properly made prior to removal."  Freight Terminals, Inc. v. Ryder Sys., Inc., 461 F.2d 1046, 1052 (5th Cir. 1972); see also McKinley v. Sanderson Farms, Inc., 2006 U.S. Dist. LEXIS 16869, at *5 (E.D. La. Mar. 6, 2006) ("The state law pursuant to which service was made governs this Court's determination of the sufficiency of service made prior to removal."); Romo v. Gulf Stream Coach, Inc., 250 F.3d 1119, 1122 (7th Cir. 2001) (applying Illinois law mandating dismissal due to lack of diligence in effecting service of process); Marshall v. Warwick, 155 F.3d 1027, 1033 (8th Cir. 1998) (applying South Dakota law); Usatorres v. Marina Mercante Nicaraguenses, S.A., 768 F.2d 1285 (11th Cir. 1985); see generally CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL 3D. § 1082 (West 2002 &

Supp. 2003) (defendant may obtain a dismissal for lack of jurisdiction after removal where the original service in state court was improper and perfect service under Fed. R. Civ. P. 4 is impossible).

In this case, service was complete prior to removal in a manner expressly prohibited by Virginia law. It is not that service had not been perfected or was merely defective, prior to removal. Rather, service had been perfected without defect. However, service was conducted in a manner that made it expressly untimely at the time it was performed, more than one year having elapsed since the filing of the action. Va. Code Ann. § 8.01-275.1. As such, Rice's case was jurisprudentially dead from the beginning, as service could not be remedied under state law, and dismissal with prejudice was required. See Id.; Va. Code Ann. § 8.01-277(B) ("Upon finding that the plaintiff did not exercise due diligence to have timely service and sustaining the motion to dismiss, the court shall dismiss the action with prejudice." (emphasis added)); Va. Sup. Ct. R. 3:5(e) ("No order, judgment or decree shall be entered against a defendant who was served with process more than one year after the institution of the action against that defendant unless the court finds as a fact that the plaintiff exercised due diligence to have timely service on that defendant.").

Rice argues that this Court should overrule the District Court, extend the holding in Lawrence v. Hanson, 197 F. Supp. 2d 533 (W.D. Va. 2002) and find

that Rice may avail herself of Section 1448's saving clause. This argument buckles under the great weight of the case law contrary to <u>Lawrence</u>. <u>See, e.g.</u>, <u>Wallace v. Microsoft Corp.</u>, 596 F.3d 703,707 n.2 (10th Cir. 2010); <u>Romo v. Gulf Stream Coach, Inc.</u>, 250 F.3d 1119, 1122 (7th Cir. 2001); <u>Marshall v. Warwick</u>, 155 F.3d 1027, 1033 (8th Cir. 1998) ("We do not believe that [§ 1448] can 'resurrect' a removed diversity case which would have been dismissed as time-barred had it remained in state court."); <u>Osborne v. Sandoz Nutrition Corp.</u>, 67 F.3d 289 (1st Cir. 1995) (unpublished table opinion); <u>Witherow v. Firestone Tire & Rubber Co.</u>, 530 F.2d 160, 168 (3d Cir. 1976) <u>superseded by statute</u>, Judicial Improvements Act of 1985, Pub. L. No. 99-336, 100 Stat. 633, <u>as recognized in</u> <u>Bradshaw v. Gen. Motors Corp., Fisher Body Div.</u>, 805 F.2d 110, 112 & n.2 (3d Cir. 1986); <u>Morton v. Meagher</u>, 171 F. Supp. 2d 611 (E.D. Va. 2001); <u>Russell v. Gennari</u>, 2007 U.S. Dist. LEXIS 83771 (E.D. Va. 2007) <u>aff'd</u> 284 Fed. Appx. 98 (4th Cir. June 18, 2008); <u>cf.</u> <u>Lee v. City of Beaumont</u>, 12 F.3d 933, 937 (9th Cir. 1993) ("[Federal Rule of Civil Procedure] 4(j) does not apply to service of process which was attempted prior to removal; the sufficiency of service in this case is determined according to state law because service of process occurred before removal.").

   In <u>Morton</u>, as here, service was completed prior to removal but after the expiration of Virginia's one-year service period. 171 F. Supp. 2d at 613. The

court held, "[o]n this record, service was not effected within the time frame prescribed by state statute and, therefore, the case was 'dead' before it was removed to federal court." Id. at 615. As such, "a Virginia state court would have dismissed the case had it not been removed." Id. Notably, the court stated that "§ 1448 does not retroactively extend the time limits prescribed by state law in cases where service was untimely before the action is removed to federal court." Id. The court further held, "[n]othing in the text, or the legislative history, of § 1448 permits it to serve as a phoenix for the ashes of an action that could not have survived in the state courts." Id.

Similarly, in Russell, the court dismissed a Complaint for failure to comply with state procedural rules prior to removal, noting that "'it is contrary to the correlative doctrines of comity and federalism to allow a case that would be dead under state law to be revived upon removal.'" Russell, 2007 U.S. Dist. LEXIS 83771, at *11-14 (quoting Morton, 171 F. Supp. 2d at 613-14). In doing so, the court noted that, "[a]s Plaintiff's complaint is invalid under Virginia law, and would be dismissed in Virginia Circuit court, it should be dismissed here as well." Id. at *14. Thus, the court dismissed the plaintiff's complaint. Id. In an unpublished table opinion, this Court affirmed. Russell v. Gennari, 284 Fed. Appx. 98, 98 (4th Cir. 1998).

The common string that binds these cases is that, as here, they were "already jurisprudentially 'dead' by the time [they were] removed to federal court, and section 1448 could not be used to revive" them because they "would have been subject to dismissal had [they] remained in the state court."  Patterson v. Brown, 2008 U.S. Dist. LEXIS 9312, at *10-11 (W.D.N.C. Jan. 23, 2008) dismissed in part, rev'd in part on other grounds, and remanded, sub nom., Patterson v. Whitlock, 392 Fed. Appx. 185 (4th Cir. 2010) (per curiam).  That is, "the procedural flaw arose prior to removal, and is thus governed by state law." Russell, 2007 U.S. Dist. LEXIS 83771, at *13.

This Court should "follow the myriad of decisions holding that § 1448 cannot revive an action deemed dismissed under state law," Hertel v. Mortg. Elec. Registration Sys., 2012 U.S. Dist. LEXIS 143598, 10-12 (W.D. Mich. Oct. 4, 2012), including the six other sister circuits that have examined the issue, and affirm the District Court.

## 2. Rice Did Not Take a Nonsuit after Service and Prior to Removal.

Rice attempts to argue that "[u]nder Virginia law the service period can, and should, be extended beyond one year in some circumstances, even if the plaintiff did not show due diligence in trying to serve within the year" by arguing that she still had the right to take a nonsuit.  Rice's arguments regarding losing her nonsuit are either moot or waived.  Rice simply did not take a second nonsuit – or a second

23

first nonsuit – after the order vacating the Nonsuit Order was entered and before the case was removed, despite having thirteen days to do so.  Notably, Rice cites no authority in support of her position that a Virginia state court would have permitted her to take a nonsuit after taking, and vacating, her first nonsuit.  Rice argues that she would have been permitted to do so as a result of the fact that the order vacating the Nonsuit Order made the nonsuit Order a legal nullity.  But her conclusion is a <u>non</u> <u>sequitur</u>.  A Virginia state court just as easily could have found that she used her first nonsuit, chose to have it vacated, and would not be permitted to take another nonsuit without leave of court.  In any event, this appears to be an issue of first impression and this Court should not rely on Rice's bold assertion as a basis for overruling the District Court.

> **3.    Had Rice Taken a Nonsuit and Re-Filed her Case, It Would be Jurisprudentially Dead Upon Re-Filing Due to the Requirement that a Title VII Suit be Filed within 90 Days of the Receipt of the Notice of Right to Sue.**

Rice argues that, had she been permitted to take a second first nonsuit, she could have re-filed her action within six months pursuant to Virginia Code § 8.01-380.  While this is true, had she done so, the new action would have been time barred.  Title VII requires a party to file an action within ninety days of receipt of a Right to Sue letter from the EEOC. 42 U.S.C.A. § 2000e-5(f)(1); <u>Baldwin County Welcome Center v. Brown</u>, 466 U.S. 147, 149-50 (1984).  "Civil suits may not be

brought, however, after the expiration of the 90 day period." <u>Neal v. Xerox Corp.</u>, 991 F. Supp. 494, 498 (E.D. Va. 1998).

Moreover, "[w]here an action is voluntarily dismissed without prejudice, the parties are left as if the action had never been brought. Consequently, the statute of limitations is not tolled by filing an action that is subsequently voluntarily dismissed. These principles have been applied to Title VII actions." <u>Id.</u> (citing <u>Braxton v. Virginia Folding Box Co.</u>, 72 F.R.D. 124, 126 (E.D. Va. 1976)); <u>see also</u> <u>Garfield v. J.C. Nichols Real Estate</u>, 57 F.3d 662, 666 (8th Cir. 1995), <u>cert. denied</u>, 516 U.S. 944 (1995); <u>Brown v. Hartshorne Pub. Sch. Dist. No. 1</u>, 926 F.2d 959, 961 (10th Cir. 1991); <u>Price v. Digital Equip. Corp.</u>, 846 F.2d 1026, 1027 (5th Cir. 1988); <u>Wilson v. Grumman Ohio Corp.</u>, 815 F.2d 26, 28 (6th Cir. 1987); <u>Stokes v. Pullen</u>, 1997 U.S. App. LEXIS 25200, at *1-2 (4th Cir. Sept. 18, 1997) ("While conceding that her complaint was filed outside the statutory time period, Appellant asserts that, under Virginia's savings statute, the voluntary dismissal of a previous suit tolled the statute of limitations and permitted her six months from the date of dismissal to file her current action. However, Appellant is mistaken." (footnote omitted)).

On August 15, 2011, Rice "timely file[d] this action after exhausting her administrative remedies and after the U.S. Equal Employment Opportunity Commission" issued its Right to Sue Letter. (JA 11). She did not serve her

Complaint for over a year.  (JA 28-30).  Had she taken a nonsuit and then re-filed, her new case would have been barred by Title VII's 90-day limitations period for filing a Title VII suit.  As such, her arguments that she could have taken a nonsuit and cured her untimely service are misplaced.

> ### 4. Rice's Arguments are Waived Because She Did Not Properly Re-Serve Her Complaint within the Time Permitted by Section 1448, Rule 4(m) and Local Rule 4(A).

Finally, Rice has waived any arguments she may have had that Section 1448 permitted her to re-serve her Complaint within 120 days because she failed to re-serve her Complaint – or to serve her Amended Complaint – in the manner prescribed by Section 1448 after removal. Section 1448 provides that, after removal, under proper circumstances, "process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." 28 U.S.C. § 1448.  Of course, a plaintiff who originally files a case in a district court need not seek leave of court to obtain summonses and serve the complaint.  Rather, "[o]n or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons—or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served."  Fed. R. Civ. P. 4(b).  Clearly then,

issuance of the summons is a clerical matter that is initiated merely by presentation of a properly completed summons to the clerk.

Unsurprisingly given the posture of this case, Rice never took any action to have summonses issued as to the Defendants before her 120 days expired on January 11, 2013. Notably, the District Court did not issue its short order dismissing the Amended Complaint until March 29, 2013 – seventy-six days after her 120-day period to serve the Defendants under Section 1448 had expired. As such, she has waived any argument she may have had that she could have served her complaint within 120 days after removal. For this reason alone, this Court should affirm the District Court.

### D. VIRGINIA PROCEDURE DOES NOT BURDEN RICE'S FEDERAL CIVIL RIGHTS.

In an effort to save her case below, Rice argued that her federal civil right to be free from discrimination was burdened by Virginia's one-year service law in violation of the Supreme Court's holding in <u>Felder v. Casey</u>, 487 U.S. 131 (1988). Rice appears to have abandoned that argument on appeal. Nevertheless, should Rice attempt to revive this argument in her reply brief, Rice's argument is misplaced. In <u>Felder</u>, the plaintiff's Title VII claim was initially defeated because he failed to comply with a notice-of-claim statute requiring him to follow certain time-sensitive procedures before bringing any suit against a municipality or its officers in state court. 487 U.S. at 134. Since Felder did not adhere to these

additional procedural rules prior to filing suit, the state court granted the defendants' motion to dismiss. Id. at 134-37. These procedures included that the plaintiff was required to "notify the governmental defendant of the circumstances giving rise to the claim, the amount of the claim, and his or her intent to hold the named defendant liable" and "refrain from filing suit for 120 days after providing such notice." Id. at 134. In reversing the state court, the Supreme Court held that the plaintiff's federal rights were being burdened by state law in that the notice-of-claim statute established state administrative exhaustion requirements that restricted the plaintiff's ability to immediately seek redress from the courts. Id. at 141.

In this case, Virginia's one-year service requirement does not restrict Rice's access to the courts or otherwise burden her ability to seek redress. Rather, it merely requires that, having sought redress, she exercise reasonable diligence to prosecute her claim. Indeed, had Rice filed her suit in federal court rather than Virginia Circuit court, her complaint would have been subject to dismissal in 120 days pursuant to Rule 4(m) rather than in one year. The District Court should be affirmed on this aspect of its ruling.

### E.    THE LOWER COURT HAD NO PERSONAL JURISDICTION OVER DEFENDANTS.

For all the reasons stated above, the District Court also properly dismissed this action for lack of personal jurisdiction over the Defendants, as "absent waiver

or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." <u>Koehler v. Dodwell</u>, 152 F.3d 304, 306 (4th Cir. 1998). As service on the Defendants was improper in this case, the District Court lacked personal jurisdiction over the Defendants and the District Court's dismissal on this grounds should be affirmed.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, service of process was fatally insufficient, the District Court lacked personal jurisdiction over the Defendants, and this Court should affirm the ruling of the District Court dismissing Plaintiff Jacqueline Rice's Amended Complaint with prejudice.

<u>**REQUEST FOR ORAL ARGUMENT**</u>

Pursuant to Federal Rule of Appellate Procedure 34 and Local Rule of Appellate Procedure 34(a), Defendants respectfully request oral argument.

Dated:  September 9, 2013            Respectfully submitted,

BUDGET MOTELS, INC. d/b/a
COMFORT INN ALEXANDRIA
and
WATERLOO HOSPITALITY, INC. d/b/a
COMFORT INN ALEXANDRIA,

By Counsel

_____/s/_____
Stephen W. Robinson, Esq. (VSB #15337)

McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons Corner, Virginia 22102
(703) 712-5000 (telephone)
(703) 712-5050 (facsimile)
srobinson@mcguirewoods.com

Nicholas D. SanFilippo, Esq. (VSB# 79018)
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons Corner, Virginia 22102
(703) 712-5378 (telephone)
(703) 712-5220 (facsimile)
nsanfilippo@mcguirewoods.com

*Counsel for Defendants Budget Motels, Inc.,
d/b/a Comfort Inn Alexandria and Waterloo
Hospitality, Inc., d/b/a Comfort Inn
Alexandria*

ALPHA SECURITY, INC.,

By Counsel,

_____/s/_____
Douglas C. Meister, Esq.
Meyers, Rodbell & Rosenbaum, P.A.
6801 Kenilworth Avenue, Suite 400
Riverdale Park, MD 20737
(301) 699-5800 (Phone)
(301) 779-5746 (Facsimile)
DMeister@mrrlaw.net

*Counsel for Defendant Alpha Security, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

1. This brief has been prepared using fourteen point, proportionally spaced serif typeface using Word, Times New Roman, 14 point.

2. Exclusive of: table of contents; table of authorities; any addendum containing statutes, rules, or regulations; and the certificate of service this brief contains <u>7420</u> words.

3. I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or copy of the word or line printout.

_____/s/_____
Nicholas D. SanFilippo, Esq. (VSB# 79018)
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons Corner, Virginia 22102
(703) 712-5378 (telephone)
(703) 712-5220 (facsimile)
nsanfilippo@mcguirewoods.com

## <u>CERTIFICATE OF SERVICE</u>

I declare under penalty of perjury that the following is true and correct:

On the 9th day of September, 2013, I electronically filed the foregoing BRIEF OF DEFENDANTS-APPELLEES with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic filing to all counsel of record.

Also on this date, eight (8) copies of the foregoing BRIEF were sent via hand delivery to the Court of Appeals addressed as follows:

> Patricia S. Connor, Clerk
> U.S. Court of Appeals for the Fourth Circuit
> 1100 Main Street, Suite 501
> Richmond, VA 23219-3517

> \_\_\_\_\_/s/_____
> Nicholas D. SanFilippo, Esq. (VSB# 79018)
> McGuireWoods LLP
> 1750 Tysons Boulevard
> Suite 1800
> Tysons Corner, Virginia 22102
> (703) 712-5378 (telephone)
> (703) 712-5220 (facsimile)
> nsanfilippo@mcguirewoods.com

# <u>STATUTORY SUPPLEMENT</u>

<u>Va. Code Ann. § 1-210</u>

§ 1-210. Computation of time.

A. When an act of the General Assembly or rule of court requires that an act be performed a prescribed amount of time before a motion or proceeding, the day of such motion or proceeding shall not be counted against the time allowed, but the day on which such act is performed may be counted as part of the time. When an act of the General Assembly or rule of court requires that an act be performed within a prescribed amount of time after any event or judgment, the day on which the event or judgment occurred shall not be counted against the time allowed.

B. When the last day for performing an act during the course of a judicial proceeding falls on a Saturday, Sunday, legal holiday, or any day or part of a day on which the clerk's office is closed as authorized by an act of the General Assembly, the act may be performed on the next day that is not a Saturday, Sunday, legal holiday, or day or part of a day on which the clerk's office is closed as authorized by an act of the General Assembly.

C. When an act of the General Assembly specifies a maximum period of time in which a legal action may be brought and the last day of that period falls on a Saturday, Sunday, legal holiday, or day or part of a day on which the clerk's office is closed as authorized by an act of the General Assembly, the action may be brought on the next day that is not a Saturday, Sunday, legal holiday, or day or part of a day on which the clerk's office is closed as authorized by an act of the General Assembly.

D. Any court or proceeding authorized to be adjourned from day to day shall not be required to meet on a Sunday or legal holiday.

E. When an act of the General Assembly or local governing body, order of the court, or administrative regulation or order requires, either by specification of a date or by a prescribed period of time, that an act be performed or an action be filed on a Saturday, Sunday, or legal holiday or on any day or part of a day on which the state or local government office where the act to be performed or the action to be filed is closed, the act may be performed or the action may be filed on the next business day that is not a

A

Saturday, Sunday, legal holiday, or day on which the state or local government office is closed.

## Va. Code Ann. § 1-223

§ 1-223. Month; year.

"Month" means a calendar month and "year" means a calendar year.

## Virginia Code §8.01-275.1

§8.01-275.1. When service of process is timely.

Service of process in an action or suit within twelve months of commencement of the action or suit against a defendant shall be timely as to that defendant. Service of process on a defendant more than twelve months after the suit or action was commenced shall be timely upon a finding by the court that the plaintiff exercised due diligence to have timely service made on the defendant.

## Va. Code Ann. § 8.01-277

§ 8.01-277. Defective process; motion to quash; untimely service; motion to dismiss.

A. A person, upon whom process to answer any action has been served, may take advantage of any defect in the issuance, service or return thereof by a motion to quash filed prior to or simultaneously with the filing of any pleading to the merits. Upon sustaining the motion, the court may strike the proof of service or permit amendment of the process or its return as may seem just.

B. A person, upon whom process has not been served within one year of commencement of the action against him, may make a special appearance, which does not constitute a general appearance, to file a motion to dismiss. Upon finding that the plaintiff did not exercise due diligence to have timely service and sustaining the motion to dismiss, the court shall dismiss the action with prejudice. Upon finding that the plaintiff did exercise due diligence to have timely service and denying the motion to dismiss, the court shall require the person filing such motion to file a responsive pleading

B

within 21 days of such ruling. Nothing herein shall prevent the plaintiff from filing a nonsuit under § 8.01-380 before the entry of an order granting a motion to dismiss pursuant to the provisions of this section. Nothing in this subsection shall pertain to cases involving asbestos.

Virginia Code §8.01-335

§ 8.01-335. Certain cases struck from dockets after certain period; reinstatement.

A. Except as provided in subsection C, any court in which is pending an action, wherein for more than two years there has been no order or proceeding, except to continue it, may, in its discretion, order it to be struck from its docket and the action shall thereby be discontinued. However, no case shall be discontinued if either party requests that it be continued. The court shall thereafter enter a pretrial order pursuant to Rule 4:13 controlling the subsequent course of the case to ensure a timely resolution of that case. If the court thereafter finds that the case has not been timely prosecuted pursuant to its pretrial order, it may strike the case from its docket. The clerk of the court shall notify the parties in interest if known, or their counsel of record at his last known address, at least fifteen days before the entry of such order of discontinuance so that all parties may have an opportunity to be heard on it. Any case discontinued under the provisions of this subsection may be reinstated, on motion, after notice to the parties in interest if known or their counsel of record, within one year from the date of such order but not after.

B. Any court in which is pending a case wherein for more than three years there has been no order or proceeding, except to continue it, may, in its discretion, order it to be struck from its docket and the action shall thereby be discontinued. The court may dismiss cases under this subsection without any notice to the parties. The clerk shall provide the parties with a copy of the final order discontinuing or dismissing the case. Any case discontinued or dismissed under the provisions of this subsection may be reinstated, on motion, after notice to the parties in interest, if known, or their counsel of record within one year from the date of such order but not after.

C. If a civil action is pending in a circuit court on appeal from a general district court and (i) an appeal bond has been furnished by or on behalf of any party against whom judgment has been rendered for money or property

C

and (ii) for more than one year there has been no order or proceeding, except to continue the matter, the action may, upon notice to the parties in accordance with subsection A, be dismissed and struck from the docket of the court. Upon dismissal pursuant to this subsection, the judgment of the general district court shall stand and the appeal bond shall be forfeited after application of any funds needed to satisfy the judgment.

D. Any court in which is pending a case wherein process has not been served within one year of the commencement of the case may, in its discretion, order it to be struck from the docket, and the action shall thereby be discontinued. The clerk of the court shall notify the plaintiff or his counsel of record at his last known address at least 30 days before the entry of an order of discontinuance so that the plaintiff may have an opportunity to show that service has been timely effected on the defendant or that due diligence has been exercised to have service timely effected on the defendant. Upon finding that service has been timely effected or that due diligence has been exercised to have service timely effected, the court shall maintain the action on the docket and, if service has not been timely effected but due diligence to effect service has been exercised, shall require the plaintiff to attempt service in any manner permitted under Chapter 8 (§ 8.01-285 et seq.) of this title. Nothing herein shall prevent the plaintiff from filing a nonsuit under § 8.01-380 before the entry of a discontinuance order pursuant to the provisions of this subsection. Nothing in this subsection shall apply to asbestos litigation.

Virginia Code §8.01-380

§ 8.01-380. Dismissal of action by nonsuit; fees and costs.

A. A party shall not be allowed to suffer a nonsuit as to any cause of action or claim, or any other party to the proceeding, unless he does so before a motion to strike the evidence has been sustained or before the jury retires from the bar or before the action has been submitted to the court for decision. After a nonsuit no new proceeding on the same cause of action or against the same party shall be had in any court other than that in which the nonsuit was taken, unless that court is without jurisdiction, or not a proper venue, or other good cause is shown for proceeding in another court, or when such new proceeding is instituted in a federal court. If after a nonsuit an improper venue is chosen, the court shall not dismiss the matter but shall transfer it to the proper venue upon motion of any party.

D

B. Only one nonsuit may be taken to a cause of action or against the same party to the proceeding, as a matter of right, although the court may allow additional nonsuits upon reasonable notice to counsel of record for all defendants and upon a reasonable attempt to notify any party not represented by counsel, or counsel may stipulate to additional nonsuits. The court, in the event additional nonsuits are allowed, may assess costs and reasonable attorney fees against the nonsuiting party. When suffering a nonsuit, a party shall inform the court if the cause of action has been previously nonsuited. Any order effecting a subsequent nonsuit shall reflect all prior nonsuits and shall include language that reflects the date of any previous nonsuit together with the court in which any previous nonsuit was taken.

C. If notice to take a nonsuit of right is given to the opposing party within seven days of trial or during trial, the court in its discretion may assess against the nonsuiting party reasonable witness fees and travel costs of expert witnesses scheduled to appear at trial, which are actually incurred by the opposing party, solely by reason of the failure to give notice at least seven days prior to trial. The court shall have the authority to determine the reasonableness of expert witness fees and travel costs. Invoices, receipts, or confirmation of payment shall be admissible to prove reasonableness without the need to offer testimony to support the authenticity or reasonableness of such documents, and may, in the court's discretion, satisfy the reasonableness requirement under this subsection. Nothing herein shall preclude any party from offering additional evidence or testimony to support or rebut the reasonableness requirement.

D. A party shall not be allowed to nonsuit a cause of action, without the consent of the adverse party who has filed a counterclaim, cross claim or third-party claim which arises out of the same transaction or occurrence as the claim of the party desiring to nonsuit unless the counterclaim, cross claim or third-party claim can remain pending for independent adjudication by the court.

<u>Virginia Supreme Court Rule 3:5</u>

Rule 3:5. The Summons.

(a) *Form of process.* The process of the courts in civil actions shall be a summons in substantially this form:

Commonwealth of Virginia

In the .......... Court of the .......... of ...............

SUMMONS
Civil Action No. . . .

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia, this ..... day of .................... 20.....
..................................., Clerk.

(b) *Affixing summons for service; voluntary appearance.* Upon the commencement of a civil action defendants may appear voluntarily and file responsive pleadings and may appear voluntarily and waive process, but in cases of divorce or annulment of marriage only in accordance with the provisions of the controlling statutes. With respect to defendants who do not appear voluntarily or file responsive pleadings or waive service of process, the clerk shall issue summonses and securely attach one to and upon the front of each copy of the complaint to be served. The copies of the complaint, with a summons so attached, shall be delivered by the clerk for service together as the plaintiff may direct.

(c) *Defendant under a disability.* Except when sued for divorce or annulment of marriage, or a judgment in personam is sought, a summons need not be issued for or served upon a defendant who is a person under a disability (except as otherwise provided in § 8.01-297), the procedure described in Code § 8.01-9 constituting due process as to such defendants.

(d) *Additional summonses.* The clerk shall on request issue additional summonses, dating them as of the day of issuance.

F

(e) *Service more than one year after commencement of the action.* No order, judgment or decree shall be entered against a defendant who was served with process more than one year after the institution of the action against that defendant unless the court finds as a fact that the plaintiff exercised due diligence to have timely service on that defendant.

G

**APPENDIX OF UNREPORTED CASES**



**JOYCE E. PATTERSON, as Administratix of the Estate of Yolanda Evett Patterson Hemphill, Plaintiff - Appellant, v. D. WHITLOCK; TERRY SULT; CITY OF GASTONIA; JENNIFER STULTZ; GASTON COUNTY; ALAN CLONINGER; JAN WINTERS; GASTON COUNTY EMERGENCY MANAGEMENT SERVICES; WATSON INSURANCE AGENCY, Defendants - Appellees.**

**No. 08-2219**

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

*392 Fed. Appx. 185*; *2010 U.S. App. LEXIS 17626*

**May 11, 2010, Argued**
**August 23, 2010, Decided**

**NOTICE:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [**1]

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. (3:06-cv-00476-MR-CH). Martin K. Reidinger, District Judge.
*Patterson v. Brown, 2008 U.S. Dist. LEXIS 71774 (W.D.N.C., Sept. 22, 2008)*
*Patterson v. Brown, 2008 U.S. Dist. LEXIS 9312 (W.D.N.C., Jan. 23, 2008)*

**DISPOSITION:** DISMISSED IN PART, REVERSED IN PART, AND REMANDED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff mother filed a complaint on behalf of her deceased daughter's estate against defendants, county defendants, city defendants, and other defendants, alleging multiple tort claims arising from the daughter's death, as well as civil rights claims. Following removal of the action, the United States District Court for the Western District of North Carolina, at Charlotte, dismissed the complaint for insufficient process. The mother appealed.

**OVERVIEW:** The district court deemed process to be insufficient on the ground that the mother had served defendants with incomplete copies of the complaint. The court found that the mother failed to include any contentions relevant to the other defendants in her opening brief. The county defendants did not argue for dismissal based on the incomplete complaints until about eight months after they filed a motion to quash, which was actually a *Fed. R. Civ. P. 12* motion to dismiss. *Rule 12* prohibited a trial court from dismissing an action on the basis of a service defect when that defense was omitted from a defendant's pre-answer motion. As such, the district court erred in dismissing the county defendants on a ground that they waived. The city defendants waived their opportunity to challenge the mother's service of an incomplete complaint when they filed an answer that attacked the sufficiency of process in barebones fashion only, and then waited over a year before submitting a *Rule 12* motion actually spelling out the missing pages contention. The district court erred in dismissing the city defendants from the action on the basis of the mother's asserted service of an incomplete complaint.

392 Fed. Appx. 185, *; 2010 U.S. App. LEXIS 17626, **1

**OUTCOME:** Those aspects of the appeal pertaining to the other defendants were dismissed. The judgment was reversed as to the county and the city defendants. The matter was remanded for further proceedings.

**LexisNexis(R) Headnotes**

*Civil Procedure > Removal > Proceedings > General Overview*
*Governments > Courts > Rule Application & Interpretation*
[HN1] See *Fed. R. Civ. P. 81(c)(1)*.

*Governments > Courts > Rule Application & Interpretation*
[HN2] The United States Supreme Court has ordered that the amended Federal Rules of Civil Procedure should apply retroactively, insofar as just and practicable.

*Civil Procedure > Appeals > Standards of Review > De Novo Review*
*Governments > Courts > Rule Application & Interpretation*
[HN3] An appellate court reviews a district court's interpretation of the applicable rules of procedure de novo.

*Civil Procedure > Appeals > Reviewability > Preservation for Review*
[HN4] An appellate court is entitled to exercise its discretion to overlook an abandonment if a miscarriage of justice would otherwise result.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN5] Since the Federal Rules of Civil Procedure were first adopted in 1938, they have barred a defendant from interposing successive motions raising certain *Fed. R. Civ. P. 12(b)* defenses--including insufficient process under *Rule 12(b)(4)*--if the defense was previously available to the defendant.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Waiver & Preservation*
[HN6] See *Fed. R. Civ. P. 12(g)(2)*.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Waiver & Preservation*
[HN7] See *Fed. R. Civ. P. 12(h)(1)(A)*.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Waiver & Preservation*
[HN8] *Fed. R. Civ. P. 12* prohibits a trial court from dismissing an action on the basis of a service defect when that defense was omitted from the defendant's pre-answer motion. A party's waiver operates not only to cut off his right to raise the defense, but the court's power to invoke it.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
[HN9] Any challenge to service of process must be made at the time the first significant defensive move is made--whether it be by way of a *Fed. R. Civ. P. 12* motion or a responsive pleading.

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
[HN10] An objection to sufficiency of process or service of process must be specific and point out in what manner a plaintiff has failed to satisfy the requirements of the service provision utilized.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Waiver & Preservation*
*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
[HN11] Even where a defendant generally raises a service of process contention in its answer, that contention will be deemed waived if the defendant fails to adequately develop it in a reasonably prompt manner.

**COUNSEL:** ARGUED: Pamela Anne Hunter, Charlotte, North Carolina, for Appellant. Martha Raymond Thompson, STOTT, HOLLOWELL, PALMER &

392 Fed. Appx. 185, *; 2010 U.S. App. LEXIS 17626, **1

WINDHAM, Gastonia, North Carolina, for Appellees.

ON BRIEF: James C. Windham, Jr., STOTT, HOLLOWELL, PALMER & WINDHAM, Gastonia, North Carolina; Robert D. McDonnell, LAW OFFICE OF ROBERT MCDONNELL, Charlotte, North Carolina, for Appellees.

**JUDGES:** Before MOTZ, KING, and DUNCAN, Circuit Judges.

## OPINION

[*186] PER CURIAM:

In August 2006, appellant Joyce E. Patterson filed this civil action in North Carolina state court on behalf of her deceased daughter's estate. Following removal of the action to the Western District of North Carolina, the district court dismissed Patterson's thirty-eight-count complaint (the "Complaint") for insufficient process. In relevant part, the court deemed process to be insufficient on the ground that she had served the defendants with incomplete copies of the Complaint. As explained below, because the pertinent defendants waived any such challenge to the [**2] sufficiency of process, we reverse in part and remand. [1]

> 1  Of the nineteen defendants named in the Complaint, Patterson identified nine of them as adverse parties in this appeal. We dismiss those aspects of the appeal pertaining to two of those nine parties -- Gaston County Emergency Management Services and Watson Insurance Agency -- because Patterson failed to include any contentions relevant to them in her opening brief. See *Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999)* (citing *Fed. R. App. P. 28(a)(9)(A)*).

I.

A.

As alleged in the Complaint, Patterson's daughter -- Yolanda Evett Patterson Hemphill -- was shopping at a mall in Gastonia, North Carolina on August 20, 2004. While waiting to meet a friend in the mall parking lot, Hemphill was approached and then pursued by security guards. One of the guards grabbed Hemphill's hair, forced her to the ground, and shoved his knee in her face.

Hemphill complained that she was having difficulty breathing and asked to be released. The security guards refused, instead detaining Hemphill until Gastonia police officers arrived. Once on the scene, the officers determined that Hemphill required medical assistance, and they called for [**3] the Gaston County paramedics.

Patterson alleges that, because it was near the end of their shift, the paramedics did not fully attend to Hemphill. Rather, the police officers transported her to the Gaston County Jail, where Hemphill continued to complain about difficulty breathing. After her arrival at the jail, Hemphill fell to the floor and began foaming at the mouth. The authorities then transported Hemphill to Gaston Memorial Hospital, where she was pronounced dead upon arrival.

B.

On August 21, 2006, Patterson filed the Complaint on behalf of her daughter's estate in the Superior Court for Gaston County. The Complaint alleged multiple tort claims arising from Hemphill's death, [*187] as well as civil rights claims predicated on the state and federal constitutions and *42 U.S.C. § 1983*. Named as defendants were, inter alia, Gaston County; Gaston County Sheriff Alan Cloninger, individually and in his official capacity; and County Manager Jan Winters, individually and in his official capacity (collectively, the "County Defendants"). Other defendants included the City of Gastonia; City police officer D. Whitlock, individually and in his official capacity; City Chief of Police Terry Sult, individually [**4] and in his official capacity; and City Mayor Jennifer Stultz, individually and in her official capacity (collectively, the "City Defendants"). This appeal implicates Patterson's claims against these two categories of defendants only: the County Defendants and the City Defendants (collectively, the "Defendants").

C.

1.

On November 16, 2006, the County Defendants made a special appearance in state court and moved to dismiss the Complaint on the basis of, inter alia, insufficient service of process. [2] hat same day, the County Defendants -- with the other defendants' consent -- timely removed the action to the Western District of North Carolina, asserting federal question and supplemental jurisdiction. The County Defendants' notice

of removal contained a complete copy of the Complaint. Six days later, on November 22, 2006, the City Defendants separately removed the action to federal court, notwithstanding that it had already been removed. 3 Although the City Defendants made no reference to an incomplete Complaint, the copy included in their notice of removal omitted pages 11 through 26.

> 2    Although Patterson endeavored to serve state court process in October 2006, it is now undisputed that she [**5] did not serve the Defendants in accordance with North Carolina law while the action was pending in the state court.
> 3    On January 24, 2007, the district court consolidated the two cases initiated by the separately filed notices of removal into a single civil action.

On December 29, 2006, the County Defendants moved to dismiss the Complaint based on, inter alia, insufficient process and insufficient service of process. See *Fed. R. Civ. P. 12(b)(4), (5)*. 4 In their motion, the County Defendants asserted that Patterson had failed in her October 2006 attempts to serve them with state court process. In support thereof, the County Defendants relied on several exhibits and affidavits from Gaston County employees.

> 4    The Federal Rules of Civil Procedure apply to this case. See *Fed. R. Civ. P. 81(c)(1)* ([HN1] "These rules apply to a civil action after it is removed from a state court."). Subsequent to the district court proceedings, certain rules at issue in this appeal have been amended, without any substantive effect on the issues presented herein. Because [HN2] the Supreme Court has ordered that the amended rules should apply retroactively, "insofar as just and practicable," we apply the most recent version [**6] of the rules (in effect on December 1, 2009). See Order of Mar. 26, 2009, 556 U.S. ___ (U.S. Mar. 26, 2009).

On February 9, 2007, Patterson responded to the County Defendants' motion to dismiss, asserting that she was entitled, after removal, to serve the defendants with process issued by the district court. See *28 U.S.C. § 1448*. 5 Pursuant to the 120-day [*188] time limit for completion of such service, specified in *Rule 4(m) of the Federal Rules of Civil Procedure*, Patterson maintained that she had until March 17, 2007 to perfect service.

> 5    In relevant part, *28 U.S.C. § 1448* (entitled "Process after removal") provides that, in a removed case
>
> > in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

Patterson apparently made no further effort to accomplish service, however, until March 9, 2007, when she first obtained summonses for the defendants from the district court. Then, on March 15, 2007 -- shortly before the 120-day period [**7] was to expire -- Patterson moved the court, pursuant to *Rule 4(m)*, to extend her time to complete service. 6 Meanwhile, Patterson sought to serve the defendants with the then-recently issued district court process. Patterson's counsel arranged for such service of process by two methods: personal service by process server and certified mail. 7

> 6    In pertinent part, *Rule 4(m)* provides that "if the plaintiff shows good cause for the failure [to serve the defendants with process], the court must extend the time for service for an appropriate period."
> 7    The Federal Rules of Civil Procedure do not authorize service of an original complaint and summons by mail. They do, however, permit a plaintiff to effect service in accordance with state law, see *Fed. R. Civ. P. 4(e)(1), 4(j)(2)(B)*, and North Carolina authorizes service by mailing the summons and complaint through "registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee," N.C. Gen. Stat. § 1A-1, R. 4(j)(1)(c); see also id. R. 4(j)(5) (service upon county or city by registered or certified mail). As a result, service on the Defendants by mail was permissible (and, as is now undisputed, [**8] was accomplished).

On March 30, 2007, the County Defendants responded to Patterson's efforts to complete service of the process issued by the district court. More specifically, the County Defendants filed what they designated as a "Motion to Quash Summonses of Gaston County, Jan Winters and Alan Cloninger" (the "Motion to Quash"). As authority for the Motion to Quash, the County Defendants relied on Federal *Rules 4(e)* and *4(j)*, which govern service on individuals and local governments. In their memorandum in support of the motion, the County Defendants advanced only two contentions, which they have since abandoned: (1) that Patterson should not have been afforded 120 days after removal to serve process; and (2) that Patterson's endeavor to serve the County Defendants in their individual capacities failed to comply with the Federal Rules. Notably, the Motion to Quash failed to mention the contents of the Complaint -- that is, whether it was complete or incomplete.

Shortly thereafter, on April 11, 2007, another defendant in the action filed a Rule 12 motion to dismiss for insufficient process, contending that the Complaint with which it had been served omitted pages 11 through 26. Although [**9] a copy of the Complaint omitting those pages had been appended to the City Defendants' notice of removal, no defendant had previously raised the missing pages contention. On May 1, 2007, yet another defendant moved to dismiss the Complaint under *Rule 12* on the same ground, i.e., that the Complaint with which it was served was missing pages 11 through 26. Notwithstanding these motions, the Defendants did not come forward with similar assertions until several months later.

On May 14, 2007, Patterson responded, maintaining that she had properly served each defendant with a complete copy of the Complaint. In support thereof, Patterson submitted an affidavit of the process server who had endeavored to make personal service on the defendants, plus a separate [*189] affidavit of her attorney. Thereafter, on May 25, 2007, the City Defendants filed their first response to the Complaint: their answer (the "Answer"). The Answer began by raising several barebones affirmative defenses under the heading "First Defense." In its entirety, that passage states:

> [The City Defendants], pursuant to the Federal Rules of Civil Procedure assert the defenses as set forth in *Rule 12(b) (2)(4)*

> *(5)* & *(6) of the Federal Rules of Civil Procedure* [**10] and in particular, the lack of jurisdiction over these defendants, the insufficiency of service of process, and the lack of personal jurisdiction over these defendants and the failure to state a claim for relief as to these defendants.

J.A. 225. [8] The City Defendants did not elaborate on their service of process contentions in their Answer, nor did they submit a supporting memorandum of law. As such, the Answer in no way asserted that the City Defendants had been served with an incomplete copy of the Complaint.

> 8   Citations herein to "J.A.    " refer to the Joint Appendix filed by the parties in this appeal.

2.

The district court conducted a hearing on the various pending motions on November 20, 2007. At the hearing, the Defendants apparently focused on Patterson's failure to file certified mail return receipts proving that she had completed service via that method. [9] The court gave Patterson seven days to file the proper receipts, and she did so in a timely fashion.

> 9   A transcript of the district court's hearing of November 20, 2007, is not in the record.

On November 26, 2007, one day before Patterson filed her certified mail return receipts, the County Defendants filed what they styled as [**11] an "Alternative Motion to Dismiss," in which they asserted for the first time that the Complaint served on them had omitted pages 11 through 26. In other words, despite having already challenged Patterson's endeavor to serve them with federal process (through their Motion to Quash of March 2007), the County Defendants -- by way of their Alternative Motion to Dismiss -- made another attack on Patterson's service attempt. This second attack on service was filed some eight months after Patterson sought to serve the defendants in March 2007 (and also eight months after the County Defendants filed their Motion to Quash).

On December 7, 2007, Patterson responded, asserting that the County Defendants' extraordinary delay in raising the missing pages contention constituted a

waiver of the contention. More specifically, Patterson maintained that the waiver arose from the County Defendants' failure to raise the missing pages contention in their Motion to Quash. See Patterson v. Brown, No. 3:06-cv-00476 (W.D.N.C. Dec. 7, 2007), ECF No. 126 (contending that, although "these Defendants had filed extensi[ve] Motions to Dismiss [the] Complaint," they "have never alleged that [the] Complaint should be [**12] dismissed based upon alleged missing pages"). Patterson filed two additional affidavits with the district court, seeking to establish that she had in fact served all of the defendants with complete copies of the Complaint.

3.

By its decision of January 24, 2008, the district court dismissed the County Defendants from the action. See Patterson v. Brown, No. 3:06-cv-00476, 2008 U.S. Dist. LEXIS 9312 (W.D.N.C. Jan. 24, 2008) (the [*190] "First Memorandum Decision"). [10] As an initial matter, the court ruled that Patterson had failed to serve the County Defendants with state court process. Nonetheless, the court concluded that, under applicable law, Patterson had 120 days from the removal of the action to federal court to serve the defendants with process issued by the district court. See 2008 U.S. Dist. LEXIS 9312, [slip op] at 13-16. Turning to Patterson's endeavor to serve the County Defendants with federal process in March 2007, the district court concluded that Patterson's effort was fatally insufficient solely because she had served the County Defendants with a Complaint that omitted pages 11 through 26, in contravention of the obligation to serve a complete copy of the complaint. See 2008 U.S. Dist. LEXIS 9312, [slip op] at 29.

[10]  The First Memorandum Decision is found at J.A. 336-80.

The [**13] First Memorandum Decision also addressed Patterson's assertion that the County Defendants had waived the "missing pages contention" by not raising it in their Motion to Quash. The district court acknowledged that, despite having been raised by two other defendants in April and May 2007, the missing pages contention was first advanced by the County Defendants in November 2007. Thus, the court "agree[d] that the [County] Defendants could have, and indeed should have, raised this issue much earlier in the proceedings." First Memorandum Decision 24. Nevertheless, the court declined to deem the County Defendants' contention untimely, primarily because

Patterson had not submitted adequate evidence in April and May to rebut the other defendants' assertions that they had been served with partial copies of the Complaint. See 2008 U.S. Dist. LEXIS 9312 at *24-*25. Instead, the court reasoned that Patterson had not been "prejudiced" by the County Defendants' delay, explaining that "while the Gaston County Defendants may have been dilatory in joining the other [d]efendants in raising the issue, [Patterson] has been equally dilatory in responding to the issue." 2008 U.S. Dist. LEXIS 9312 at *27. Thus, in the "interest of fairness and judicial [**14] economy," the court resolved to "consider both the Gaston County Defendants' untimely raised alternative argument and [Patterson's] untimely evidence in opposition." 2008 U.S. Dist. LEXIS 9312 at *27.

On the merits of the missing pages contention, the district court determined that Patterson had not served the County Defendants with complete copies of the Complaint. Without conducting an evidentiary hearing, the court concluded that the affidavits submitted by Patterson to prove sufficient service were "of questionable value." First Memorandum Decision 26; see also 2008 U.S. Dist. LEXIS 9312 at *31 ("[T]he Court finds as fact that these Defendants were not served with a copy of the Complaint that included pages 11 through 26 thereof, and that based thereon, the Court concludes that the Plaintiff has failed to carry her burden of showing that full and complete copies of the Complaint were served upon these Defendants.").

Additionally, the district court denied Patterson's motion for an extension of time to complete service. See First Memorandum Decision 33-40. In so ruling, the court observed that Fourth Circuit precedent requires a plaintiff to demonstrate "good cause" before a court may extend the time period for completing service. [**15] See 2008 U.S. Dist. LEXIS 9312 at *37 (citing Mendez v. Elliot, 45 F.3d 75, 78 (4th Cir. 1995)). Patterson could not demonstrate good cause, according to the court, primarily because she had "not been diligent in her attempts" at service, even after receiving a "second bite at the apple" in the form of an additional 120 days after removal within which to serve the defendants. 2008 U.S. Dist. LEXIS 9312 at *40. The court also [*191] emphasized that Patterson had not offered any reason for her delay or stated how much time she would need to complete service. 2008 U.S. Dist. LEXIS 9312, [slip op] at 37-38.

4.

On June 5, 2008 -- more than four months after the district court rendered its First Memorandum Decision and over a year after filing their Answer -- the City Defendants moved to dismiss the Complaint (the "Motion to Dismiss"). In the Motion to Dismiss, the City Defendants contended for the first time that Patterson had failed to serve them with sufficient process because she had served incomplete copies of the Complaint. As discussed above, although the City Defendants listed the barebones defense of insufficient process under *Rule 12(b)(4)* in their Answer, they had never before specified their missing pages contention. Thus, it was in the Motion to Dismiss that the City [**16] Defendants first maintained that they were served with an incomplete Complaint.

The Motion to Dismiss was submitted to a magistrate judge, who recommended granting it based on the district court's resolution of the missing pages contention in the First Memorandum Decision. After Patterson filed an objection to the magistrate judge's recommendation, the district court issued a second memorandum decision on September 22, 2008, adopting the magistrate judge's report and recommendation. See *Patterson v. Brown, No. 3:06-cv-00476, 2008 U.S. Dist. LEXIS 71774 (W.D.N.C. Sept. 22, 2008)* (the "Second Memorandum Decision"). 11 In short, the court concluded that Patterson had not proven that she had served the City Defendants with complete copies of the Complaint. See *2008 U.S. Dist. LEXIS 71774, [slip op] at 7*. As a result, the court also dismissed the Complaint as to the City Defendants.

11    The Second Memorandum Decision is found at J.A. 408-15.

Thereafter, Patterson timely appealed. We possess jurisdiction pursuant to *28 U.S.C. § 1291*.

II.

On appeal, Patterson primarily maintains that the district court erred in dismissing the Defendants, based on its finding that she had served them with incomplete copies of the Complaint. As detailed below, we conclude that [**17] the court erred, in that the Defendants waived their rights under the Federal Rules to assert that they had only been served with incomplete copies of the Complaint. See *Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 203 (4th Cir. 2006)* (observing that [HN3]

we review district court's interpretation of applicable rules of procedure de novo). 12 Accordingly, we reverse and remand.

12    Although Patterson clearly raised the waiver issue in the district court, she arguably abandoned it on appeal by failing to sufficiently explain her contentions in her opening brief. See *Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999)* (citing *Fed. R. App. P. 28(a)(9)(A)*). In any event, we are content to assess the waiver issue, as [HN4] we are entitled to exercise our discretion to overlook an abandonment if a miscarriage of justice would otherwise result. See *A Helping Hand, LLC v. Balt. Cnty., Md., 515 F.3d 356, 369 (4th Cir. 2008)*.

A.

We begin with the district court's dismissal of the County Defendants. Because the County Defendants waived the then- available missing pages contention by not raising it in their Motion to Quash, and because the missing pages contention was the only service [**18] defect identified by the district court as a basis for dismissing the [*192] County Defendants, that dismissal was erroneous.

To recap the relevant procedural history, the County Defendants, immediately after Patterson endeavored to serve them with federal process in March 2007, attacked the sufficiency of Patterson's service of process by filing the Motion to Quash. In so doing, the County Defendants challenged service on two bases, neither of which implicated the completeness of the Complaint. Then, in the Alternative Motion to Dismiss -- filed eight months after Patterson's service attempt and the filing of the Motion to Quash -- the County Defendants first advanced the missing pages contention.

It is beyond peradventure that the Motion to Quash represented the County Defendants' attempt at securing a Rule 12 dismissal of the Complaint. More specifically, it is clear that what the County Defendants sought in their Motion to Quash was to have Patterson's claims dismissed due to insufficient process -- a motion expressly provided for by *Rule 12(b)(4)*. Cf. *Martin v. Stokes, 623 F.2d 469, 474 n.8 (6th Cir. 1980)* ("[T]here is no longer a 'motion to quash' as defendants filed; technically, the proper [**19] motion would have been a motion to dismiss for insufficiency of service under *Rule*

*12(b)(5) . . . ."*). [13]

> 13   In the district court, the County Defendants relied on two authorities for the proposition that a motion to quash is an "alternative" to a Rule 12 motion to dismiss. Each of the cited decisions, however, specifies that the motion to quash was made pursuant to *Rule 12(b)(4)*. See *Boateng v. Inter Am. Univ. of P.R.*, 188 F.R.D. 26, 27 (D.P.R. 1999); *R. Griggs Grp. Ltd. v. Filanto Spa*, 920 F. Supp. 1100, 1102 (D. Nev. 1996).

The County Defendants' filing of the Motion to Quash, which was actually a Rule 12 motion to dismiss, has important consequences. Namely, [HN5] since the Federal Rules were first adopted in 1938, they have barred a defendant from interposing successive motions raising certain *Rule 12(b)* defenses -- including insufficient process under *Rule 12(b)(4)* -- if the defense was previously available to the defendant. More specifically, *Rule 12(g)(2)* provides that

> [HN6] a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

*Fed. R. Civ. P. 12(g)(2). Rule 12(h)* [**20] further provides that a [HN7] "party waives any defense listed in *Rule 12(b)(2)-(5)* by . . . omitting it from a motion in the circumstances described in *Rule 12(g)(2)*." *Fed. R. Civ. P. 12(h)(1)(A)*. Significantly, our Judge Phillips has explained that [HN8] Rule 12 prohibits a trial court from dismissing an action on the basis of a service defect when that defense was omitted from the defendant's pre-answer motion. See *Pusey v. Dallas Corp.*, 938 F.2d 498, 501 n.4 (4th Cir. 1991) ("[A] party's waiver operates not only to cut off his right to raise the defense, but the court's power to invoke it."). As such, the district court erred in dismissing the County Defendants on a ground that they had waived -- namely, that they had been served with incomplete copies of the Complaint.

B.

We are constrained to reach the same conclusion with respect to the district court's dismissal of the City Defendants. As related above, the City Defendants filed their Answer in May 2007 raising four *Rule 12(b)*

defenses in name only, without any specific development of their assertions. And, although the missing pages contention had already been raised by two other defendants, the City [*193] Defendants offered no explanation in [**21] their Answer of what defect plagued Patterson's service attempt. What is more, the City Defendants did not even attempt to join the missing pages contention when the County Defendants eventually asserted it in their Alternative Motion to Dismiss in November 2007. Instead, the City Defendants inexplicably waited until June 2008 -- over fourteen months after the process in question was served, and over a year after the Answer was filed -- to file the Motion to Dismiss asserting that the process was insufficient because the Complaint was missing pages.

The principles applicable to our disposition of the County Defendants' position on appeal also foreclose the City Defendants from attempting this two-step method of attacking the sufficiency of process, first through a generic answer and then by way of a Rule 12 motion. See *Fed. R. Civ. P. 12(h)(1)(B)(ii)*; *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1361 (11th Cir. 2008) (concluding that defendant waived insufficiency of service defense by not advancing it in answer); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (3d ed. 2004) (observing that [HN9] any challenge to service of process [**22] must be made "at the time the first significant defensive move is made --whether it be by way of a Rule 12 motion or a responsive pleading").

Moreover, although the City Defendants were free to forego a Rule 12 motion and instead challenge the sufficiency of service in their Answer, they were required to preserve that defense by asserting it with some specificity. See *Photolab Corp. v. Simplex Specialty Co.*, 806 F.2d 807, 810 (8th Cir. 1986) (recognizing that [HN10] an objection to sufficiency of process or service of process "must be specific and point out in what manner the plaintiff has failed to satisfy the requirements of the service provision utilized"); see also *SEC v. Beisinger Indus. Corp.*, 552 F.2d 15, 19-20 (1st Cir. 1977) (determining that defendants waived particular service objection by only raising unrelated service contention). Thus, [HN11] even where a defendant generally raises a service of process contention in its answer, that contention will be deemed waived if the defendant fails to adequately develop it in a reasonably prompt manner. See, e.g., *Datskow v. Teledyne, Inc.*, 899

*F.2d 1298, 1303 (2d Cir. 1990)* (concluding that defendant waived defective service defense by stating [**23] it in answer, but not developing it until motion to dismiss filed four months later).

Pursuant to these controlling principles, the City Defendants waived their opportunity to challenge Patterson's service of an incomplete Complaint when they filed an Answer that attacked the sufficiency of process in barebones fashion only, and then waited over a year before submitting a Rule 12 motion actually spelling out the missing pages contention. Because *Rule 12(h)* bars such a tactic, the district court erred in dismissing the City Defendants from the action on the basis of Patterson's asserted service of an incomplete Complaint.
14

14  In these circumstances, we need not address Patterson's remaining two claims of error -- (1) that the district court abused its discretion in refusing to extend the time to complete service of process, and (2) that the court erroneously barred her from conducting limited jurisdictional discovery.

III.

Pursuant to the foregoing, we dismiss in part, reverse in part, and remand for such other and further proceedings as may be appropriate.

[*194]  DISMISSED IN PART, REVERSED IN PART, AND REMANDED



**BENJAMIN F. RUSSELL, By Joseph Michael Russell as his next friend, Plaintiff-Appellant, v. MICHAEL GENNARI, Ph.D.; ANTHEM HEALTH PLANS OF AMERICA, INCORPORATED, Defendants-Appellees, and EVONNE FEI; DIXIE SHIELDS, Defendants.**

**No. 08-1046**

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

*284 Fed. Appx. 98*; *2008 U.S. App. LEXIS 15012*

**June 18, 2008, Submitted**
**July 15, 2008, Decided**

**NOTICE:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [**1]
   Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (1:07-cv-00793-GBL-BRP).
*Russell v. Gennari, 2007 U.S. Dist. LEXIS 83771 (E.D. Va., Nov. 8, 2007)*

**DISPOSITION:** AFFIRMED.

**COUNSEL:** Joseph Michael Russell, Appellant Pro Se.

Michael E. Olszewski, Armand B. Alacbay, HANCOCK, DANIEL, JOHNSON & NAGLE, PC, Fairfax, Virginia; Anthony F. Shelley, Adam P. Feinberg, Jeffrey Hahn, MILLER & CHEVALIER, CHARTERED, Washington, D.C., for Appellees.

**JUDGES:** Before MICHAEL and DUNCAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

**OPINION**

   [*98] PER CURIAM:

   Joseph Michael Russell, on behalf of his son, Benjamin F. Russell, appeals the district court's order dismissing this action alleging negligence and breach of fiduciary duty. We have reviewed the record and find no reversible error. Accordingly, we affirm for the reasons stated by the district court. *Russell v. Gennari, No. 1:07-cv-00793-GBL-BRP, 2007 U.S. Dist. LEXIS 83771 (E.D. Va. Nov. 8, 2007)*. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

   *AFFIRMED*



**YOLANDA W. STOKES, Plaintiff - Appellant, v. EARL B. PULLEN, Director; CHARLOTTESVILLE REDEVELOPMENT & HOUSING AUTHORITY, Defendants - Appellees.**

**No. 97-1038**

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

*1997 U.S. App. LEXIS 25200*

**September 11, 1997, Submitted
September 18, 1997, Decided**

**NOTICE:** [*1] RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *122 F.3d 1062, 1997 U.S. App. LEXIS 29212.*

**PRIOR HISTORY:** Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. B. Waugh Crigler, Magistrate Judge. (CA-96-61-3-C).

**DISPOSITION:** AFFIRMED.

**COUNSEL:** Yolanda W. Stokes, Appellant Pro Se.

David E. Nagle, LECLAIR RYAN, P.C., Richmond, Virginia, for Appellees.

**JUDGES:** Before RUSSELL, MURNAGHAN, and HAMILTON, Circuit Judges.

**OPINION**

PER CURIAM:

Appellant appeals the magistrate judge's order dismissing her employment discrimination action as untimely. [*] We have reviewed the record and find no reversible error. A claimant who fails to file a complaint within the ninety-day statutory time period mandated by Title VII, *42 U.S.C. § 2000e-5(f) (1994)*, generally forfeits her right to pursue her claim. See *Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-51, 80 L. Ed. 2d 196, 104 S. Ct. 1723 (1984)*. While conceding that her complaint was filed outside the statutory time period, Appellant asserts that, under Virginia's savings statute, the voluntary dismissal of a previous suit tolled the statute of limitations and [*2] permitted her six months from the date of dismissal to file her current action.

*       The parties consented to the jurisdiction of a magistrate judge under *28 U.S.C. § 636(c) (1994)*.

However, Appellant is mistaken. Where, as here, the plaintiff voluntarily dismisses a lawsuit that was brought in federal court, asserted a purely federal claim, and was subject to a federal statute of limitations, state savings statutes do not apply. See *Beck v. Caterpillar Inc., 50 F.3d 405, 407 (7th Cir. 1995)*; *see also Brown v. Hartshorne Pub. Sch. Dist., 926 F.2d 959, 961 (10th Cir. 1991)*. Accordingly, the statute of limitations was not tolled, and the magistrate judge properly dismissed Appellant's action. Because the notice of appeal was timely filed, we deny Appellees' motion to dismiss. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the

1997 U.S. App. LEXIS 25200, *2

decisional process.                                    [*3]  *AFFIRMED*



**CURTIS HERTEL, et al., Plaintiffs, v. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC et al., Defendants.**

**File No. 1:12-CV-174**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

*2012 U.S. Dist. LEXIS 143598*

**October 4, 2012, Decided**
**October 4, 2012, Filed**

**SUBSEQUENT HISTORY:** Motion granted by, Motion denied by, Motion denied by, As moot *Hertel v. Mortgage Elec. Registration Sys., Inc., 2012 U.S. Dist. LEXIS 178582 (W.D. Mich., Dec. 18, 2012)*

**CASE SUMMARY:**

**OVERVIEW:** Plaintiffs moved to remand a state court action defendant removed. Defendant had no standing to remove the action. The summons expired, and defendant was dismissed under *Mich. Ct. R. 2.102(E)*. It was not a party. Thus, the district court's jurisdiction could not be predicated on the original jurisdiction arguments unique to defendant. Because state law deemed defendant dismissed, and the matter was closed prior to the removal, state law controlled. *28 U.S.C.S. § 1448* could not be used to bring back defendant as a party. *Section 1448* could not revive an action deemed dismissed under state law.

**OUTCOME:** Motion to remand denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Removal > Elements > General*

*Overview*
[HN1] See *28 U.S.C.S. § 1441(a)*.

*Civil Procedure > Removal > Basis > General Overview*
[HN2] See *28 U.S.C.S. § 1442(a)*.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Amount in Controversy > General Overview*
*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Amount in Controversy*
[HN3] Federal courts have original jurisdiction over all civil actions where the amount in controversy exceeds the sum or value of $ 75,000 and there is complete diversity of citizenship. *28 U.S.C.S. § 1332(a)*.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Amount in Controversy*
*Civil Procedure > Class Actions > Class Members > General Overview*
[HN4] Federal courts have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $ 5,000,000, exclusive of interest and costs, and is a class action in which any member of a

Appeal: 13-1644    Doc: 25    Filed: 09/09/2013    Pg: 66 of 102

Page 2
2012 U.S. Dist. LEXIS 143598, *

class of plaintiffs is a citizen of a State different from any defendant. *28 U.S.C.S. § 1332(d)(2).*

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN5] Original jurisdiction is present in all civil actions arising under the Constitution, laws, or treaties of the United States. *28 U.S.C.S. § 1331.*

*Banking Law > Federal Acts > Fair Housing & National Housing Acts*
[HN6] See *12 U.S.C.S. § 1723a(a).*

*Civil Procedure > Pleading & Practice > Service of Process > Summons > Issuance*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
[HN7] On the filing of a complaint, the court clerk shall issue a summons to be served on a named defendant. *Mich. Ct. R. 2.102(A).* Such a summons expires 91 days after the complaint is filed, although within that 91 days a plaintiff may request an extension. *Mich. Ct. R. 2.102(D).*

*Civil Procedure > Pleading & Practice > Service of Process > Summons > General Overview*
*Civil Procedure > Dismissals > Involuntary Dismissals > Failures to Comply*
[HN8] See *Mich. Ct. R. 2.102(E).*

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
[HN9] See *Mich. Ct. R. 2.118(A)(1).*

*Civil Procedure > Removal > Proceedings > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
[HN10] See *28 U.S.C.S. § 1448.*

*Civil Procedure > Removal > Proceedings > General Overview*
*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
[HN11] In determining the validity of service in the state court prior to removal, a federal court must apply the law of the State. After removal, then federal law governs and defects in service can be cured pursuant to *28 U.S.C.S. § 1448.*

*Civil Procedure > Removal > Proceedings > General Overview*
[HN12] *28 U.S.C.S. § 1448* cannot be utilized to breathe jurisprudential life in federal court into a case legally dead in state court. The application of *§ 1448* would ignore a plaintiff's procedural deficiency in state court.

*Civil Procedure > Removal > Basis > Diversity of Citizenship*
*Civil Procedure > Removal > Proceedings > General Overview*
[HN13] *28 U.S.C.S. § 1448* cannot "resurrect" a removed diversity case which would have been dismissed as time-barred had it remained in state court.

*Civil Procedure > Removal > Proceedings > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
[HN14] *Fed. R. Civ. P. 4(j)* does not apply to service of process which was attempted prior to removal.

*Civil Procedure > Removal > Proceedings > General Overview*
[HN15] *28 U.S.C.S. § 1448* cannot revive an action deemed dismissed under state law.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Amount in Controversy > General Overview*
*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Amount in Controversy*
[HN16] Federal courts have original jurisdiction in all matters involving completely diverse parties where there is more than $ 75,000 in controversy. *28 U.S.C.S. § 1332.* Complete diversity requires every plaintiff to be diverse from every defendant.

Appeal: 13-1644    Doc: 25    Filed: 09/09/2013    Pg: 67 of 102

Page 3
2012 U.S. Dist. LEXIS 143598, *

*Civil Procedure > Removal > Basis > Diversity of Citizenship*
*Civil Procedure > Removal > Postremoval Remands > Jurisdictional Defects*
*Civil Procedure > Parties > Joinder > Fraudulent Joinder*
[HN17] Fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds. The removing party bears the burden of proving fraudulent joinder. The removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve "all disputed questions of fact and ambiguities in the controlling state law in favor of the non removing party. All doubts as to the propriety of removal are resolved in favor of remand."

*Civil Procedure > Parties > Joinder > Fraudulent Joinder*
[HN18] There can be no fraudulent joinder unless it is clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law. The question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved.

*Tax Law > State & Local Taxes > Real Property Tax > General Overview*
[HN19] See the Michigan State Real Estate Transfer Tax Act, *Mich. Comp. Laws § 207.507.*

*Tax Law > State & Local Taxes > Real Property Tax > Assessment & Valuation > General Overview*
[HN20] The plain language of *Mich. Comp. Laws § 207.507* limits imposition of the transfer tax to a "seller or grantor." Michigan State Real Estate Transfer Tax Act and County Real Estate Transfer Tax Act, *Mich. Comp. Laws §§ 207.502(2), 207.523(2).*

*Business & Corporate Law > Agency Relationships > Duties & Liabilities > Third Parties*
[HN21] Agency agreements do not create any rights in third parties, even a party as to whom the principal owes some performance and for whose benefit the principal has

retained an agent to render it.

*Torts > Procedure > Multiple Defendants > Concerted Action > General Overview*
[HN22] There are three elements a plaintiff must satisfy to succeed on a concert of action theory of liability in Michigan. The plaintiff must show, first, that all defendants acted tortiously, second, that the plaintiff was harmed by one of the defendants, and, third, that the plaintiff, through no fault of his or her own, is unable to identify which actor caused the injury.

*Criminal Law & Procedure > Criminal Offenses > Fraud > Fraud Against the Government > False Statements > General Overview*
*Tax Law > State & Local Taxes > Real Property Tax > General Overview*
[HN23] Among others, it is a criminal offense for any person to fraudulently remove or tamper with a documentary stamp and for any person to knowingly issue a fraudulent affidavit. Michigan State Real Estate Transfer Tax Act and County Real Estate Transfer Tax Act, *Mich. Comp. Laws §§ 207.512, 207.534.*

*Criminal Law & Procedure > Criminal Offenses > Fraud > Fraud Against the Government > False Statements > General Overview*
[HN24] The remedies provided by statute for violation of a right having no common-law counterpart are exclusive. However, an exception to this general rule provides that if the statutory remedy is plainly inadequate, a private cause of action can be inferred. The Michigan statutes provide criminal sanctions for certain documentary deficiencies. These remedies do not become "plainly inadequate" just because the statutory remedies are not as comprehensive as plaintiffs would like.

*Torts > Intentional Torts > Conversion > Elements*
*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Aiding & Abetting*
[HN25] See *Mich. Comp. Laws § 600.2919a(1)(b).*

*Torts > Intentional Torts > Conversion > Elements*
*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Aiding & Abetting*
[HN26] Aiders are only liable for statutory conversion if their aid comes after property has been converted. *Mich.*

*Comp. Laws § 600.2919a(1)(b)* uses the past tense when describing liability for those parties aiding in the concealment of stolen, embezzled, or converted property.

***Commercial Law (UCC) > Negotiable Instruments (Article 3) > Party Liabilities > Conversion***
[HN27] See *Mich. Comp. Laws § 440.3420*.

***Torts > Intentional Torts > Conversion > Elements***
[HN28] There can be no conversion by a party not receiving any benefit.

***Civil Procedure > Jurisdiction > Diversity Jurisdiction > Amount in Controversy > Determinations***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Parties***
[HN29] The amount-in-controversy requirement can be met by one plaintiff's claims against one defendant. To satisfy the amount-in-controversy requirement at least one plaintiff's claim must independently meet the amount-in-controversy specification. Once one plaintiff satisfies the amount-in-controversy requirement as to one defendant, *28 U.S.C.S. § 1367* permits supplemental jurisdiction over claims by other plaintiffs and claims against other defendants.

***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Amount in Controversy***
***Civil Procedure > Removal > Basis > General Overview***
[HN30] The burden of showing that the amount-in-controversy requirement is met falls on the defendant in removal actions. Because the plaintiff is "master of the claim," a claim specifically less than the federal requirement should preclude removal. State counterparts to *Fed. R. Civ. P. 54(c)* might enable a plaintiff to claim in his or her complaint an amount lower than the federal amount in controversy but nevertheless seek and recover damages exceeding the amount prayed for. In such situations, the removing defendant must show that it is more likely than not that the plaintiff's claims meet the amount in controversy requirement. The "more likely than not" burden does not place upon the defendant the daunting burden of proving, to a legal certainty, that

the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages.

***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Amount in Controversy***
***Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements***
[HN31] A plaintiff must plead a specific amount if the claims are for a sum certain, but that otherwise a specific amount may not be stated, and the pleading must include allegations that show that the claim is within the jurisdiction of the court. *Mich. Ct. R. 2.111(B)(2)*.

**COUNSEL:** [*1] For Michigan Attorney General, Michigan Department of Treasury, intervenor-plaintiffs: Matthew Kenneth Payok, Michigan Attorney General (Corporate Oversight Division), Lansing, MI.

For Curtis Hertel, Register of Deeds and Representative of Ingham County, as Class Representative of all 83 counties in the State of Michigan, personal representative of Ingham, County of, Nancy Hutchins, Register of Deeds and Representative of Branch County, as Class Representative of all 83 counties in the State of Michigan, personal representative of Branch, County of, plaintiffs: Daniel P. Marsh, Daniel P. Marsh PLLC, Troy, MI; William E. Maxwell, Jr., Wm. Maxwell & Associates, Plymouth, MI.

For Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc., defendants: Brian Clark Summerfield, Bodman LLP (Detroit), Detroit, MI.

For Jeanne Kivi, Ellen Coon, Attorneys Title Agency, LLC, formerly known as Warranty Title Agency, LLC, defendants: Brock Allen Swartzle, Nicholas Benjamin Gorga, Honigman Miller Schwartz and Cohn LLP (Detroit), Detroit, MI; Joseph Aviv, Honigman Miller Schwartz & Cohn LLP (Oakland), Bloomfield Hills, MI.

For Marshall Isaacs, defendant: Gerald V. Padilla, Siemion Huckabay PC, Southfield, [*2] MI.

For Bank of America, N.A., defendant: Brian Clark Summerfield, Bodman LLP (Detroit), Detroit, MI; Joseph F. Yenouskas, Goodwin Procter LLP (DC), Washington, DC.

For JP Morgan Chase & Co., Chase Home Mortgage Corporation, formerly known as Chase Home Finance, defendants: Aaron L. Vorce, Dykema Gossett PLLC (Lansing), Lansing, MI; Joseph H. Hickey, Dykema Gossett PLLC (Bloomfield Hills), Bloomfield Hills, MI.

For Wells Fargo Bank, N.A., defendant: Matthew Joseph Boettcher, Plunkett Cooney (Bloomfield Hills), Bloomfield Hills, MI; Patrick C. Lannen, Plunkett Cooney, Bloomfield Hills, MI.

For CitiMortgage, Inc., defendant: Thomas V. Panoff, Mayer Brown LLP, Chicago, IL.

For eTITLE Agency, Inc., defendant: Timothy B. Myers, Orlans Associates PC, Troy, MI.

For Federal National Mortgage Association, defendant: Ann Marie Uetz, Foley & Lardner LLP (Detroit), Detroit, MI.

For Federal Housing Finance Agency, intervenor: Michael A.F. Johnson, Arnold & Porter LLP (DC), Washington, DC.

**JUDGES:** HON. ROBERT HOLMES BELL, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** ROBERT HOLMES BELL

**OPINION**

This matter is before the Court on Plaintiffs Nancy Hutchins and Curtis Hertel's motion to remand a state court action removed by Defendants the [*3] Federal National Mortgage Association ("Fannie Mae") and the Federal Housing Finance Agency ("FHFA") (Dkt. No. 1, Notice of Removal) and also Defendants JPMorgan Chase Bank, N.A. and Bank of America, N.A (the "Banks") (Dkt. No. 3, Joinder in Notice of Removal). (Dkt. No. 27, Mot. to Remand.) For the reasons that follow, Plaintiffs' motion to remand will be denied.

**I.**

On November 10, 2011, Hertel, Register of Deeds of Ingham County, and Hutchins, Register of Deeds of Branch County, filed a complaint in Ingham County Circuit Court. Plaintiffs' complaint alleged that multiple defendants, including Fannie Mae and the Banks, violated Michigan's State Real Estate Transfer Tax Act ("SRETTA") and County Real Estate Transfer Tax Act

("CRETTA"), *Mich. Comp. Laws §§ 207.502, 207.523*, by improperly claiming exemptions. On February 9, 2012, the summons issued by the circuit court for Fannie Mae expired without an order extending it. On February 27, 2012, the FHFA filed a motion to intervene in the circuit court. That same day, Fannie Mae and the FHFA filed a notice of removal in this Court, relying on *12 U.S.C. § 1723a(a)* and *28 U.S.C. §§ 1331, 1332(d), 1441(a),* and *1442(a)*. (Dkt. No. 1, Notice of [*4] Removal.) Also on that same day, the Banks joined in the notice of removal on the additional ground of diversity of citizenship jurisdiction pursuant to *28 U.S.C. § 1332(a)*. (Dkt. No. 3, Joinder in Notice of Removal.)

**II.**

As a general rule, [HN1] "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *28 U.S.C. § 1441(a)*. Similarly, [HN2] "[a] civil action or criminal prosecution that is commenced in a State court and that is against or directed to [an agency of the United States, among others,] may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending." *28 U.S.C. § 1442(a)*.

[HN3] Federal courts have original jurisdiction "over all civil actions where the amount in controversy exceeds the sum or value of $75,000" and there is complete diversity of citizenship. *28 U.S.C. § 1332(a)*. Additionally, [HN4] federal courts have original jurisdiction "of any civil action in which the matter in controversy [*5] exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." *28 U.S.C. § 1332(d)(2)*.

[HN5] Original jurisdiction is also present in "all civil actions arising under the Constitution, laws, or treaties of the United States." *28 U.S.C. § 1331*. Fannie Mae's federal statutory charter provides that [HN6] it "shall have power . . . to sue and be sued, and to complain and to defend, in any court of competent jurisdiction, state or federal." *12 U.S.C. § 1723a(a)*.

**III.**

Fannie Mae and the FHFA rely on different jurisdictional bases for removal than the Banks. Thus, the arguments pertaining to each set of defendants favoring removal will be discussed in turn.

### A. Fannie Mae and the FHFA

Fannie Mae and the FHFA assert numerous bases of removal jurisdiction. Fannie Mae relies on *§ 1441(a)*, while the FHFA relies on *§ 1442(a)* in addition to *§ 1441(a)*. (Dkt. No. 1, Notice of Removal 4-5.) A requirement under *§ 1441(a)* is that the federal courts have original jurisdiction. Thus Fannie Mae and the FHFA assert *12 U.S.C. § 1723a(a)* and *28 U.S.C. §§ 1331* and *1332(d)* as bases of original [*6] jurisdiction.

While Plaintiffs dispute the application of all of these original jurisdiction statutes, their primary contention is that neither Fannie Mae nor the FHFA had the right to remove under either *§§ 1441(a)* or *1442(a)* because neither was a party to the action at the time of removal. (Dkt. No. 27, Mot. to Remand ¶¶ 1-2, 4.) *Section 1441(a)* requires that a civil action in which the federal courts have original jurisdiction may be removed only "by the defendant or the defendants." Similarly, *§ 1442(a)* permits removal only by parties who a civil action is "against or directed to." If there is no removal jurisdiction under *§ 1441(a)* or *§ 1442(a)*, then it is irrelevant whether this Court would have original jurisdiction under *12 U.S.C. § 1723a(a)* or *28 U.S.C. §§ 1331*, *1332(d).*

### 1. Fannie Mae

The Plaintiffs concede that Fannie Mae was a named defendant in the original complaint. (Dkt. No. 27, Mem. in Supp. 5.) However, they argue that because the summons for Fannie Mae expired before it was served, Fannie Mae was dismissed from the case before it attempted to remove it. (*Id.*) Consequently, Plaintiffs conclude that Fannie Mae is not a defendant in the present action and cannot remove [*7] under *§ 1441(a).* The Court agrees with this conclusion, and thus it does not reach Fannie Mae's asserted bases for this Court's original jurisdiction under *§ 1723a(a)*, *§ 1332(d)*, or *§ 1331.*

According to Michigan law, [HN7] "[o]n the filing of a complaint, the court clerk shall issue a summons to be served" on a named defendant. *Mich. Court Rule 2.102(A).* Such a summons expires 91 days after the complaint is filed, although within that 91 days a plaintiff

may request an extension. *Mich. Court Rule 2.102(D).* However, absent such an extension, the following occurs:

> [HN8] On the expiration of the summons as provided in subrule (D), *the action is deemed dismissed* without prejudice as to a defendant who has not been served with process as provided in these rules, unless the defendant has submitted to the court's jurisdiction. . . . After the time stated in subrule (E)(1), the clerk shall examine the court records and enter an order dismissing the action as to a defendant who has not been served with process or submitted to the court's jurisdiction. *The clerk's failure to enter a dismissal order does not continue an action deemed dismissed* . . . The clerk shall give notice of the entry of a dismissal order [*8] under *MCR 2.107* and record the date of the notice in the case file. The failure to give notice does not affect the dismissal.

*Mich. Court Rule 2.102(E)* (emphasis added).

In this case, the complaint was filed on November 10, 2011, meaning that the service of summons expired on February 9, 2012. (Dkt. No. 27, Mem. in Supp. 5.) There was no extension requested. The fact that "Plaintiffs have not amended their complaint to remove Fannie Mae from the caption, to delete the paragraph identifying Fannie Mae as a defendant, or to excise the allegations and exhibits that refer to property transfers to which Fannie Mae is a party" (Dkt. No. 33, Resp. 5) is of no matter. The summons expired and Fannie Mae was dismissed, whether or not Plaintiffs took any action in regard to their complaint and whether or not an order dismissing Fannie Mae was filed. [1]

> 1  Indeed, under Michigan law, Plaintiffs were not allowed to amend their complaint. *See Mich. Court Rule 2.118(A)(1)* ([HN9] "A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party. . . "). Because there was never a responsive pleading, amending the complaint was not an option.

Fannie [*9] Mae does not assert that it submitted to

the state court's jurisdiction prior to being dismissed. Instead, Fannie Mae argues that it was entitled to remove the action despite the fact that Plaintiffs did not serve it with a timely complaint. (*Id.* at 6-8.) In support, it relies on *28 U.S.C. § 1448*:

> [HN10] In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

In support of the proposition that defects in service can be cured even when a defendant has been dismissed according to state law, Fannie Mae relies on an Eastern District of Michigan case: "The state court did not formally dismiss the matter, and the Michigan court rule that would 'deem' the matter dismissed as to a defendant not 'served with process as provided in [the Michigan] rules,' *Mich. Ct. R. 2.102(E)(1)*, does not govern federal courts." *Cowen v. Am. Med. Sys., Inc., 411 F. Supp.2d 717, 720 (E.D. Mich. 2006)*. [*10] Similarly, Fannie Mae relies on *Morton v. Wright, No. 06-14151, 2007 U.S. Dist. LEXIS 16352, 2007 WL 734965 (E.D. Mich. Mar. 8, 2007)*. In *Morton*, a properly-served party moved for removal and was joined by multiple unserved defendants. The court found it did have jurisdiction over the unserved defendants because they had consented to removal notwithstanding plaintiff's failure to serve them. Thus, Fannie Mae argues that this Court has jurisdiction over it because it has similarly consented to removal. (Dkt. No. 33, Resp. 7.)

However, *Cowen* and *Morton*'s conclusions on this matter are not established law, and this Court declines to follow them. [HN11] "[I]n determining the validity of service in the state court *prior to removal*, a federal court must apply the law of the state." 4A Wright & Miller, Federal Practice and Procedure § 1082 (emphasis added). *After removal*, then federal law governs and defects in service can be cured pursuant to *§ 1448*. *Id.* Because state law deemed Fannie Mae dismissed and the matter was closed prior to the removal, state law controls on that matter and *§ 1448* cannot be used to bring back Fannie

Mae as a party.

Multiple circuits have held that *§ 1448* possesses this limitation. According to the [*11] Third Circuit, "[i]mplicit in our conclusion is that [HN12] *§ 1448* cannot be utilized to breathe jurisprudential life in federal court into a case legally dead in state court." *Witherow v. Firestone Tire & Rubber Co., 530 F.2d 160, 168 (3d Cir. 1976)*. The First Circuit has cited *Witherow* with approval in holding that the application of *§ 1448* "would ignore [plaintiff's] procedural deficiency in state court . . . .We decline to use *Section 1448*, as the district court noted, to 'breathe jurisprudential life in federal court to a case legally dead in state court.'" *Osborne v. Sandoz Nutrition Corp., 67 F.3d 289, 289 (1st Cir.1995)* (quoting *Witherow, 530 F.2d at 168*). *See also Marshall v. Warwick, 155 F.3d 1027, 1033 (8th Cir. 1998)* ([HN13] "We do not believe that [*§ 1448*] can 'resurrect' a removed diversity case which would have been dismissed as time-barred had it remained in state court."); *Lee v. City of Beaumont, 12 F.3d 933, 937 (9th Cir. 1993)* ([HN14] "[*Federal Rule of Civil Procedure] 4(j)* does not apply to service of process which was attempted prior to removal; the sufficiency of service in this case is determined according to state law because service of process occurred before removal."); *Morton v. Meagher, 171 F. Supp.2d 611, 615 (E.D. Va. 2001)* [*12] ("On this record, service was not effected within the time frame prescribed by state statute and, therefore, the case was 'dead' before it was removed to federal court.")

In conclusion, this Court declines to follow *Cowen* and *Morton* and instead chooses to follow the myriad of decisions holding that [HN15] *§ 1448* cannot revive an action deemed dismissed under state law. Therefore, Fannie Mae is not a party to this case, meaning that this Court's jurisdiction cannot be predicated on the original jurisdiction arguments unique to Fannie Mae.

**2. The FHFA**

Plaintiffs also argue that the FHFA cannot rely on either *§ 1441(a)* or *1442(a)* because it was not a party in the state court action. (Dkt. No. 27, Mem. in Support 12-19.) This is because at the time of removal, there was a pending motion by the FHFA to intervene in the state court case. Nevertheless, the FHFA contends that it can properly remove the case pursuant to *28 U.S.C. § 1442(a)* even though it was not a party to the state action. (Dkt. No. 33, Resp. 11-12.) The Court declines to rule on the FHFA's standing to remove because such a ruling is

unnecessary in light of the Court's conclusion in Part B below that the Court possesses diversity jurisdiction [*13] pursuant to *28 U.S.C. § 1332* as argued by the Banks.

**B. The Banks**

The Banks have joined in Fannie Mae and FHFA's notice of removal. (Dkt. No. 3, Joinder in Notice of Removal.) The Banks concur that this Court has original jurisdiction based on the federal question grounds put forth by Fannie Mae and the FHFA, but they also request removal on the additional ground of diversity jurisdiction pursuant to *28 U.S.C. § 1332*. (*Id.* at 2.) Because there is no dispute that the Banks are defendants in the present matter, the applicability of *§ 1441(a)* is not in question, and the analysis rests on the applicability of the original jurisdiction statute, *§ 1332*. The Court finds that *§ 1332* is applicable and that the removal by the Banks was proper.

[HN16] Federal courts have original jurisdiction in all matters involving completely diverse parties where there is more than $75,000 in controversy. *§ 1332*. Complete diversity requires every plaintiff to be diverse from every defendant. The Banks do not dispute that this matter lacks complete diversity. However, they contend that the non-diverse individuals and companies have been fraudulently joined. (Dkt. No. 3, Joinder in Notice of Removal ¶ 17.) Because Plaintiffs [*14] have not asserted a colorable claim against Marshall Isaacs, Jeanne Kivi, Ellen Coon, eTitle Agency, Inc., 1st Choice Title Services, Inc., and Attorneys Title Agency LLC, (the "Non-Diverse Defendants"), the Banks ask that the Court find diversity jurisdiction and deny Plaintiffs' motion to remand. (*Id.*) Plaintiffs contend that it has colorable claims against all of the Non-Diverse Defendants, and thus there is not complete diversity. (Dkt. No. 39, Reply 2-10.) Alternatively, they contend that the amount in controversy requirement has not been satisfied. [2] (*Id.* at 10.)

> 2 Plaintiffs also contend that removal by the Banks was untimely. (Dkt. No. 39, Reply 1-2.) This argument has no merit. Chase was served on January 30, 2012. Bank of America was served on January 27, 2012. Ignoring for the sake of argument the last-served defendant rule, and only looking at Bank of America's time-line for removal (*28 U.S.C. § 1446* provides 30 days from service), the thirtieth day after their service was February 26, 2012, a Sunday. Pursuant to *Federal Rule of Civil Procedure 6(a)(1)(C)*, the time to remove was thus extended to Monday, February 27, 2012, the day the Banks filed their motion to remove. (*See* [*15] Dkt. No. 3, Joinder in Notice of Removal.)

**1. Complete Diversity/Fraudulent Joinder**

[HN17] "[F]raudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999)*. The removing party bears the burden of proving fraudulent joinder:

> [T]he removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party." All doubts as to the propriety of removal are resolved in favor of remand.

*Id.* (quoting *Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994)*) (citations omitted). [HN18] There can be no fraudulent joinder unless it is "clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law." *Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968)*; [*16] *see also Alexander, 13 F.3d at 949*. "The question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Id.*

The Complaint asserts multiple claims against the Non-Diverse Defendants: (1) failure to pay transfer taxes under SRETTA and CRETTA when the transfer documents are filed; (2) preparing transfer instruments "not in conformity with" SRETTA and CRETTA; (3) statutory conversion; and (4) conversion of an instrument. Plaintiffs also seek a declaratory judgment that the activities of all defendants are in violation of SRETTA and CRETTA. They argue that all of these claims are colorable.

**I) Failure to Pay Transfer Tax**

Plaintiffs assert three bases of liability for the Non-Diverse Defendants based on their failure to pay the transfer tax: (1) liability for not affixing the proper transfer tax stamps on the transfer documents when filed; (2) liability as agents of sellers or grantors; [3] and (3) liability under a "concert of action" theory.

> 3   Plaintiffs do not directly assert this basis of liability. However, their complaint refers to the Non-Diverse Defendants as "agents" (*see, e.g.,* Dkt. No. 1, Ex. A, Compl. ¶ 33) and [*17] asserts that their alleged statutory duty to affix stamps *in conjunction* with the fact that "they were working with/for the grantor/seller who is responsible for the payment" (Dkt. No. 39, Reply 4) gives rise to liability. Moreover, their reply belief contains the heading "The Non-Diverse Defendants are Liable as Agents of Sellers or Grantors." (*Id.* at 3.) Thus, Plaintiffs appear to be relying on an agency theory. To the extent that Plaintiffs do not wish to rely upon an agency theory, discussion of this basis of liability may be ignored.

First, Plaintiffs argue that SRETTA and CRETTA impose liability on those responsible for making, executing, issuing, and/or delivering instruments subject to the transfer tax at issue, if such people fail to affix a stamp indicating the tax has been paid and fail to pay the tax at the time of filing. (Dkt. No. 1, Ex. A, Compl. ¶¶ 14-16, 22-24.) In support, they cite *Michigan Compiled Laws § 207.507*: [HN19] "The tax imposed by this act shall be evidenced by the affixing of a documentary stamp or stamps to every instrument subject to the tax imposed by this act by the person making, executing, issuing or delivering such document."

There can be no recovery under [*18] state law on this claim because *§ 207.507* provides no basis of liability for such persons. All this section does is indicate that a documentary stamp must be affixed to instruments subject to the tax to prove that the tax has been paid. It does not impose liability on the makers or executors of the instruments for failing to properly stamp the instruments and pay the transfer tax at the time of filing. Indeed to impose liability on such persons would contradict [HN20] the plain language of the statute, which limits imposition of the transfer tax to a "seller or grantor." *See Mich. Comp. Laws §§ 207.502(2), 207.523(2).*

Plaintiffs admit that the sellers and grantors are directly responsible for the taxes, but then jump to the conclusion that "if such persons does [sic] not draft, sign, issue, or deliver such an instrument, *those that do are responsible for the instrument being properly stamped with the applicable taxes due.*" (Dkt. No. 39, Reply 3 (emphasis added).) There is no basis whatsoever in the statutes for such a conclusion, and, in fact, this conclusion contradicts the plain language limiting liability to sellers or grantors. Thus, because Plaintiffs do not argue that the Non-Diverse [*19] Defendants were sellers or grantors, they cannot sustain a cause of action against them under this theory.

Second, Plaintiffs argue that the Non-Diverse Defendants may be held liable as agents of the statutorily liable sellers and grantors. (Dkt. No. 1, Ex. A, Compl. ¶ 33; Dkt. No. 39, Reply 3.) Plaintiffs argue that because these defendants had a specific statutory duty to ensure payment by the stamp requirement, and they were working for the sellers and grantors responsible for the payment, they can be held liable for the violation of their statutory duty which resulted in nonpayment of the transfer tax. (Dkt. No. 39, Reply 4.)

Again, state law provides no recovery under this theory. The statute does not extend liability to agents of sellers and grantors. Nor is there any common law basis for extending liability in this manner. "Under long-settled principles of contract law, [HN21] agency agreements do not create any rights in third parties, even a party as to whom the principal owes some performance and for whose benefit the principal has retained an agent to render it." *Uniprop, Inc. v. Morganroth, 260 Mich. App. 442, 678 N.W.2d 638, 641 (Mich. Ct. App. 2004)* (quoting *Koppers Co., Inc. v. Garling & Langlois, 594 F.2d 1094, 1098 (6th Cir. 1979)).* [*20] Plaintiffs have not argued that any exception to this principle is present, nor does it appear to the Court that any such argument would have merit.

Third, Plaintiffs argue that the Non-Diverse Defendants face liability under a concert of action theory "[b]ecause each of the types of Defendants have statutory duties [meaning that] their conduct working together can be the only way the proper transfer tax is not paid." (Dkt. No. 39, Reply 4; *see also* Dkt. No. 1, Ex. A., Compl. ¶ 33.) This claim is not colorable.

[HN22] There are three elements a plaintiff must satisfy to succeed on a concert of action theory of liability

in Michigan: "plaintiff must show, first, that all defendants acted tortiously; second, that plaintiff was harmed by one of the defendants; and, third, that plaintiff, 'through no fault of [his or her] own, [is] unable to identify which actor caused the injury.'" *Cousineau v. Ford Motor Co., 140 Mich. App. 19, 363 N.W.2d 721, 727 (Mich. Ct. App. 1985)* (quoting *Abel v. Eli Lilly & Co., 418 Mich. 311, 343 N.W.2d 164, 173 (Mich. 1984)).*

As discussed above, Plaintiffs are unable to show that any of the Non-Diverse Defendants violated SRETTA or CRETTA individually because there is no liability under those statutes [*21] for such makers and executors. At most, only a seller or grantor can be liable for violating these statutes, so any alleged defects in the deeds prepared and executed by the Non-Diverse Defendants are not actionable. Without at least potential liability under SRETTA and CRETTA for the Non-Diverse Defendants, Plaintiff's concert of action theory fails. This conclusion is inevitable regardless of the " working together" and "much more than a tacit agreement" scenarios hypothesized by Plaintiffs. (Dkt. No. 39, Reply 4.)

### ii) Preparing Non-Conforming Transfer Documents

Next, Plaintiffs allege that the Non-Diverse Defendants are liable under SRETTA and CRETTA for knowingly preparing transfer documents "not in conformity with" the statutes. (Dkt. No.1, Ex. A, Compl. ¶¶ 39-42.) Alleged deficiencies include the failure to state the true value of the property, the failure to state any applicable tax exemption, and the stating of improper exemptions. (*Id.* at ¶¶ 40, 42.) Plaintiffs admit the statutes are silent as to whether or not a private right is conferred on anyone and ask this Court to infer one. (Dkt. No. 39, Reply 5.)

First, it should be noted that SRETTA and CRETTA do impose remedies for [*22] certain conduct. [HN23] Among others, it is a criminal offense for any person to fraudulently remove or tamper with a documentary stamp and for any person to knowingly issue a fraudulent affidavit. *Mich. Comp. Laws §§ 207.512, 207.534.*

"As a general rule, [HN24] the remedies provided by statute for violation of a right having no common-law counterpart are exclusive. However, an exception to this general rule provides that if the statutory remedy is plainly inadequate, a private cause of action can be inferred." *Int'l Bhd. of Elec. Workers, Local Union No. 58*

*v. McNulty, 214 Mich. App. 437, 543 N.W.2d 25, 29 (Mich. Ct. App. 1995)* (citing *Forster v. Delton Sch. Dist., 176 Mich. App. 582, 440 N.W.2d 421 (Mich. Ct. App. 1989); Dudewicz v. Norris Schmid, Inc., 443 Mich. 68, 503 N.W.2d 645 (Mich. Ct. App. 1993)).* The Michigan statutes provide criminal sanctions for certain documentary deficiencies. These remedies do not become "plainly inadequate" just because the "statutory remedies are not as comprehensive as plaintiffs . . . would like." *Id. at 30.*

Plaintiffs dismiss the relevance of these statutory sanctions, arguing that "[a] close review of the SRETT and CRETT sections providing for criminal sanctions HAVE NOTHING WHATSOEVER TO DO WITH THE NON-PAYMENT [*23] OF TAXES." (Dkt. No. 39, Reply 5.) That is beside the point. Plaintiffs independently argued that the Non-Diverse Defendants were liable for not paying the transfer taxes, and this Court found those arguments to lack merit. *See supra* Part B(1)(i) (discussing Dkt. No. 1, Ex. A, Compl. ¶¶ 14-16, 22-24). Later on in their complaint, in the part being analyzed here, Plaintiffs allege that it was *also* wrongdoing for the Non-Diverse Defendants to make or execute instruments "not in conformity with" SRETTA and CRETTA. (Dkt. No. 1, Ex. A, Compl. ¶¶ 39-42.) In support of this allegation, Plaintiffs alleged documentary deficiencies for which the Non-Diverse Defendants were responsible. While the statutes do not provide criminal sanctions for the alleged documentary deficiencies, they do provide sanctions for some documentary deficiencies, meaning these statutory remedies are relevant.

To the extent that Plaintiffs' arguments against the relevance of these sections of SRETTA and CRETTA can be understood as a request for the Court to imply a right of action for the allegations discussed in Part B(1)(i), any cause of action inferred by the Court would not aid Plaintiffs. The statutes are not silent [*24] on failure to pay the transfer tax as Plaintiffs claim. While the statutes may not directly spell out an enforcement mechanism, they do clearly state which persons may be held liable for the failure to pay the transfer taxes. As mentioned above, the statutes are clear that the tax is only upon a seller or grantor. Thus, if the Court were to infer a cause of action regarding tax liability, [4] it would only allow Plaintiffs to sue a seller or grantor, and it would not make Plaintiffs' otherwise baseless claims against the other defendants colorable.

4  While Plaintiffs devote time in their reply brief to their standing to sue to collect unpaid transfer taxes (Dkt. No. 39, Reply 6-7), the Court declines to reach this issue, because Plaintiffs' standing to sue the Lender-Defendants (the sellers and grantors potentially liable for such taxes) has not been raised by any defendant.

### iii) Statutory Conversion

Plaintiffs also assert liability against the Non-Diverse Defendants for conversion. (Dkt. No. 1, Ex. A, Compl. ¶¶ 58(c),(f), 60(c),(f).) Plaintiffs' theory is that the sellers and grantors failed to pay the taxes which were due and converted the tax proceeds to their own use, using improper [*25] and unlawful drafting techniques aided by the Non-Diverse Defendants. (Dkt. No. 39, Reply 8.) In reliance, Plaintiffs cite [HN25] *Michigan Compiled Laws § 600.2919a(1)(b)*:

[Liability exists for] [a]nother person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

However, Plaintiffs specifically allege that the Non-Diverse Defendants "aided in the conversion process." (Dkt. No. 39, Reply 8.) This is not the appropriate standard under *§ 600.2919a(1)(b)*. [HN26] Aiders are only liable for statutory conversion if their aid comes *after* property has been converted. *See § 600.2919a(1)(b)* (using the past tense when describing liability for those parties "aiding in the concealment of *stolen, embezzled, or converted* property") (emphasis added). *See also In re Pixley, 456 B.R. 770, 786 (Bankr. E.D. Mich. 2011)*; *Burg v. Burg, No. 284131, 2009 Mich. App. LEXIS 1878, 2009 WL 2951282, at *5 (Mich. Ct. App. Sept. 15, 2009)*. Plaintiffs have not alleged that the Non-Diverse Defendants played [*26] any role aiding in the concealment of converted property after a conversion occurred. If any conversion did occur, it happened upon the filing of the allegedly improper documents with the state, and there is no allegation that the Non-Diverse Defendants did anything after that. Thus, these

defendants cannot be liable for statutory conversion.

### iv) Conversion Through an Instrument

Similarly, Plaintiffs allege that the Non-Diverse Defendants are liable for conversion through an instrument. (Dkt. No. 1, Ex. A, Compl. ¶¶ 58(c), 60(c).) Such a claim requires the following:

[HN27] The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

*Mich. Comp. Laws § 440.3420*. Plaintiffs' theory is that "[b]ased on Defendants' failure to pay transfer taxes at the time of filing, they were receiving payments in the amount of the transfer taxes to which they were not entitled." (Dkt. No. 39, Reply 8.)

This claim is not colorable. [*27] Plaintiffs rely on the fact that an instrument is considered converted if a bank makes payment with respect to an instrument to a person not entitled to receive payment. (Dkt. No. 39, Reply 8.) Plaintiffs are correct that this is a basis for conversion through an instrument. But their theory under this basis is that because Defendants failed to pay transfer taxes at the time of filing, they were receiving payments in the amount of the transfer taxes to which they were not entitled. (*Id.*) To the extent that an unpaid tax can constitute a "payment" to the nonpaying party, this claim can only establish conversion through an instrument for the sellers and grantors benefiting from the unpaid taxes. The Non-Diverse Defendants did not receive any "payment" by filing these instruments with allegedly inapplicable exemptions because they would not be the ones making payment in the absence of such exemptions. *See Mich. Comp. Laws §§ 207.502(2), 207.523(2)* (limiting transfer tax liability to sellers and grantors). [HN28] There can be no conversion by a party not receiving any benefit. Consequently, even if the Non-Diverse Defendants knowingly filed documents with fraudulent bases of avoiding tax liability, [*28] they cannot be held liable for conversion through an

instrument.

#### v) Declaratory Relief

Last, Plaintiffs seek a declaratory judgment against the Non-Diverse Defendants. (Dkt. No.1, Ex. A, Compl. ¶¶ 58(a), 60(a).) However, once again Plaintiffs ask this Court to find an implied cause of action against the Non-Diverse Defendants who are only the makers and executors of the transfer instruments. (Dkt. No. 39, Reply 9-10.) As previously discussed, there is no basis in the statutory scheme, express or implied, for such a cause of action. *See supra* Part B(1)(ii). Thus, Plaintiffs' attempt to seek a declaratory judgment does not have a colorable basis.

#### 2. Amount in Controversy

Alternatively, Plaintiffs contend that diversity jurisdiction is improper because the amount-in-controversy requirement is not satisfied. Plaintiffs contend that "there is a very good chance that at least one defendant will not meet the $75,000 requirement." (Dkt. No. 39, Reply 10.) This is a misstatement of the law. [HN29] The amount-in-controversy requirement can be met by one plaintiff's claims against one defendant. "To satisfy the amount-in-controversy requirement at least one plaintiff's claim must independently meet the [*29] amount-in-controversy specification." *Everett v. Verizon Wireless, Inc., 460 F.3d 818, 822 (6th Cir. 2006)* (citing *Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 559, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005)*). Once one plaintiff satisfies the amount-in-controversy requirement as to one defendant, *28 U.S.C. § 1367* permits supplemental jurisdiction over claims by other plaintiffs and claims against other defendants. *Exxon Mobil, 545 U.S. at 559*.

[HN30] The burden of showing that the amount-in-controversy requirement is met falls on the defendant in removal actions:

> Generally, because the plaintiff is 'master of the claim,' a claim specifically less than the federal requirement should preclude removal. State counterparts to *Fed.R.Civ.P. 54(c)* might enable a plaintiff to claim in her complaint an amount lower than the federal amount in controversy but nevertheless seek and recover damages

> exceeding the amount prayed for. . . . In such situations, the removing defendant must show that it is "more likely than not" that the plaintiff's claims meet the amount in controversy requirement.

*Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 871 (6th Cir. 2000)* (citing *Gafford v. Gen. Elec. Co., 997 F.2d 150, 157-58 (6th Cir. 1993)*); [*30] *see also Everett v. Verizon Wireless, Inc., 460 F.3d 818, 822 (6th Cir. 2006)*. The "more likely than not" burden "does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages." *Gafford, 997 F.2d at 159*.

In state court, Plaintiffs pleaded damages that exceeded $25,000. (Dkt. No. 1, Ex. A, Compl. ¶ 4.) Michigan Court Rules provide that [HN31] a plaintiff must plead a specific amount if the claims are for a sum certain, but that otherwise "a specific amount may not be stated, and the pleading must include allegations that show that the claim is within the jurisdiction of the court." *Mich. Court Rules 2.111(B)(2)*. Because Plaintiffs did not seek a sum certain and could recover more than the $25,000 pleaded, the burden is on the removing defendant to show that it is more likely than not that the actual value of the claims of at least one plaintiff against one defendant exceeds $75,000.

The Banks note that Plaintiffs seek unpaid transfer tax from the last 15 years in their respective [*31] counties. Thus, the Banks allege that the amount-in-controversy requirement is met by estimating the number of MERS-registered mortgages for properties located in Ingham and Branch Counties, and then applying the county and state transfer taxes to the value of these estimated properties . (Dkt. No. 32, Resp. 17.) They conclude that "the alleged unpaid taxes far exceed $75,000." (*Id.*) Moreover, they point out that the value in controversy is even higher than this number given the fact that Plaintiffs ask for damages to be trebled. (*Id.* (citing Dkt. No. 1, Ex. A, Compl. ¶¶ 58(c), 60(c).) Plaintiffs have not alleged that the numbers used by defendants are incorrect or misleading.

However, the Banks did incorrectly use data from both Branch and Ingham County to calculate the

approximate amount in controversy. The claims of only one plaintiff may be used, which means that the Banks should have limited the data estimating the number of MERS-registered mortgages to one county. Nevertheless, even halving the Banks' numbers results in an amount-in-controversy over $75,000. Instead of the alleged unpaid taxes "far exceeding" $75,000, the Court would have to consider the alleged unpaid taxes to [*32] only exceed $37,500. But that is no matter, since tripling this number (as Plaintiffs seek to triple their damages) amounts in a number well above the $75,000 threshold. While these calculations do not prove to a legal certainty that one plaintiff's claims against MERS exceed $75,000, they are sufficient for the Court to find that it is more likely than not.

**IV.**

Multiple parties have joined in removal of the present action to federal court. The Court finds that Fannie Mae was deemed dismissed under state law and had no standing to remove this action. Whether the FHFA had standing to remove the action is not reached because the Court finds that the Banks had standing to remove the action and that the Court has original jurisdiction pursuant to *§ 1332* and the doctrine of fraudulent joinder. Consequently, Plaintiffs' motion to remand will be denied.

An order consistent with this opinion will be entered.

Dated: October 4, 2012

/s/ Robert Holmes Bell

ROBERT HOLMES BELL

UNITED STATES DISTRICT JUDGE



JEROME MCKINLEY versus SANDERSON FARMS, INC., et al.

CIVIL ACTION No. 06-0044 SECTION: I/4

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
LOUISIANA

*2006 U.S. Dist. LEXIS 16869*

March 6, 2006, Decided

**COUNSEL:** [*1] For Jerome McKinley, Plaintiff: Robert Ellis Palmer, Robert Ellis Palmer, Attorney at Law, Ponchatoula, LA.

For Sanderson Farms Inc, Defendant: James Richard Swanson, Loretta G. Mince, Correro Fishman Haygood Phelps, Walmsley & Casteix, LLP, New Orleans, LA.

**JUDGES:** LANCE M. AFRICK, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** LANCE M. AFRICK

**OPINION**

**ORDER AND REASONS**

Before the Court is the motion to dismiss filed by defendant, Sanderson Farms, Inc. ("Sanderson Farms"). [1] Defendant argues that plaintiff, Jerome McKinley, did not timely request service of process and, therefore, his complaint should be dismissed. For the following reasons, defendant's motion is **GRANTED.**

1 Rec. Doc. No. 2.

*BACKGROUND*

Plaintiff, a citizen of Louisiana, filed this action on January 3, 2005, in the 21st Judicial District Court for the Parish of Tangipahoa, Louisiana. Plaintiff sued

"Sanderson Farms, Inc., and/or its subsidiary referred to as Processing Division," as well as an unnamed insurance company. [2] Defendant [*2] is a Mississippi corporation with its principal place of business in Mississippi. [3] Plaintiff was employed by Sanderson Farms, Inc. (Processing Division) ("the Processing Division"). [4] Counsel for defendant represented to the Court that the Processing Division is a Mississippi corporation separate from Sanderson Farms, with its principal place of business in Mississippi. [5]

2 Rec. Doc. No. 4, Pl.'s Ex. I, p. 1.
3 Rec. Doc. No. 1, p. 3.
4 Rec. Doc. No. 2, Def.'s Ex. A, p. 3.
5 Rec. Doc. No. 9, Def.'s Ex. B, p. 2.

Plaintiff's complaint initially requested that the state clerk of court withhold service. [6] On March 3, 2005, plaintiff submitted a handwritten note to the clerk of court asking, "Please serve Defendant through registered agent for service of process at address in article II of original petition." [7] Article II of the original petition, however, did not name defendant's registered agent and only stated that this agent had a service address "on St. Charles Avenue in New Orleans, Louisiana. [*3] " [8] Defendant states that the clerk of court did not act on this request. [9]

6 Rec. Doc. No. 4, Pl.'s Ex. I, p. 2.
7 Rec. Doc. No. 4, Pl.'s Ex. I, p. 6.
8 Rec. Doc. No. 4, Pl.'s Ex. I, p. 1.

9   Rec. Doc. No. 9, p. 2.

On March 4, 2005, plaintiff faxed another request to the state clerk of court, this time requesting service of process on Louis Y. Fishman, Esq., the registered agent for Sanderson Farms, Inc. (Production Division) ("the Production Division"). [10] The request included Mr. Fishman's entire address. [11] The Production Division, however, is not a named defendant, and it is a separate corporation from Sanderson Farms and the Processing Division. Defendant states that the clerk of court did not act on this request either and that Sanderson Farms actually has no registered agent in Louisiana. [12]

10   Rec. Doc. No. 4, Pl.'s Ex. I, p. 8.
11   *See* http://www.sos.louisiana.gov/cgibin?rqst yp=crpdtlC&rqsdta=33520480F (last visited Apr. 4, 2006).

[*4]

12   Rec. Doc. No. 9, p. 2.

Plaintiff made a third request for service of process on November 18, 2005, and a summons was issued for defendant though Mr. Fishman. Mr. Fishman received process for defendant; however, defendant claims that Mr. Fishman is not its registered agent. [13]

13   Rec. Doc. No. 9, p. 3.

On January 5, 2006, defendant removed the case to federal court, reserving its objections to personal jurisdiction and the propriety of service of process. [14] Defendant alleges in its removal petition that this Court has jurisdiction based on diversity of citizenship pursuant to *28 U.S.C. § 1332*. Defendant filed the instant motion on January 12, 2006, and plaintiff's opposition was filed on February 7, 2006. [15]

14   Rec. Doc. No. 1, p. 2.
15   Plaintiff's opposition includes a request that the Court grant plaintiff "the right to seek an award of damages and attorneys fees in connection with Defendants [sic] attempts to dismiss the action on false and erroneous claims which were asserted in this action without just or probable cause." Rec. Doc. No. 4, p. 2. Because the Court finds defendant's motion meritorious, the Court does not address plaintiff's request.

[*5] *LAW AND ANALYSIS*

The state law pursuant to which service was made governs this Court's determination of the sufficiency of service made prior to removal. *See Freight Terminals, Inc. v. Ryder Sys., Inc., 461 F.2d 1046, 1052 (5th Cir. 1972)* ("The district court must look to state law to ascertain whether service was properly made prior to removal . . . ."); *see also Romo v. Gulf Stream Coach, Inc., 250 F.3d 1119, 1122 (7th Cir. 2001)* (applying Illinois law mandating dismissal due to lack of diligence in effecting service of process); *Marshall v. Warwick, 155 F.3d 1027, 1033 (8th Cir. 1998)* (applying South Dakota law); *see generally* Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, Civil 3d. § 1082 (West 2002 & Supp. 2003).

*Louisiana Code of Civil Procedure article 1201* requires that service of process be requested on a defendant within 90 days of filing the petition. If the petition is not timely served, the action must be involuntarily dismissed without prejudice unless good cause is shown why service could not have been timely requested. La. Code Civ. P. art 1672(C). The Louisiana Supreme Court [*6] has held, however, that "the requirement that service upon defendant be requested within the 90-day period should reasonably be read to require an accurate request of service upon the proper agent for defendant." *Barnett v. La. State Univ. Med. Center-Shreveport, 841 So. 2d 725, 726 (La. 2003)*; *see also Pylant v. Jefferson Parish, 907 So. 2d 807, 809 (La. App. 5th Cir. 2005)* (following *Barnett); Thomas v. La. Dep't of Pub. Safety & Corr., 848 So. 2d 635, 639 (La. App. 1st Cir. 2003)* (citing *Barnett* and finding "the request for service of process upon the wrong agent for service of process . . . was not a valid and effective request") (internal quotation omitted). "Mere confusion regarding a party's correct name or inadvertence in requesting service on the part of the plaintiff's counsel is not a sufficient basis for good cause." *Norbert v. Loucks, 791 So. 2d 1283, 1285 (La. 2001)* (citing *Patterson v. Jefferson Davis Parish Sch. Bd., 773 So. 2d 297 (La. App. 3d Cir. 2000)* and *Lewis v. Spence, 772 So.2d 354 (La. App. 3d Cir. 2000))*.

In conference, plaintiff admitted that--with the [*7] knowledge that Sanderson Farms and the Processing Division are separate corporations--he has no viable claim against Sanderson Farms. Because of this admission and the failure of plaintiff to properly request service on defendant, Sanderson Farms should be dismissed.

The Processing Division, plaintiff's intended target, is not yet a party to this action by virtue of plaintiff's failed service requests. The Processing Division has, as of this date, never been served. Any challenges the Processing Division may have to the propriety of plaintiff's service are not before this Court.

The only request for service that may have been proper was the March 4, 2005, request that plaintiff made on the Production Division. [16] It is unclear what claims, if any, plaintiff may have against that corporation. The Production Division is not a party to this action, though, and the Court offers no opinion as to the propriety of service with regard to that entity. [17]

> 16    As discussed *supra,* and according to defendant, the state clerk of court never acted on this request for service.
>
> 17    Defendant's memorandum also argues that this Court lacks personal jurisdiction over defendant. Defendant correctly notes that "when a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994); see also Kelso v. Lyford Cay Members Club, No. 04-11512, 162 Fed. Appx. 361, 2006 U.S. App. LEXIS 979, *4 (5th Cir. 2006).* Plaintiff offers no argument or evidence to suggest that personal jurisdiction is proper in this case; this omission provides an alternative basis to support dismissal of plaintiff's case.

[*8] Accordingly,

**IT IS ORDERED** that defendant's motion to dismiss is **GRANTED** and plaintiff's action is dismissed **without prejudice.**

New Orleans, Louisiana, March 6th, 2006.

**LANCE M. AFRICK**

**UNITED STATES DISTRICT JUDGE**



JOYCE E. PATTERSON, as Administratrix of the Estate of Yolanda Evett
Patterson Hemphill, Plaintiff, vs. STEVEN BROWN, et al., Defendants.

CIVIL CASE NO. 3:06cv476

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
NORTH CAROLINA, CHARLOTTE DIVISION

*2008 U.S. Dist. LEXIS 9312*

January 23, 2008, Decided
January 24, 2008, Filed

**SUBSEQUENT HISTORY:** Amended by *Patterson v. Brown, 2008 U.S. Dist. LEXIS 24195 (W.D.N.C., Mar. 3, 2008)*
Reversed by, in part, Appeal dismissed by, in part, Remanded by *Patterson v. Whitlock, 2010 U.S. App. LEXIS 17626 (4th Cir. N.C., Aug. 23, 2010)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff administratrix filed a state court action, asserting claims under *42 U.S.C.S. § 1983* and state law claims for assault, negligence, intentional infliction of emotional distress, wrongful death, negligent training, and negligent retention and supervision. After the action was removed, defendants, a store, a county, county officials, and a prison health services corporation, filed motions to dismiss for insufficient service of process.

**OVERVIEW:** Although plaintiff's attempt to effect service on defendants by leaving copies of the complaint and summonses on the desks of county administrative assistants did not comply with N.C. Gen. Stat. § 1A-1, N.C. R. Civ. P. 4, *28 U.S.C.S. § 1448* provided plaintiff an opportunity to correct deficiencies in service that occurred prior to removal. The court determined that under *Fed. R. Civ. P. 4(m)*, plaintiff had 120 days from the date of removal to effect service of process in

accordance with *Rule 4*. Finding that the store, the county, and the county officials were not served with a copy of the complaint that included pages 11 through 26 of the 39-page complaint, the court held that plaintiff failed to carry her burden of showing that full and complete copies of the complaint were served upon those defendants as required by *Rule 4(c)*. Plaintiff did not properly effect service on the prison health services corporation because the corporation was served with blank, unsigned summonses that did not contain the seal of the court. Plaintiff did not demonstrate good cause for extending the period for service under *Rule 4(m)* because plaintiff was not diligent in her attempts to serve defendants.

**OUTCOME:** The court granted defendants' motion to dismiss for failure to effect proper service and denied plaintiff's motion to extend the time for service.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Service of Process > Summons > Issuance*
[HN1] North Carolina law requires the issuance of summons within five days of filing a civil action. N.C. Gen. Stat. § 1A-1, N.C. R. Civ. P. 4(a). If summons is not

2008 U.S. Dist. LEXIS 9312, *

issued within five days, the action abates and is deemed never to have commenced. Absent issuance of a summons, the court cannot acquire jurisdiction over the person or the subject matter of the action.

***Civil Procedure > Pleading & Practice > Service of Process > Methods > Personal Delivery***
***Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents***
***Governments > Local Governments > Claims By & Against***
[HN2] N.C. Gen. Stat. § 1A-1, N.C. R. Civ. P. 4(j)(5)(b) permits service upon a county by personal delivery to the county manager or to the chairman, clerk or any member of the board of commissioners for such county. N.C. Gen. Stat. § 1A-1, N.C. R. Civ. P. 4(j)(5)(c) permits service upon a county unit or body by personal delivery to an officer or director thereof or to an agent or attorney-in-fact authorized by appointment or by statute to be served or to accept service in its behalf.

***Business & Corporate Law > Corporations > General Overview***
***Civil Procedure > Pleading & Practice > Service of Process > Methods > Personal Delivery***
***Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents***
[HN3] N.C. Gen. Stat. § 1A-1, N.C. R. Civ. P. 4(j)(6)(a) permits service on a corporation by delivery to an officer, director, or managing agent or by leaving copies in office of an officer, director, or managing agent with person in charge of the office. N.C. Gen. Stat. § 1A-1, N.C. R. Civ. P. 4(j)(6)(b) permits service by delivery to an agent authorized by appointment or by law to accept service of process.

***Civil Procedure > Removal > General Overview***
***Civil Procedure > Removal > Proceedings > General Overview***
***Civil Procedure > Pleading & Practice > Service of Process > General Overview***
[HN4] See *28 U.S.C.S. § 1448*.

***Civil Procedure > Removal > General Overview***
***Civil Procedure > Pleading & Practice > Service of Process > General Overview***
[HN5] Even if service of process was defective in a state

court proceeding or was never even attempted at all, *28 U.S.C.S. § 1448* affords a plaintiff an opportunity upon removal (1) to serve any defendants not served in the state court proceeding and (2) to re-serve any defendants who were improperly served while the matter was pending in state court. *Section 1448* indicates a philosophy that removed cases are to be handled substantially as though they had never been in a state court. Thus, when one of several defendants was not served prior to removal it has been held that there is no process to complete and new process must be issued pursuant to *Fed. R. Civ. P. 4*.

***Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview***
[HN6] Under North Carolina law, a summons must be served within 60 days of issuance. N.C. Gen. Stat. § 1A-1, N.C. R. Civ. P. 4(c). A summons not served within 60 days loses its vitality and becomes functus officio. If a summons is not served within 60 days, a plaintiff may remedy the failed summonses either by endorsement of the original summons or by application for alias and pluries summons within 90 days of the original issue or the last endorsement. N.C. Gen. Stat. § 1A-1, N.C. R. Civ. P. 4(d). Thus, while a summons not served within 60 days becomes dormant and unserveable, under N.C. Gen. Stat. § 1A-1, N.C. R. Civ. P. 4(c) it is not invalidated nor is the action discontinued. It is only when a party fails to use either method to extend time for service that the suit is discontinued, and treated as if it had never been filed.

***Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview***
[HN7] *Fed. R. Civ. P. 4(m)* requires that a defendant be served within 120 days after a complaint is filed.

***Civil Procedure > Removal > Proceedings > Time Limitations***
***Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview***
[HN8] The 120-day time period under *Fed. R. Civ. P. 4(m)* for service of process in a removal action runs from the date of the removal, not the date that a state court complaint was originally filed.

***Civil Procedure > Discovery > General Overview***
***Civil Procedure > Pretrial Matters > Conferences >***

Appeal: 13-1644    Doc: 25    Filed: 09/09/2013    Pg: 83 of 102

Page 3
2008 U.S. Dist. LEXIS 9312, *

### General Overview

[HN9] *Fed. R. Civ. P. 26(d)* provides that unless otherwise authorized by the Federal Rules of Civil Procedure, an order of the court, or the agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by *Fed. R. Civ. P. 26(f)*.

### Civil Procedure > Pleading & Practice > Service of Process > Proof > General Overview
### Evidence > Inferences & Presumptions > Presumptions > Rebuttal of Presumptions
### Evidence > Procedural Considerations > Burdens of Proof > Allocation

[HN10] A plaintiff bears the burden of proving that service of process was valid as to each defendant. To satisfy this burden, a plaintiff must submit proof that service was properly effected. A signed return of service from a private process server is strong evidence of valid service. In order to rebut this presumption, a defendant bears a heavy burden. A presumption of valid service can be overcome only by strong and convincing evidence. Thus, a defendant must do more than just merely allege that service was defective.

### Civil Procedure > Pleading & Practice > Service of Process > General Overview

[HN11] *Fed. R. Civ. P. 4(c)* requires that a copy of a summons must be served with a copy of a complaint. This provision requires the service of a copy of the complaint as filed; thus, the service of a partial copy of the complaint does not satisfy constitute valid service under *Rule 4*.

### Civil Procedure > Pleading & Practice > Service of Process > Summons > Content & Form

[HN12] *Fed. R. Civ. P. 4(a)(1)(B)* requires that a summons be directed to a defendant.

### Civil Procedure > Pleading & Practice > Service of Process > Summons > Content & Form

[HN13] *Fed. R. Civ. P. 4* requires that a summons be signed by the clerk of the court and that it bear the court's seal. *Fed. R. Civ. P. 4(a)(1)(F), (G)*.

### Civil Procedure > Pleading & Practice > Service of Process > Proof > General Overview

[HN14] Proof of service must be made by affidavit. *Fed. R. Civ. P. 4(l)(1)*. An attorney's unsworn assertions regarding service of process are not sufficient and will not be considered by the court.

### Civil Procedure > Pleading & Practice > Service of Process > Summons > Content & Form

[HN15] It is ultimately the duty of counsel to ensure that a summons is properly issued, and an attorney's failure in this regard cannot be imputed to the clerk of court as negligence.

### Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > Dismissals
### Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > Extensions

[HN16] See *Fed. R. Civ. P. 4(m)*.

### Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > Dismissals
### Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > Extensions

[HN17] *Fed. R. Civ. P. 4(m)* mandates dismissal of a complaint absent a showing of good cause warranting an extension of time for service.

### Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > Extensions

[HN18] In order to demonstrate good cause for extending the time for service, a plaintiff must show that she made reasonable, diligent efforts to effect service on the defendant. Good cause typically requires a finding that some extraordinary circumstance must have impeded service, for example: the defendant was evading service; the plaintiff experienced difficulty in obtaining the defendant's proper address; the plaintiff was misdirected by court personnel as to proper procedure; or a defect in the attempted service was not revealed by the defendant until after the time expired. Mere inadvertence, neglect, misunderstanding, ignorance of *Fed. R. Civ. P. 4* or its burden, or halfhearted attempts at service are generally insufficient to establish good cause.

### Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > Extensions

[HN19] Last minute attempts at service, absent some explanatory justification, do not establish good cause for

2008 U.S. Dist. LEXIS 9312, *

extending the time for service.

*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > Extensions*
*Governments > Legislation > Statutes of Limitations > General Overview*

[HN20] *Fed. R. Civ. P. 4* does not give a plaintiff a right to refile without the consequence of time defenses, such as the statute of limitations. Relief from the 120-day period for service may be justified if the applicable statute of limitation would bar the refiled action. However, consideration of a statute of limitations bar is just one factor to consider when determining whether to relieve a plaintiff of the operation of *Rule 4(m)*.

**COUNSEL:** [*1] For Joyce E. Patterson, as Administratrix of the Estate of other, Yolanda Evett Patterson Hemphill, Plaintiff: Pamela A. Hunter, LEAD ATTORNEY, Charlotte, NC.

For Terry Suit, City of Gastonia, Jennifer Stultz, Defendants: Robert D McDonnell, LEAD ATTORNEY, Charlotte, NC.

**JUDGES:** Martin Reidinger, United States District Judge.

**OPINION BY:** Martin Reidinger

**OPINION**

**MEMORANDUM OF DECISION AND ORDER**

**THIS MATTER** came before the Court on November 20, 2007 for a status conference and motion hearing on several pretrial motions.

**I. Procedural History**

This civil action was originally filed in the General Court of Justice, Superior Court Division, for Gaston County, North Carolina on August 21, 2006 and was removed to this Court on November 17, 2006. [1] The Plaintiff Joyce E. Patterson, as Administratrix of the Estate of Yolanda Evett Patterson Hemphill ("decedent"), brings suit against the following Defendants: (1) Steven Brown, Frankie Bell, and Sears Roebuck & Company (collectively the "Sears Defendants"); (2) D. Whitlock, individually and in his official capacity as a City of Gastonia Police Officer, Terry Sult, individually and in his official capacity as the Chief of Police for the City of Gastonia, Jennifer Stultz, individually [*2] and in her official capacity as Mayor for the City of Gastonia, and the City of Gastonia (collectively "City of Gastonia Defendants"); (3) Gaston County, Alan Cloninger, individually and in his official capacity as the Sheriff of Gaston County, "Gaston County Emergency System [sic]," Jan Winters, individually and in his official capacity as the County Manager for Gaston County, John Doe 1, individually and in his official capacity as an employee of the Gaston County Emergency Management Services, John Doe 2, individually and in his official capacity as an employee of the Gaston County Emergency Management Services, John Doe 3, individually and in his official capacity as a Deputy Sheriff of the Gaston County Sheriff Department, and John Doe 4, individually and in his official capacity as a Deputy Sheriff for the Gaston County Sheriff Department (collectively "Gaston County Defendants"); (4) American Service Group d/b/a Prison Health Services ("American Service Group"); (5) Westfield/Eastridge Mall; (6) Watson Insurance Agency; and (7) IPC International ("IPC").

1    A second notice of removal was filed on November 22, 2006, resulting in a separate civil action, No. 3:06cv479. On January [*3] 24, 2007, Judge Mullen ordered that the cases be consolidated and that the second removal action be closed.

Plaintiff alleges that on August 20, 2004, the decedent was unlawfully arrested by security officers at the Sears store in the Westfield/Eastridge Mall and that excessive force was used in effectuating the decedent's arrest. Plaintiff further alleges that when the decedent was taken to jail, her requests for medical assistance were repeatedly denied, resulting in her death later that day. The Complaint alleges a total of 38 causes of action, including claims under *42 U.S.C. § 1983* against the City of Gastonia Defendants and the Gaston County Defendants. The Complaint also alleges numerous state law claims for assault, negligence, intentional infliction of emotional distress, wrongful death, negligent training, and negligent retention and supervision.

A Stipulation of Dismissal was entered with respect to the Defendant Westfield/Eastridge Mall on November 14, 2007. With respect to the Defendant Watson

Appeal: 13-1644    Doc: 25    Filed: 09/09/2013    Pg: 85 of 102

Page 5
2008 U.S. Dist. LEXIS 9312, *3

Insurance Agency, the Plaintiff advised the Court at the November 20, 2007 hearing that she intends to abandon her claim against this Defendant. The record shows that the Plaintiff [*4] has never attempted service or even obtained a summons for this Defendant. Accordingly, Watson Insurance Agency's Motion to Dismiss [Doc. 16] is granted, and this Defendant is hereby dismissed from this action for failure to prosecute. Any remaining motions filed by these Defendants shall be denied as moot.

## II. Service of Process Prior to Removal

In December, 2006, shortly after the removal of this action, motions to dismiss were filed by the Gaston County Defendants, the Sears Defendants, American Service Group, and IPC. These Defendants argue that dismissal of this action is warranted because there was insufficient process and insufficient service of process under North Carolina law prior to removal. [Docs. 14, 21, 46, 83]. Specifically, the Defendants argue that jurisdiction was never conferred on them because the Plaintiff failed to obtain valid summonses within five days of the filing of the Complaint in state court. The Defendants further argue that the Plaintiff failed to keep the summonses "alive" in state court, so that the statute of limitations had expired by the time of removal. Additionally, the Gaston County Defendants and American Service Group challenge the manner in [*5] which the Plaintiff attempted to perfect service of process on them prior to removal.

In a response filed on February 8, 2007, the Plaintiff argues that she did obtain summonses within five days of initiating this action. She further argues that the Defendants' motions to dismiss should be denied because the Plaintiff was afforded an additional 120 days to perfect and/or correct service of process upon removal of this action.

Although Plaintiff argues in her response that original summonses had been timely obtained, Plaintiff did not offer any proof in support of this argument. Subsequently, Plaintiff moved to amend her response to submit copies of the original Summonses that she obtained on August 21, 2006, the date on which the state court Complaint was filed. [Doc. 40]. For cause shown, the Court will allow Plaintiff to amend her response to include as exhibits the original state Summonses obtained on August 21, 2006.

### A. Failure to Obtain Original Summonses

The Defendants first argue that jurisdiction was never conferred on them because the Plaintiff failed to obtain valid summonses within five days of the filing of the complaint. [HN1] North Carolina law requires the issuance of summons [*6] within five days of filing a civil action. N.C. Gen. Stat. § 1A-1, Rule 4(a). If summons is not issued within five days, "the action abates and is deemed never to have commenced . . . ." *Conner Bros. Mach. Co. v. Rogers, 177 N.C. App. 560, 561, 629 S.E.2d 344, 345 (2006)*. Absent issuance of a summons, the Court cannot acquire jurisdiction over the person or the subject matter of the action. *Conner Bros., 177 N.C. App. at 561-62, 629 S.E.2d at 345*.

The Plaintiff has submitted copies of the original Summonses obtained in the state court action. See Docs. 48, 57. These original summonses were issued on the day that the Complaint was originally filed, August 21, 2006, and include Summonses for the Gaston County Defendants, the Sears Defendants, American Service Group, and IPC International. Thus, these Defendants' argument that jurisdiction was never conferred on them as a result of no summonses having been issued is without merit.

### B. Attempts at Service of Process Under State Law

The Gaston County Defendants and American Service Group challenge the manner in which the Plaintiff attempted to perfect service of process on them on October 23, 2006. On that day, the Plaintiff had an unidentified [*7] person leave copies of the Complaint and Summonses for these Defendants on the desk of Shirley Hengel, an administrative assistant in the Gaston County Manager's Office. The Plaintiff also had an unidentified individual leave a copy of the Complaint and a Summons for Gaston County Emergency Management System on the desk of Patsy Haney, an administrative assistant with Gaston County Emergency Management.

The Plaintiff's methods of service for these Defendants do not appear to comply with the state procedures for service of process. There is no evidence that either Hengel or Haney is "an agent authorized by appointment or by law to be served or to accept service of process" on behalf of any of the individual Defendants. See N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(b). To the contrary, the affidavits submitted by the Defendants establish that none of the individual Defendants had

authorized Hengel or Haney to accept process on their behalf. Further, as administrative assistants, neither Hengel nor Haney qualifies as any of the individuals delineated in Rule 4(j)(5) who may accept service of process on behalf of a county or county governmental body. See[HN2] N.C. Gen. Stat. § 1A-1, Rule 4(j)(5)(b) [*8] (permitting service upon county by personal delivery to the "county manager or to the chairman, clerk or any member of the board of commissioners for such county"); Rule 4(j)(5)(c) (permitting service upon county unit or body by personal delivery "to an officer or director thereof" or to "an agent or attorney-in-fact authorized by appointment or by statute to be served or to accept service in its behalf"). Finally, because it is undisputed on the record that both Hengel and Haney were employed by governmental entities and not by American Service Group, neither qualifies as an individual who may accept service of process on behalf of that corporation. See [HN3] N.C. Gen. Stat. § 1A-1, Rule 4(j)(6)(a) (permitting service on a corporation by delivery to "an officer, director, or managing agent" or by leaving copies in office of an officer, director, or managing agent with person in charge of the office); Rule 4(j)(6)(b) (permitting service by delivery to "an agent authorized by appointment or by law" to accept service of process).

Determining that the service of process was insufficient at the state court level does not end the inquiry, however, because [HN4] 28 U.S.C. § 1448 provides, in pertinent [*9] part, as follows:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process of service may be completed or new process issued in the same manner as in cases originally filed in such district court.

28 U.S.C. § 1448. Thus, [HN5] even if service of process was defective in the state court proceeding or was never even attempted at all, 28 U.S.C. § 1448 affords the Plaintiff an opportunity upon removal (1) to serve any Defendants not served in the state court proceeding and (2) to re-serve any Defendants who were improperly served while the matter was pending in state court. See

Tadco Constr. Corp. v. Peri Framework Systems, Inc., 460 F. Supp. 2d 408, 412 (E.D.N.Y. 2006); Cowen v. Am. Med. Sys, Inc., 411 F. Supp. 2d 717, 720 (E.D. Mich. 2006) ("after an action is removed, federal law governs, and defects in service can be cured in accordance with federal rules of procedure"). "Section 1448 indicates a philosophy that removed cases are to be handled substantially as [*10] though they had never been in a state court. Thus, when one of several defendants was not served prior to removal it has been held that there is no process to 'complete' and new process must be issued pursuant to Rule 4." 4A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1082 (3d ed. 2002) (internal quotation marks omitted).

The Defendants argue that state jurisdictional standards apply in removal actions, and that section 1448 should not operate as a tolling statute allowing the Plaintiff to continue to assert claims after having failed to perfect service within the applicable statute of limitations prior to removal. In support of this argument, the Defendants cite Witherow v. Firestone Tire & Rubber Co., 530 F.2d 160 (3d Cir. 1976); Wolfe Cycle Sports, Inc. v. Yamaha Motor Corp., 366 F. Supp. 2d 885 (D. Neb. 2005); and Morton v. Meagher, 171 F. Supp. 2d 611 (E.D. Va. 2001).

The cases cited by the Defendants are distinguishable from the present case, however. In each of those cases, the court determined that because service was not effected within the time frame prescribed by state statute prior to removal, the action would have been subject to dismissal [*11] had it remained in the state court. As such, the case was already jurisprudentially "dead" by the time it was removed to federal court, and section 1448 could not be used to revive the action. In the present case, however, Plaintiff's action was not subject to dismissal in the state court at the time of removal. [HN6] Under North Carolina law, a summons must be served within 60 days of issuance. N.C. Gen. Stat. § 1A-1, Rule 4(c). "A summons not served within 30 [now 60] days loses its vitality and becomes functus officio . . . ." Dozier v. Crandall, 105 N.C. App. 74, 75, 411 S.E.2d 635, 636 (1992). If a summons is not served within 60 days, a plaintiff may remedy the failed summonses either by endorsement of the original summons or by application for alias and pluries summons within 90 days of the original issue or the last endorsement. N.C. Gen. Stat. § 1A-1, Rule 4(d). Thus, while "a summons not served within 30 [now 60] days becomes dormant and

unserveable, under Rule 4(c) it is not invalidated *nor is the action discontinued.*" *Dozier, 105 N.C. App. at 76, 411 S.E.2d at 636* (emphasis added). It is only when "a party fails to use either method to extend time for service [that] the suit [*12] is discontinued, and treated as if it had never been filed." *Johnson v. City of Raleigh, 98 N.C. App. 147, 148-49, 389 S.E.2d 849, 851*, review denied, *327 N.C. 140, 394 S.E.2d 176 (1990).*

In the present case, the Plaintiff obtained original Summonses on August 21, 2006. There is nothing in the record to indicate that any of these Summonses were served on the Defendants. Although these Summonses were not served within 60 days, the Summonses were not invalidated, nor was the Plaintiff's action discontinued, as the Plaintiff had ninety days from the date of this original issue, or approximately November 19, 2006, to procure alias and pluries summonses for the Defendants. [2] Two days before this 90 day-period had expired, however, the action was removed to this Court. Because the Plaintiff still had the opportunity to revive the Summonses by seeking a reissuance prior to the expiration of the 90-day period, Plaintiff's action would not have been subject to dismissal in the state court and thus was not "dead" upon removal, as argued by the Defendants.

> [2]   The Plaintiff did in fact obtain some alias and pluries Summonses on October 13, 2006, but it does not appear that she did so for all of the [*13] Defendants named in the action. The record only contains alias and pluries summons for John Doe 1, John Doe 2, Gaston County, City of Gastonia, Gaston County Emergency Management System, American Service Group, and Jan Winters. [Doc. 1-3].

Another case cited by the Defendants at oral argument, Hyman v. City of Gastonia, No. 3:04cv025 (W.D.N.C. June 30, 2004), aff'd, *137 Fed. Appx. 536 (4th Cir. 2005)*, is also distinguishable from the present case. In Hyman, this Court dismissed an action after removal for the plaintiff's failure to comply with North Carolina's rules for service of process. In so doing, the Court noted that the plaintiff "never made an attempt to correct the deficient service of process" once the case was removed, and thus, the Court dismissed the action. Hyman, No. 3:04cv025 (Order entered July 1, 2004). Unlike the plaintiff in Hyman, the Plaintiff in the present case has made an attempt since removal to correct the deficient service of process attempted at the state level.

Because federal law provides the Plaintiff the opportunity upon removal to correct any deficiencies in the state service, and the Plaintiff has taken steps to correct such deficiencies and has attempted [*14] to serve all of the Defendants in this action pursuant to the Federal Rules, the Defendants' challenges to the Plaintiff's attempts to effect service of process under state law prior to the removal of this action are rendered moot. The Plaintiff has been afforded a "second bite of the apple," so to speak, by operation of *section 1448*. Accordingly, to the extent that the Defendants' motions challenge the sufficiency of service of process *prior* to removal of this action, these motions are denied.

### III. Service of Process After Removal

#### A. Applicability of *Rule 4(m)*

Having determined that the Plaintiff was entitled upon removal to attempt to correct the deficient service of process on the Gaston County Defendants and American Service Group and to perfect service of process on the other Defendants in this action, the next issue the Court must determine is the length of time the Plaintiff had to do so. [HN7] The Federal Rules of Civil Procedure require that a defendant be served "within 120 days after the complaint is filed." See *Fed. R. Civ. P. 4(m)*. The Defendants argue that this provision means that the Plaintiff was required to serve them with process within 120 days of the filing of the state [*15] court complaint, and therefore, the Plaintiff's attempts at service under federal law were not timely. The Plaintiff argues, on the other hand, that the time limit for service under *Rule 4(m)* should run instead from the date of removal.

The Middle District of North Carolina addressed this very issue in *Motsinger v. Flynt, 119 F.R.D. 373 (M.D.N.C. 1988)*. In that case, the defendant argued that the plaintiff's attempts to serve him after removal were untimely because *Rule 4(m)* required the plaintiff to serve him within 120 days after the complaint was filed in state court. The Court rejected the defendant's argument, holding that the Federal Rules of Civil Procedure applied to cases only after removal. *Id. at 376-77* (citing *Fed. R. Civ. P. 81(c)*). The Court further noted that to apply the federal rules retroactively to state court pleadings that were otherwise properly filed under state law "may create real unfairness." *Id. at 377*. As the Court explained:

> [I]t is possible that 120 days from filing
> of the complaint could pass without a

defendant being served. Then, having notice of the action, a defendant could remove it to federal court and immediately move for dismissal pursuant to *Rule 4(j)* [*16] [now *Rule 4(m)*], Fed. R. Civ. P. The plaintiff would immediately be in a predicament since 120 days would have passed since the filing of the original complaint and he would not have made a motion for an extension of time to serve process.

*Id. at 377 n.5.* The Court concluded that allowing a plaintiff 120 days from the date of removal to serve process "provides an appropriate balance which accommodates the federal interest in insuring that process will be timely served yet does not penalize the plaintiff or give undue advantage to the defendant . . . ." *Id. at 377.*

Other courts that have addressed this issue have also held that [HN8] the 120-day time period for service of process in a removal action runs from the date of the removal, not the date that the state court complaint was originally filed. See *Cowen, 411 F. Supp. 2d at 721*; *G.G.G. Pizza, Inc. v. Domino's Pizza, Inc., 67 F. Supp. 2d 99, 102 (E.D.N.Y. 1999)*; *Eccles v. National Semiconductor Corp., 10 F. Supp. 2d 514, 519 (D. Md. 1998)*; see also *Russo v. Prudential Ins. Co., 116 F.R.D. 10, 12 (E.D. Pa. 1986)* (rejecting retroactive application of *Rule 4*'s 120-day period to service effected prior to removal).

The Court finds the reasoning [*17] of *Motsinger* and the other above-cited decisions to be persuasive. In the present case, the action was removed on November 17, 2006. Therefore, the Plaintiff had until March 19, 2007 to serve process on the Defendants pursuant to the Federal Rules of Civil Procedure.

### B. Discovery Regarding Service of Process

Before addressing the sufficiency of the service of process attempted on the Defendants in this case, the Court will first consider whether the Plaintiff is entitled to some preliminary discovery on the service issue prior to a ruling on the pending motions to dismiss. On May 14, 2007, after the 120-day for service had expired and while the present Motions to Dismiss were pending, the Plaintiff served the Defendants with a set of six interrogatories, seeking the following information:

1. Please state how you first became aware of the existence of this lawsuit.

2. Please state the date upon which you first became aware of the existence of this lawsuit[.]

3. Please state the date [upon] which you first received a copy of the Summons and/or Complaint regarding this lawsuit[.]

4. Please state any additional dates [upon] which you have received copies of the Summons and Complaint of this [*18] lawsuit.

5. For each additional date [upon] which you have received a copy of the Summons and Complaint, please state the manner in which you received the copy of the Summons and Complaint.

6. For each copy of the Summons and Complaint which you have received, please state the procedure you followed prior to responding to the Summons and Complaint.

On June 1 and 12, 2007, respectively, the Gaston County Defendants and American Service Group filed motions seeking a protective order prohibiting the Plaintiff from seeking such discovery. [Docs. 98, 100, 104]. [3] For grounds, the Defendants argue that these discovery requests are premature, as they were submitted while the Motions to Dismiss were pending and prior to the parties' *Rule 26(f)* conference.

3  Defendant Watson Insurance Agency filed a similar motion for a protective order [Doc. 102]. However, as this Defendant has already been dismissed from this action, this motion is moot.

The Sears Defendants and IPC move to adopt and join in these motions for protective order. [4] For cause shown, the motions to adopt filed by the Sears Defendants and IPC [Docs. 106, 107] are granted, and these Defendants shall be deemed to have joined in the motions [*19] for protective order.

4  Defendant Westfield/Eastridge Mall also filed a motion to adopt and join in these motions [Doc.

112]. As this Defendant has already been dismissed from this action, this motion is also moot.

Shortly after the Defendants filed their motions for a protective order, on June 14, 2007, the Plaintiff filed a motion [Doc. 109] seeking an extension of twenty days to respond. No ruling was immediately forthcoming from the Court. Rather than file her response within the time frame requested, the Plaintiff inexplicably waited until August 3, 2007, far beyond the time requested in her motion, to file a response. As such, the Plaintiff's response was untimely and rightly should not be considered now by the Court. This case is rife, however, with untimely filings from both sides, a practice which has contributed in large part to the procedural morass in which this case now finds itself. Mindful that this case needs to move forward, and in the interest of fairness, the Court will consider *all* of the parties' filings to date, regardless of how untimely they are in retrospect. The Court therefore will reluctantly accept the Plaintiff's response, despite its obvious untimeliness. [*20] [5]

> 5    Because Plaintiff has already filed her response, and it has now been accepted by the Court, the Plaintiff's request for an extension of time [Doc. 109] will be denied as moot.

In her response, the Plaintiff argues that she is entitled to seek discovery related to service of process because the Defendants have challenged the manner and means by which they were allegedly served. As such, Plaintiff argues that she "is left with no other recourse than to establish proper service through discovery methods."

The Court concludes that the Plaintiff's discovery requests are improper. [HN9] *Rule 26(d) of the Federal Rules of Civil Procedure* provides that unless otherwise authorized by the Rules, an Order of the Court, or the agreement of the parties, "[a] party may not seek discovery from any source before the parties have conferred as required by *Rule 26(f)*." *Fed. R. Civ. P. 26(d)*. No *Rule 26(f)* conference has yet taken place in this action, and the Plaintiff neither sought leave from the Court or the agreement of the Defendants to propound this discovery.

Even if such leave had been sought, Plaintiff's discovery is largely irrelevant to the issue of service of process pending before the Court. The [*21] only

possibly relevant fact that could be gleaned from this discovery is the date that each of the Defendants received a copy of the Summons and the Complaint. Such information could have just as easily been established by an affidavit of Plaintiff's process server. Accordingly, Plaintiff's discovery is unnecessary on this issue. The other information sought by this discovery is simply not material to the issue that is presently before the Court, that is, whether Plaintiff has complied with *Rule 4 of the Federal Rules of Civil Procedure*. See *ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707, 716 n.3 (4th Cir. 2002)* (finding district court did not abuse discretion in refusing to allow plaintiff to engage in discovery where information sought was not material to the issue of personal jurisdiction), cert. denied, *537 U.S. 1105, 123 S. Ct. 868, 154 L. Ed. 2d 773 (2003)*. For these reasons, the Defendants' Motions for Protective Order [Docs. 98, 100, 104] are granted, and the Court will proceed to rule on the pending motions to dismiss without allowing the Plaintiff to engage in preliminary discovery.

## C. Service on the Defendants

Having determined that the Plaintiff had 120 days from the date of removal to effect [*22] service of process on the Defendants under the Federal Rules of Civil Procedure, the issue now becomes whether the Plaintiff was successful in doing so.

[HN10] The Plaintiff bears the burden of proving that service of process was valid as to each Defendant. See *Homer v. Jones-Bey, 415 F.3d 748, 754 (7th Cir. 2005)* ("it is the plaintiff who ordinarily bears the burden of demonstrating that the district court had personal jurisdiction over the parties, including valid service of process"); *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993)* ("the party asserting the validity of service bears the burden of proof on that issue"). To satisfy this burden, a plaintiff must submit proof that service was properly effected. A signed return of service from a private process server is "strong evidence of valid service." *Greater St. Louis Constr. Laborers Welfare Fund v. Little, 182 F.R.D. 592, 595 (E.D. Mo. 1998)*; see also *Mobern Electric Corp. v. Walsh, 197 F.R.D. 196, 198 (D.D.C. 2000)* (finding process server's affidavit created rebuttable presumption that service was valid); *Kost v. United Parcel Serv., 926 F. Supp. 1022, 1024 (D. Kan. 1996)* (finding return of [*23] service combined with accompanying affidavit of

counsel established a prima facie case of valid service). In order to rebut this presumption, a defendant bears a heavy burden. A presumption of valid service "can be overcome only by strong and convincing evidence." *Greater St. Louis Constr. Laborers Welfare Fund, 182 F.R.D. at 595*. Thus, a defendant must do more than just merely allege that service was defective. See *FROF, Inc. v. Harris, 695 F. Supp. 827, 829 (E.D. Pa. 1988)* ("a bare allegation by a defendant that he was improperly served cannot be allowed to bely the private process server's return"). 6 With these principles in mind, the Court will address the propriety of the service upon the Defendants.

> 6   Similarly, under North Carolina law, the filing of an affidavit consistent with *N.C. Gen. Stat. § 1-75.10(4)* "raises a rebuttable presumption of valid service consistent with North Carolina Rule of Civil Procedure 4(j)(1)(c)." *Moore v. Cox, 341 F. Supp. 2d 570, 573 (M.D.N.C. 2004)*. In order to overcome this presumption, "a defendant must provide 'affidavits of more than one person showing unequivocally that proper service was not made upon the person of the defendant.'" *Id.* (quoting [*24] *Grimsley v. Nelson, 342 N.C. 542, 545, 467 S.E.2d 92, 94 (1996)*.

**1. Service of Partial Complaint**

Defendant IPC, the Sears Defendants, and the Gaston County Defendants all claim to have been served with only partial copies of the Complaint. [Docs. 78, 88, 118]. [HN11] *Rule 4(c) of the Federal Rules of Civil Procedure* requires that a copy of the "summons must be served with a copy of the complaint." This provision has been interpreted to require the service of a copy of the complaint *as filed;* thus, the service of a partial copy of the complaint does not satisfy constitute valid service under *Rule 4*. See *West Coast Theater Corp. v. City of Portland, 897 F.2d 1519, 1529 (9th Cir. 1990)* (finding plaintiff's service of an incomplete draft complaint which was seven pages shorter than complaint failed to comply with *Rule 4* "because that Rule requires service of the filed complaint."); *Ferdinandsen v. State, No. C2-01-630, 2002 U.S. Dist. LEXIS 25346, 2002 WL 31998964, at *2 (S.D. Ohio July 26, 2002)* (finding plaintiff did not comply with *Rule 4* where copy of complaint served varied from the version of the complaint filed).

Defendant IPC first raised this issue in its motion to dismiss filed on April 10, 2007. The Sears Defendants [*25] first asserted this argument in a motion to dismiss

filed on May 1, 2007. Both IPC and the Sears Defendants supported their arguments with affidavits from the persons who received service on behalf of these Defendants, as well as the copies of the Complaint received from the process server. All of the copies submitted are missing pages 11 through 26 of the 39-page Complaint.

The Plaintiff responded to these motions on May 14, 2007, arguing that the Defendants were served with all of the pages of the Complaint. This argument, however, was an unsworn assertion in the Plaintiff's response brief and was not supported by any affidavits or other competent evidence.

At the motion hearing on November 20, 2007, the Gaston County Defendants argued for the first time that they too were served with only partial copies of the Complaint. Subsequent to the hearing, the Gaston County Defendants filed an "alternative" motion to dismiss [Doc. 118], asserting this argument as an additional ground for dismissal for insufficient service of process. This "alternative" motion is supported by the affidavits of Sheriff Cloninger and Phil Ponder, Assistant County Manager, who received service on behalf of the [*26] Gaston County Defendants, as well as the affidavit of Charles Moore, the County Attorney, who examined the summonses and copies of the Complaint served upon these Defendants. These affiants state that the copies of the Complaint served upon the Gaston County Defendants were not complete, as each copy was missing pages 11 through 26. Attached to these affidavits are the partial copies of the Complaint which were received at the time of service.

Without citing to any Rule of Civil Procedure or any other authority in support, Plaintiff argues that the Gaston County Defendants' motion should be denied because these Defendants never alleged that they received only partial copies of the Complaint prior to the November 20, 2007 hearing. While the Court agrees that the Defendants could have, and indeed should have, raised this issue much earlier in the proceedings, the Court will not dismiss the Defendants' motion solely on this basis. The Court cannot say that the Plaintiff is prejudiced in any way by the Defendants raising this alternative ground for dismissal at this late date. In fact, the contrary would appear to be the case; until the Gaston County Defendants raised this issue, the Plaintiff [*27] never submitted any evidence to rebut the claim made by the

other Defendants that they had received partial copies of the Complaint. Prior to the filing of the Gaston county Defendants' motion, the Plaintiff had been on notice for months that several of the other Defendants claimed to have received incomplete copies of the Complaint and that these Defendants had asserted this as a basis for dismissal. Despite these motions pending for months, Plaintiff made no effort to submit any evidence to rebut these Defendants' claims. Only after the Gaston County Defendants raised the issue at the November, 2007 hearing did the Plaintiff submit evidence in support of her assertion that service of the entire Complaint was made on *all* the Defendants. Thus, while the Gaston County Defendants may have been dilatory in joining the other Defendants in raising the issue, the Plaintiff has been equally dilatory in responding to this issue at all. In the interest of fairness and judicial economy, the Court will consider both the Gaston County Defendants' untimely raised alternative argument and Plaintiff's untimely evidence in opposition.

Plaintiff attempts to rebut the Defendants' allegations by submitting [*28] the affidavits of Anna Mahmood and process server James DeWitt. In her affidavit, dated December 7, 2007, Ms. Mahmood states that Plaintiff's counsel asked her to make copies of the Complaint and Summons and to address the envelopes for service. Ms. Mahmood states that she "personally hand-copied all pages of the Complaint and Summons"; that she placed the completed copies into the envelopes; and that she then sealed the envelopes. Ms. Mahmood states that she did not fail to copy any pages of the Complaint and Summons during this process. [Doc. 126-3]. In an affidavit dated December 6, 2007, Mr. DeWitt states that he received sealed envelopes from counsel's office and that he delivered these envelopes without tampering or removing any pages from them. [Doc. 126-2].

These affidavits are of questionable value. First, neither of the affidavits recites that the affiant is over the age of 18 and competent to testify to the matters contained therein. Such requirements are not merely *pro forma;* they are mandatory requirements. See, e.g., *Fed. R. Civ. P. 56(e)* (requiring affidavits used to support or oppose motion for summary judgment to be made on personal knowledge and affirmatively show [*29] that "affiant is competent to testify to the matters stated" therein); *In re French, 499 F.3d 345, 358 (4th Cir. 2007)*; 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2738 (3d ed.

2007). Without these basic predicate facts, the competency of these affiants to testify to these matters is called into question.

While the affidavit of a private process server may, under some circumstances, be "strong evidence of valid service," see *Greater St. Louis Constr. Laborers Welfare Fund, 182 F.R.D. at 595*, DeWitt's affidavit offers no substantive evidence on the issue at hand. DeWitt states that he was provided sealed envelopes and that he did not open or otherwise tamper with these envelopes before serving them on the Defendants. Thus, DeWitt is not in a position to testify whether the copies of the Complaint contained therein were in fact complete.

While Ms. Mahmood states in her affidavit that she copied "all pages of the Complaint and Summons," she does not state *when* she made these copies. As such, the Court cannot determine which copies she is referring to; Ms. Mahmood could be referring to the copies made when the Plaintiff first filed her Complaint [*30] in state court on August 21, 2006, or when the alias Summonses issued in October, 2006, or even when the federal Summonses issued in March, 2007.

Ms. Mahmood's statement is further called into doubt by the multiple affidavits submitted by the Defendants which establishes that every copy of the Complaint that was served on these Defendants was missing the same number of pages. At best, Ms. Mahomood's affidavit establishes that she copied all of the pages of the Complaint that were *provided* to her, but does not foreclose the very real possibility that she was given an incomplete copy of the Complaint to copy.

Moreover, the Court finds the timing of these affidavits to be significant. Plaintiff initially failed to present *any* evidence in response to the claims of the IPC and the Sears Defendants that they received only partial copies of the Complaint. Only several months later -- after the Gaston County Defendants also raised the issue and the Court questioned the Plaintiff about the copies at the November, 2007 hearing -- did the Plaintiff procure the affidavits of DeWitt and Mahmood. The timing of these affidavits is therefore highly questionable under the circumstances.

The Defendants [*31] have presented numerous affidavits from those who received service on the Defendants' behalf, as well as other witnesses who saw the copies of the Summonses and Complaint, and each

affiant consistently testifies that only partial copies of the Complaint were served. In addition, these affiants have provided the copies of the Summons and Complaint that they received. In every single case, the same pages of the Complaint (11-26) are missing. The volume as well as the consistency of this evidence is convincing to the Court.

In light of the weak evidence presented by the Plaintiff of valid service, the questionable timing of her supporting affidavits, and the overwhelming, consistent evidence presented by the Defendants, the Court finds as fact that these Defendants were not served with a copy of the Complaint that included pages 11 through 26 thereof, and that based thereon, the Court concludes that the Plaintiff has failed to carry her burden of showing that full and complete copies of the Complaint were served upon these Defendants. As such, the Court determines as a matter of law that these Defendants were not properly served within 120 days of the removal of this action.

**2. Improper** [*32] **Summons**

The Court next turns to Plaintiff's attempted service of Defendant American Service Group d/b/a Prison Health Services.

On March 9, 2007, the Plaintiff obtained a summons from this Court for "American Service Group, d/b/a Prison Health Services c/o Jan Withers [sic], County Manager for Gaston County, North Carolina." The summons is dated March 9, 2007, is signed by the Clerk of the Court, and contains the Court's seal.

According to the Affidavit of Kimberly Jay [Doc. 91-2], Litigation Manager for Prison Health Services, Inc., on March 19, 2007, a copy of the Complaint, along with two summonses, were received at the corporate headquarters for Prison Health Services, Inc. The summonses received were undated, did not bear the seal of the Court, and were not signed by the Clerk of the Court. The two summonses were directed to "Mr. Michael Catalano; President Legal Department American Service Group and Prison Health Services" and to "American Service Group and Prison Health Services," respectively. Copies of these summonses are attached as exhibits to Ms. Jay's affidavit.

[HN12] *Rule 4* requires that a summons "be directed to the defendant." *Fed. R. Civ. P. 4(a)(1)(B)*. In the present case, [*33] neither of the summonses were directed to the Defendant "American Service Group d/b/a

Prison Health Services"; rather, they were directed to "Mr. Michael Catalano; President Legal Department American Service Group and Prison Health Services" and to "American Service Group and Prison Health Services." [HN13] *Rule 4* further requires that a summons be signed by the clerk and that it bear the Court's seal. *Fed. R. Civ. P. 4(a)(1)(F), (G)*. Neither requirement was met in this case, as the Defendant was served with blank, unsigned Summonses that did not contain the seal of the Court. Accordingly, the Court concludes that the Summonses that the Plaintiff attempted to deliver to this Defendant were defective.

The Plaintiff argues that this Defendant was properly served with a Summons and Complaint on March 19, 2007, and submits an "Affidavit of Service" in support of her response. This "Affidavit of Service" [Doc. 56] is signed by attorney Pamela Hunter but is not notarized or otherwise sworn to. Ms. Hunter's unsworn "Affidavit" is not competent proof of service. [HN14] Proof of service must be made by affidavit. See *Fed. R. Civ. P. 4(l)(1)*. An attorney's unsworn assertions regarding service of process are [*34] not sufficient and will not be considered by the Court. Even if the Court were to consider Ms. Hunter's unsworn statements, however, Ms. Hunter concedes in her "Affidavit" that the summonses were not properly endorsed. Ms. Hunter attempts to lay blame upon the Clerk, asserting that the "Clerk of the United States District Court failed to endorse the Summons . . . ." Plaintiff has offered no evidence, however, that the Clerk was in any way negligent in issuing this Summons. Even if some negligence could be shown, [HN15] it is ultimately the duty of counsel to ensure that a summons is properly issued, and an attorney's failure in this regard cannot be imputed to the Clerk as negligence. See *In re Hall, 222 B.R. 275, 277 n.2 (E.D. Va. 1998)* (dismissing action when summons served lacked clerk's signature, the court's seal, and date on which defendant had to respond). Moreover, such attempts at laying blame are particularly inappropriate where there is undisputed evidence in the record that the Clerk *did* in fact endorse a summons, directed to the Defendant American Service Group d/b/a Prison Health Services, on March 9, 2007. Based on this evidence, the Court finds as fact that the Plaintiff did [*35] not attempt to serve American Service Group with this properly executed summons, but rather, the Plaintiff attempted to serve summonses that were not signed, not dated, did not bear the Court's seal, and were not even directed to this particular corporate Defendant.

For the foregoing reasons, the Court concludes Plaintiff failed to properly effect service on the Defendant American Service Group d/b/a Prison Health Services within 120 days of removal of this action.

**D. Motion for Extension of Time for Service**

On March 15, 2007, with four days remaining for service, the Plaintiff filed a Motion to Extend Time to Serve Summons [Doc. 50]. In this motion, the Plaintiff states that "[a]lthough Plaintiff believes that all Defendants have again been properly served pursuant to *Rule 4 of the Federal Rules of Civil Procedure*, out of an abundance of caution, the Plaintiff requests an extension of time to insure that all Defendants are properly served." Plaintiff states that an extension of time is warranted as she "needs to insure that Plaintiff will have the opportunity to cure any unforeseen or potential defects in service of process." Plaintiff further states that she has "diligently engaged [*36] in service of process upon Defendants" and that the motion for extension of time is made in good faith and not for the purpose of delay.

The Gaston County Defendants, American Service Group, IPC, and the Sears Defendants oppose the Plaintiff's motion, arguing that the Plaintiff has not been diligent in attempting to serve the Defendants; that there has been no showing of good cause for extending the time for service; and that the lack of proper service has delayed the progress of this case for several months.

Prior to 1993, *Rule 4(j)* required courts to dismiss a plaintiff's complaint if service was not made within 120 days after the filing of the complaint, absent a showing of good cause. See *Hammad v. Tate Access Floors, Inc., 31 F. Supp. 2d 524, 526-27 (D. Md. 1999)*. As part of the 1993 amendments to the Federal Rules, *Rule 4(j)* was renumbered as *Rule 4(m)* and restated as follows:

> [HN16] If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a [*37] specific time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

*Fed. R. Civ. P. 4(m)*. In 1995, the Fourth Circuit interpreted the new [HN17] *Rule 4(m)* as still mandating dismissal of a complaint absent a showing of "good cause" warranting an extension of time for service. See *Mendez v. Elliot, 45 F.3d 75, 78 (4th Cir. 1995)*. The Mendez Court, however, made no mention of the Advisory Committee Notes to the 1993 amendments, which explicitly state that the new *Rule 4(m)* "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision *even if there is no good cause shown.*" (Emphasis added).

Subsequent to the Fourth Circuit's decision in Mendez, the Supreme Court noted in dicta that the 1993 amendment to *Rule 4(m)* accorded district courts "discretion to enlarge the 120-day period for service, even if there is no good cause shown." *Henderson v. United States, 517 U.S. 654, 662, 116 S. Ct. 1638, 134 L. Ed. 2d 880 (1996)*. Several courts have called into doubt the continuing validity of *Mendez* in light of the 1993 Advisory Committee Notes and the Henderson dicta. See *Hoffman v. Baltimore Police Dep't, 379 F. Supp. 2d 778, 786 (D. Md. 2005)*; [*38] *United States ex rel. Shaw Env't, Inc. v. Gulf Ins. Co., 225 F.R.D. 526, 528 (E.D. Va. 2005)*; *Melton v. Tyco Valves & Controls, Inc., 211 F.R.D. 288, 289 (D. Md. 2002)*; *Johnson v. United Steel Workers, 172 F.R.D. 185, 188 n.6 (W.D. Va. 1997)*. Even the Fourth Circuit has stated in an unpublished opinion that it regards the Supreme Court's statement in Henderson "as persuasive as to the meaning of *Rule 4(m)*." *Scruggs v. Spartanburg Reg'l Med. Ctr., 198 F.3d 237 (Table), [published in full-text format at 1999 U.S. App. LEXIS 26227] 1999 WL 957698, at *2 (4th Cir. Oct. 19, 1999)*. However, the Fourth Circuit declined to overrule *Mendez*, noting that it was "questionable" whether the Fourth Circuit could overrule such precedent when the Supreme Court's statement in Henderson was merely dicta. *1999 U.S. App. LEXIS 26227, [WL] at *2 n.2*.

Thus, while the continuing validity of *Mendez* is in serious doubt, it is clear that *Mendez* is still binding authority in this Circuit. See *Johnson, 172 F.R.D. at 188 n.6*. Accordingly, under controlling Fourth Circuit precedent, the Plaintiff is required to establish good cause for extending the period for service beyond the 120 days provided in *Rule 4(m)*. [7]

7    The Federal Rules of Civil Procedure were

most recently amended on December 1, 2007. These [*39] amendments, however, do not change the Court's analysis of *Rule 4(m)* and the precedential effect of *Mendez*, as the amendments appear to merely reword *Rule 4(m)* without creating any substantive change to its effect or meaning.

[HN18] In order to demonstrate good cause, a plaintiff must show that she "made 'reasonable, diligent' efforts to effect service on the defendant." *T&S Rentals v. United States, 164 F.R.D. 422, 425 (N.D. W. Va. 1996)*. Good cause typically requires a finding that "some extraordinary circumstance must have impeded service, for example: the defendant was evading service; the plaintiff experienced difficulty in obtaining defendant's proper address; the plaintiff was misdirected by court personnel as to proper procedure; or a defect in the attempted service was not revealed by the defendant until after the time expired." *Hoffman, 379 F. Supp. 2d at 786* (citations omitted). Mere "[i]nadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service" are generally insufficient to establish good cause. *Vincent v. Reynolds Mem'l Hosp., Inc., 141 F.R.D. 436, 437 (N.D. W. Va. 1992)*.

Upon careful consideration, the Court concludes that [*40] the Plaintiff has not shown good cause for extending the time for service in this case. The Plaintiff has not been diligent in her attempts to serve the Defendants in this case. The Plaintiff filed her Complaint in state court on August 21, 2006, but made no attempts at service until over two months later. Several defendants filed motions challenging the sufficiency of service of process in the state court proceeding, thus notifying the Plaintiff of the alleged defects in service. Despite this notice, the Plaintiff made no attempt to reserve these Defendants and no attempt was made to serve the other Defendants in the state court action.

Once this case was removed, the Plaintiff was provided a "second bite at the apple," that is, an additional 120 days to perfect service and to cure the defects in the state service. Despite this opportunity, however, Plaintiff made no attempt to serve any of the Defendants for 110 days after removal. When Plaintiff finally procured the federal summonses, she had only 10 days left to effect service on the Defendants. Plaintiff has not offered any justification for the delay in initiating service. [HN19] "Last minute attempts at service, absent

some explanatory [*41] justification, do not establish good cause." *McIsaac v. Ford, 193 F. Supp. 2d 382, 383 (D. Mass. 2002)*; see also *Reliable Tax & Financial Services, Inc. v. H&R Block Eastern Tax Services, Inc., 212 F. Supp. 2d 592, 595 (E.D. Va. 2002)* (finding no good cause where plaintiffs waited 115 days to initiate service).

Despite having notice that the state service was deficient, and that her case was at risk of being dismissed for insufficient service of process, Plaintiff delayed any attempts at service until mere days before the expiration of the time for service. Plaintiff has not shown any good cause for this delay and has presented the Court with no reason why she should be afforded yet another opportunity to effect service beyond the additional 120 days already afforded to her under *Rule 4(m)*.

While the Plaintiff has requested additional time "to cure any unforeseen or potential defects in service of process," the Plaintiff does not state how much time would be necessary to do so. Her motion does not contain a prayer for relief and does not request any specific extension of time for service. While the period of service may be extended "for an appropriate period," *Fed. R. Civ. P. 4(m)*, the [*42] Plaintiff's motion gives the Court no indication as to what extension of time the Plaintiff would consider to be appropriate under the circumstances.

The Court is mindful that the applicable statutes of limitation have now run and that if this case were dismissed without prejudice as required by *Rule 4(m)*, the Plaintiff would be unable to refile her Complaint. See *Mendez, 45 F.3d at 78* (noting [HN20] *Rule 4* "does not . . . give the [plaintiff] a right to refile without the consequence of time defenses, such as the statute of limitations." The Advisory Committee Notes to the 1993 Amendments to *Rule 4* state that relief from the 120-day period for service "may be justified, for example, if the applicable statute of limitation would bar the refiled action . . . ." However, several courts have held that consideration of a statute of limitations bar is just one factor to consider when determining whether to relieve a plaintiff of the operation of *Rule 4(m)*. See *Panaras v. Liquid Carbonic Indus. Corp., 94 F.3d 338, 341 (7th Cir. 1996)*; *Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305-06 (3d Cir. 1995)*; *In re Hall, 222 B.R. at 280*; *In re Barr, 217 B.R. 626, 630 (W.D. Wash. 1998)*. Thus, the [*43] fact that the Plaintiff's action may now

be time barred, standing alone, does not require extending the time period for service in this case.

Even if this Court had the discretion to extend the time for service in the absence of good cause, the Court would decline to do so in this case. Plaintiff has had ample opportunities to serve the Defendants correctly and has not done so. Plaintiff had several months while the matter was pending in state court to serve the Defendants under state law. Upon removal, Plaintiff was granted another 120 days to cure the defects in the state service, but she did nothing for 110 days. Plaintiff did attempt service on the Defendants within those remaining 10 days, but as the Court has determined, that service was defective. In filing a motion for extension of time to attempt service, Plaintiff is essentially seeking a "third bite at the apple." The only stated reason for seeking the extension was so that in the event the Court found that Plaintiff's second attempt at service was not sufficient, she could try yet again to effect service. The Court declines, in its discretion, to grant this "third bite" to the Plaintiff. Accordingly, Plaintiff's Motion to [*44] Extend Time to Serve Summons [Doc. 50] is denied.

For the reasons set forth above, the Court concludes that the Plaintiff has failed to serve the Sears Defendants, the Gaston County Defendants, American Service Group d/b/a Prison Health Services, and IPC International in accordance with the law within 120 days of the removal of this action, and Plaintiff has not stated good cause for extending the time for service. Accordingly, these Defendants shall be dismissed without prejudice from this action.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the motions filed as Documents 25, 52, 76, and 79 are all duplicative filings and are therefore **DENIED AS MOOT.**

As the Defendant Westfield/Eastridge Mall has been dismissed from this action, **IT IS FURTHER ORDERED** that the Motion to Adopt by Defendant Westfield/Eastridge Mall [Doc. 112] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the Motion to Dismiss of Watson Insurance Agency [Doc. 16] is **GRANTED.** The Defendant Watson Insurance Agency is **DISMISSED WITHOUT PREJUDICE** from this action for Plaintiff's failure to prosecute her claim against

said Defendant. Accordingly, Watson Insurance Agency's Motion for Protective Order [Doc. 102] is **DENIED AS MOOT.**

**IT IS FURTHER** [*45] **ORDERED** that the Plaintiff's Motion to Amend and Supplement Reply Brief [Doc. 40] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Extend Time to Serve Summons [Doc. 50] is **DENIED.**

**IT IS FURTHER ORDERED** that the Motion to Adopt and Join in Motion for Protective Order by IPC International Corporation [Doc. 106] and the Motion to Adopt and Join in Motion for Protective Order by Steven Brown, Frankie Bell, and Sears, Roebuck & Co. [Doc. 107] are **GRANTED.**

**IT IS FURTHER ORDERED** that the Motions for Protective Order filed by the Gaston County Defendants [Doc. 98], Gaston County Emergency Management System [Doc. 100], and the Defendant Improperly Named "American Service Group d/b/a Prison Health Services" [Doc. 104] are **GRANTED.**

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Extension of Time to Respond [Doc. 109] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the Second Motion to Dismiss for Lack of Jurisdiction by IPC International [Doc. 78]; the Motion to Dismiss Based on Plaintiff's Failure to Serve Defendants in a Timely Manner filed by Steven Brown, Frankie Bell, and Sears, Roebuck & Co. [Doc. 88]; the Motion to Dismiss of Defendant Improperly Named American Service [*46] Group d/b/a Prison Health Services, Inc. Based on Plaintiff's Failure to Timely Serve This Defendant [Doc. 90]; and the Motion to Dismiss filed by Alan Cloninger, John Doe 1, John Doe 2, John Doe 3, John Doe 4, Gaston County, Gaston Emergency Management Services, and Jan Winters [Doc. 118] are **GRANTED.**

**IT IS FURTHER ORDERED** that the Motion to Dismiss of Gaston County, Sheriff Alan Cloninger, John Does 1-4, Gaston County Emergency Management Systems, and County Manager Jan Winters [Doc. 14]; the Motion to Dismiss for Lack of Jurisdiction of IPC International [Doc. 21]; the Motion to Dismiss By Special Appearance of American Service Group, d/b/a

Prison Health Services [Doc. 46]; and the Motion to Dismiss for Failure to State a Claim filed by Steven Brown, Frankie Bell, and Sears, Roebuck & Co. [Doc. 83] are **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the following Defendants are hereby **DISMISSED WITHOUT PREJUDICE** for lack of proper service of process, and judgment shall issue simultaneously herewith: (1) Steven Brown; (2) Frankie Bell; (3) Sears Roebuck & Company; (4) D. Whitlock, individually and in his official capacity as a City of Gastonia Police Officer; (5) Gaston County; (6) Alan [*47] Cloninger, individually and in his official capacity as the Sheriff of Gaston County; (7) Gaston County Emergency System; (8) Jan Winters, individually and in his official capacity as the County Manager for Gaston County; (9) John Doe 1, individually and in his official capacity as an employee of the Gaston County Emergency Management Services; (10) John Doe 2, individually and in his official capacity as an employee of the Gaston County Emergency Management Services; (11) John Doe 3, individually and in his official capacity as a Deputy Sheriff of the Gaston County Sheriff Department; (12) John Doe 4, individually and in his official capacity as a Deputy Sheriff for the Gaston County Sheriff Department; (13) American Service Group d/b/a Prison Health Services; and (14) IPC International.

As a result of the dismissal of the above-referenced Defendants, **IT IS FURTHER ORDERED** that the Motion to Quash Summons filed by Gaston County Emergency Management Systems and John Doe Defendants [Doc. 63]; the Motion to Quash Summons filed by Gaston County, Jan Winters, and Alan Cloninger [Doc. 65]; and IPC's Motion for Extension of Time to Respond to Complaint [Doc. 75] are **DENIED AS MOOT.**

**IT IS SO** [*48] **ORDERED.**

Signed: January 23, 2008

/s/ Martin Reidinger

Martin Reidinger

United States District Judge

**PARTIAL JUDGMENT**

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS HEREBY ORDERED** that the following Defendants are hereby **DISMISSED WITHOUT PREJUDICE** from this action for lack of proper service of process: (1) Steven Brown; (2) Frankie Bell; (3) Sears Roebuck & Company; (4) D. Whitlock, individually and in his official capacity as a City of Gastonia Police Officer; (5) Gaston County; (6) Alan Cloninger, individually and in his official capacity as the Sheriff of Gaston County; (7) Gaston County Emergency System; (8) Jan Winters, individually and in his official capacity as the County Manager for Gaston County; (9) John Doe 1, individually and in his official capacity as an employee of the Gaston County Emergency Management Services; (10) John Doe 2, individually and in his official capacity as an employee of the Gaston County Emergency Management Services; (11) John Doe 3, individually and in his official capacity as a Deputy Sheriff of the Gaston County Sheriff Department; (12) John Doe 4, individually and in his official capacity as a Deputy Sheriff for the Gaston [*49] County Sheriff Department; (13) American Service Group d/b/a Prison Health Services; and (14) IPC International.

**IT IS FURTHER ORDERED** that the Defendant Watson Insurance Agency is **DISMISSED WITHOUT PREJUDICE** from this action for Plaintiff's failure to prosecute her claim against said Defendant.

**IT IS SO ORDERED.**

Signed: January 23, 2008

/s/ Martin Reidinger

Martin Reidinger

United States District Judge



BENJAMIN F. RUSSELL, Plaintiff, v. MICHAEL J. GENNARI, PH.D., et. al., Defendants.

CASE NO. 1:07cv793

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

*2007 U.S. Dist. LEXIS 83771*

November 8, 2007, Decided
November 8, 2007, Filed

**SUBSEQUENT HISTORY:** Affirmed by *Russell v. Gennari, 2008 U.S. App. LEXIS 15012 (4th Cir. Va., July 15, 2008)*

**COUNSEL:** [*1] Benjanmin F. Russell, By Joseph Michael Russell as his next friend, Plaintiff, Pro se, Falls Church, VA.

For Michael Gennari, Ph.D., Defendant: Armand Bucaycay Alacbay, Hancock Daniel Johnson & Nagle PC, Fairfax, VA.

For Anthem Health Plans of America, Inc., Defendant: Adam Peter Feinberg, LEAD ATTORNEY, Anthony John Trenga, Miller & Chevalier, Chtd, Washington, DC.

**JUDGES:** Gerald Bruce Lee, United States District Judge.

**OPINION BY:** Gerald Bruce Lee

**OPINION**

**MEMORANDUM ORDER**

THIS MATTER is before the Court on Defendants Michael J. Gennari ("Dr. Gennari") and Anthem Health Plans of Virginia Inc.'s ("Anthem") Motions to Dismiss, and Defendant Gennari's Motion to Strike. This case concerns Plaintiff's allegations, brought by his father as his next friend, that Dr. Gennari and Anthem (1) committed professional negligence and (2) breached fiduciary duties while providing psychological treatment to the Plaintiff. Following removal from Fairfax County Circuit Court, both Defendants move the Court to dismiss the complaint for failure to state a claim.

There are five (5) issues before the Court: (1) whether Plaintiff's professional negligence claims against Defendants Dr. Gennari and Anthem are barred by Virginia's two-year statute [*2] of limitations on personal injury actions, when the alleged injury occurred on or before November 30, 2003, and the complaint was filed on August 25, 2006; (2) whether Plaintiff's breach of fiduciary duty claims against Defendants Dr. Gennari and Anthem are barred by Virginia's two-year statute of limitations if such actions accrue when the plaintiff discovers or should have discovered the breach, and the complaint was filed on August 25, 2006; (3) whether Plaintiff's Complaint against Defendants Dr. Gennari and Anthem is a legal nullity, where a non-attorney parent is attempting to litigate his child's claims *pro se,* [*3] and the complaint is signed by the parent, rather than a member of the Virginia State Bar or the Plaintiff himself as required by the Virginia Rules; (4) whether Plaintiff's state law claims against Defendant Anthem are preempted by the Federal Employee Health Benefits Act

(FEHBA) where the claims relate to the Defendant's administration of a FEHBA health insurance plan; and (5) whether Defendant Anthem is immune from Plaintiff's breach of fiduciary duty claim where the claims relate to Anthem's investigation of fraud in a federally subsidized health insurance program.

The Court GRANTS Defendants' Motions to Dismiss, because both Plaintiff's professional negligence and breach of fiduciary duty claims are governed by a two year statute of limitations, the statute was not tolled by any intervening event, and two years elapsed before suit was filed. As alternative grounds for dismissal the Court further holds that: the original Complaint, signed by Plaintiff's non-attorney father, was invalid under Virginia's procedural rules and should not be revived following removal; both of Plaintiff's claims against Anthem are preempted by federal statute because they relate to Anthem's administration [*4] of a federal government health plan; and Anthem is officially immune from Plaintiff's breach of fiduciary duty claim because it relates to Anthem's investigation of fraud against the government.

## I. BACKGROUND

Plaintiff Benjamin F. Russell is the son of Joseph and Nancy Russell, who were divorced prior to these events. He receives health benefits through his father's federal employee health plan, which is administered by Defendant Anthem pursuant to an Office of Personnel Management ("OPM") contract. (Def. Anthem's Mem. Supp. 1, 6.) This OPM-Anthem contract is authorized and governed by the Federal Employee Health Benefits Act (FEHBA). *See 5 U.S.C. §§ 8901(7), 8902-8903, 8913.*

Between May and October of 2003, Ms. Russell took Benjamin to see Defendant Dr. Michael Gennari for psychological counseling. (Compl. P 8.) When Mr. Russell found out about the visits, he e-mailed his ex-wife and demanded that the "treatment should stop immediately" until he was provided details about the nature of and reasons for Benjamin's visits. (*Id.* P 11.) On August 25, 2003, after receiving a letter from Anthem saying Benjamin was approved for additional visits, Mr. Russell phoned Anthem to inform them that [*5] Dr. Gennari had been submitting fraudulent claims. (*Id.* PP 26-29.) The following day, a case manager at Anthem called Dr. Gennari and informed him that he was being investigated for potentially fraudulent billing. (*Id.* P 30.) Dr. Gennari immediately drafted a letter to Ms. Russell

stating that he was forced to end his treatment of Benjamin because of Mr. Russell's interference and allegations. (*Id.* P 31.)

On August 25, 2006, Plaintiff filed a Complaint in Fairfax County Circuit Court alleging (1) professional negligence by Anthem and Dr. Gennari; and (2) breach of fiduciary duty by Anthem and Dr. Gennari. (*Id.* 12, 14.) Following removal to this Court, both Defendants move that the complaint be dismissed for failure to state a claim.

Both Anthem and Dr. Gennari argue that Plaintiff's complaint is time-barred by the Virginia statute of limitations; and Plaintiff's complaint is a legal nullity because it is signed by his father, rather than by the Plaintiff himself or a member of the Virginia State Bar.

Additionally, Anthem argues that Plaintiff's state claims against the company are preempted by the FEHBA statute; and Anthem is immune from state claims related to its administration of a [*6] federally subsidized insurance program.

Plaintiff argues that (1) the complaint is not time barred; because his cause of action did not accrue until Dr. Gennari turned over Plaintiff's medical records, and the statute of limitations was tolled during a seventeen-month Office of Personnel Management investigation; (2) if the Complaint is a legal nullity, the Court should allow Plaintiff time to retain counsel rather than dismiss the case; and (3) informing Dr. Gennari that he was being investigated for fraudulent billing was not "related to the administration of a FEHBA plan," and therefore Anthem cannot invoke federal preemption or (4) immunity under the FEHBA statute.

## II. DISCUSSION

### A. Standard of Review

Under *Fed. R. Civ. P. 12(b)(6)*, a plaintiff's complaint may be dismissed for "failure to state a claim upon which relief can be granted." In his complaint a plaintiff is only obligated to make a "short and plain statement of his claim" that will give the defendant fair notice of the grounds for the suit. *See Fed. R. Civ. P. 8(a)(2)*; *Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)*. In deciding a 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the complaint, [*7] and views them in the light most

favorable to the plaintiff. *Id. at 1965* (noting complaint may proceed even though recovery seems improbable, as long as the factual allegations at least suggest "a right to relief above the speculative level.") And while a 12(b)(6) analysis is properly focused on the sufficiency of the complaint, and not the presence of potential defenses, dismissal on the basis of an affirmative defense is appropriate "if all facts necessary to the . . . defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)* (citing *R. F. & P. R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).*

## B. Analysis

(1) *Statute of Limitations (Anthem and Dr. Gennari)*

(i) *Professional Negligence*

The Court grants Defendants' Motions to Dismiss Count I of Plaintiff's Complaint, professional negligence, because his claims are time-barred by Virginia's statute of limitations. Professional negligence claims are governed by *Virginia Code § 8.01-243*, which provides "every action for personal injuries . . . shall be brought within two years after the cause of action accrues." *Va. Code Ann. § 8.01-243* (2007). Personal injury claims accrue when the [\*8] injury occurs. *Castillo v. Emergency Medicine Associates, 372 F.3d 643, 646 (4th Cir. 2004)* (citing *Va. Code Ann. § 8.01-230*). Failure to comply with the statute of limitations is a recognized basis for 12(b)(6) dismissal, with the Fourth Circuit noting "a . . . showing that the statute . . . has run . . . is the most common situation in which the affirmative defense appears on the face of the pleading." *Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996)* (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 352 (1990)).

Here, Plaintiff's last contact with the Defendants, and thus the last date on which any injury may have occurred, was on November 30, 2003. However the complaint was not filed until August 25, 2006 - roughly two years and nine months after the negligence cause of action accrued, and well outside of the two years allowed by *§ 8.01-243*. Plaintiff argues that *Virginia Code § 8.01-229(E)(1)* [1] tolled the statute during the seventeen-month OPM investigation into these issues. Plaintiff's argument is without merit - *Virginia Code § 8.01-229(E)(1)* applies only to "judicial proceedings in the district or circuit courts," not administrative [\*9] proceedings. *Musick v.*

*Codell Constr. Co., 4 Va. App. 471, 358 S.E.2d 739, 740, 4 Va. Law Rep. 144 (Va. Ct. App. 1987)*. Accordingly, Defendant's Motions to Dismiss Plaintiff's professional negligence claims are granted.

> 1    **"Except as provided in subdivision 3 of this subsection, if any action is commenced within the prescribed limitation period and for any cause abates or is dismissed without determining the merits, the time such action is pending shall not be computed as part of the period within which such action may be brought, and another action may be brought within the remaining period."** *Va. Code § 8.01-229(E)(1).*

(ii) *Breach of Fiduciary Duty*

The Court grants Defendants' Motions to Dismiss Count II of Plaintiff's Complaint, breach of fiduciary duty, because his claims are time-barred by Virginia's statute of limitations. Breach of fiduciary duty claims are subject to Virginia's catchall two year statute of limitations. *FDIC v. Cocke, 7 F.3d 396, 402 (4th Cir. 1993)* (applying *Va. Code Ann. § 8.01-248*, for "[e]very personal action, for which no limitation is otherwise prescribed."). Although the limitations period is the same as for personal injury claims, breach of fiduciary duty claims do not accrue until "the breach [\*10] was or should have been discovered by the plaintiff." *Int'l. Surplus Lines Ins. Co. v. Marsh & McLennan, Inc., 838 F.2d 124 (4th Cir. 1988)*. As noted above, failure to comply with the statute of limitations is a recognized basis for 12(b)(6) dismissal, with the Fourth Circuit noting "a . . . showing that the statute . . . has run . . . is the most common situation in which the affirmative defense appears on the face of the pleading." *Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996)* (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 352 (1990)).

It is difficult to infer from the Complaint that the Defendants actually had any fiduciary duties towards the Plaintiff. Even on a 12(b)(6) motion, the court is not required to credit such conclusory statements, which the Supreme Court has characterized as a "legal conclusion couched as . . . a factual allegation." *Twombly, 127 S. Ct. at 1965*. However, if the Court does assume the existence of the fiduciary duties alleged in Count II of Plaintiff's complaint, dismissal under the statute of limitations is appropriate. It is unclear exactly when any such claims

would have accrued, but it could [*11] not have been later than November 2003. Though Plaintiff asserts that Dr. Gennari's failure to turn over medical records to his father delayed his discovery of the breach, (Pl.'s Mem. Opp. 2-3), he points to no facts in the medical records relevant to the claim. More importantly, Plaintiff reveals in the same filing that OPM initiated an (inconclusive) investigation of these claims in November, 2003. (*Id.* at 3.) Obviously Plaintiff cannot assert his claims were concealed from him at the time he began to pursue them administratively; therefore the statute began to run sometime in November, 2003 at the latest. Because the Complaint was not filed until August 25, 2006, two years and nine months later, it is barred by the statute of limitations. *Va. Code Ann. § 8.01-248* (2007). Accordingly, Defendants' Motions to Dismiss Count II of the complaint, Plaintiff's breach of fiduciary duty claims, are granted.

   (2) *Pro-se Complaint signed by a Non-attorney Parent (Anthem and Dr. Gennari)*

   Additionally, the Court grants Defendants' Motions to Dismiss the Complaint because it is not signed by an attorney nor a Plaintiff proceeding pro se, and is therefore a legal nullity. Because the filing of the [*12] complaint preceded removal, it is governed by Virginia's procedural rules. 14 James Wm. Moore *et al., Moore's Federal Practice § 81.04[2]* (3d ed. 2007). Those rules state: "except where a party conducts his own case, a pleading, or other paper required to be served . . . shall be invalid unless it is signed by a member of the Virginia State Bar." *Va. S. Ct. Rule 1A:4.* The Fairfax Court applied this rule in holding that a motion filed by a non-attorney on a behalf of his wife and daughter was a "legally ineffective predicate for a court proceeding" and dismissed the case. *Roubik v. White, 47 Va. Cir. 90, 91-93 (Va. Cir. 1998).* More recently, the Virginia Supreme Court upheld dismissal where a pleading was signed by an estate administrator on behalf of the decedent. *Kone v. Wilson, 272 Va. 59, 630 S.E.2d 744, 746 (Va. 2006)* ("[the administrator's] surrogate status precluded a *pro se* filing because he was acting in a representative capacity for the true parties in interest."). In 2005, the Fourth Circuit reviewed the issue of parent-representative litigation and noted that it was "aware of no Virginia case authorizing a non-attorney parent to litigate his minor children's claims before a [*13] court of law." *Myers v. Loudoun County Public Schools, 418 F.3d 395, 401 (4th Cir. 2005).* The Court is

aware of no cases raising this particular issue in a post-removal motion to dismiss. However, the Court finds that it is an appropriate basis for a 12(b)(6) motion, as the only relevant fact (the signature) is certainly plain on the "face of the complaint." *Goodman, 494 F.3d at 464.*

   Although Plaintiff's father has the right to pursue claims on behalf of his son, he does not have the right to act as his son's attorney, and has no claims of his own to pursue *pro se.* Thus, the complaint signed by him as "next friend" of the Plaintiff was legally invalid when submitted. Plaintiff cites two Eastern District of Virginia cases in which the court appointed counsel instead of dismissing claims brought by parents on a minor's behalf. *See Brown v. Ortho Diagnostic Sys., Inc., 868 F. Supp. 168* (E.D. Va. 1994); *Gallo v. United States, 331 F. Supp. 2d 446 (E.D. Va. 2004).* However, those cases were filed in federal court and governed by federal, not state, procedural rules. *Id.* Here the procedural flaw arose prior to removal, and is thus governed by state law. *Morton v. Meaghar, 171 F. Supp. 2d 611, 613-14 (E.D. Va. 2001)*; [*14] 14 James Wm. Moore *et al., Moore's Federal Practice § 81.04[2]* (3d ed. 2007). As Plaintiff's complaint is invalid under Virginia law, and would be dismissed in Virginia Circuit court, it should be dismissed here as well. As this Court has said, "it is contrary to the correlative doctrines of comity and federalism to allow a case that would be dead under state law to be revived upon removal." *Morton, 171 F. Supp. 2d at 615* (refusing to allow correction of defective service of process following removal from state court). Because Plaintiff failed to file a legally valid Complaint under the Virginia rules, and the case was "dead" prior to removal, Defendants' Motions to Dismiss Plaintiff's Compalint are granted.

   (3) *Preemption of State Law Claims by FEHBA Statute (Anthem)*

   Alternatively, the Court grants Defendant Anthem's Motion to Dismiss the Complaint because Plaintiff's claims are preempted by the terms of the Federal Employee Health Benefits Act ("FEHBA"). Under the FEHBA statute, state law claims that "relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits)" are preempted by the terms of the OPM-carrier contract. *5 U.S.C.A. § 8902(m)(1).* [*15] Numerous courts have upheld the validity and breadth of this provision, (*see* Def. Anthem's

Mem. Supp. 10-11), and this Court has held that "any claim that even marginally challenges the administration of a FEHBA-based plan" is completely preempted. *Zukor v. Inova Health Care Services, 2000 U.S. Dist. LEXIS 21998 at *8 (E.D. Va., Feb. 25, 2000); see also Myers v. United States, 767 F.2d 1072, 1074 (4th Cir. 1993)* ("state law is preempted where a federal employees' insurance policy and the regulations pertaining thereto are concerned"). Specifically, both negligence and breach of fiduciary duty claims against FEHBA carriers (like those asserted by Plaintiff) have been held to be completely preempted. *See Kight v. Kaiser Found. Health Plan of the Mid-Atlantic, 34 F. Supp. 2d 334, 341 (E.D. Va. 1999)* (negligence and fraud claims preempted: "[a]ny application of state law could potentially impact the administrative decisions made by . . . carriers, which would ultimately affect the underlying contracts between the government and the carriers."); *Bridges v. Blue Cross Blue Shield Assoc., 935 F. Supp. 37, 44 (D.D.C. 1996)* ("controlling precedent dictates the conclusion that [FEHBA carrier] [*16] BCBSA does not have a fiduciary duty to its federal enrollees.")

The grounds for Plaintiff's negligence and fiduciary duty claims against Anthem are not entirely clear, but he appears to assert that Anthem (1) failed to protect his interests while he was being treated by Dr. Gennari; (2) provided benefits to Plaintiff's mother rather than to him; and/or (3) acted improperly in the investigation of Dr. Gennari's purported fraud. (*See generally* Compl. 3-15.) All of these claims are direct challenges to Anthem's administration of Plaintiff's FEHBA health plan, and cannot be interpreted otherwise. Plaintiff contends that a phone call between Dr. Gennari and an Anthem employee about the company's fraud investigation was "not related to the administration of a FEHBA plan," and that this saves the claim from preemption. (Pl.'s Opp. 4.) This argument is wholly without merit, as the call was from a FEHBA carrier to a FEHBA provider to discuss possible fraud in the provision of benefits to a FEHBA enrollee. Because both of Plaintiff's claims are grounded in state law and relate to the administration of a FEHBA health plan, they are statutorily preempted. Therefore, Anthem's Motion to Dismiss [*17] is granted.

(4) *Immunity of FEHBA Administrators Investigating Fraud (Anthem)*

The Court also grants Defendant Anthem's Motion to Dismiss Count II of the Complaint (breach of fiduciary

duty), because Anthem enjoys official immunity from suit on the claim. Governmental discretionary function immunity extends to private contractors when they are participating in the investigation of fraud against government subsidized programs. *Mangold v. Analytic Servs., Inc., 77 F.3d 1442, 1448 (4th Cir. 1996)* (holding discretionary function immunity extends to those conducting or even just cooperating with such an investigation); *see also Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 73 (2d Cir. 1998)* (holding a private Medicare carrier officially immune from claims related to a fraud investigation). Governmental immunity is a proper basis for 12(b)(6) dismissal. *Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir. 1997).*

Count II of the Complaint (breach of fiduciary duty) consists entirely of allegations that Anthem did not properly investigate the billing fraud reported by Plaintiff's father. (*See* Compl. P 44a-d.) These actions plainly fall within the scope of Anthem's official immunity. *See Pani, 152 F.3d at 73* [*18] (investigation of Medicare fraud "precisely the type of delegated discretionary function . . . public interest requires to be protected by immunity"). Again, Plaintiff asserts than the Anthem employee who phoned Dr. Gennari to inform him of the investigation was not acting in an "official capacity," and therefore Anthem is not immune. (Pl.'s Opp. 4.) For the reasons noted above in section 3 this argument has no merit. Because the claim relates to actions for which Anthem is officially immune, Defendant Anthem's Motion to Dismiss Count II (breach of fiduciary duty) is granted.

### III. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motions to Dismiss. Both Plaintiff's professional negligence claim and his breach of fiduciary duty claim are barred by the applicable statutes of limitations. Also, Plaintiff's Complaint was a legal nullity when filed in state court, as it was not signed by a member of the Virginia State Bar nor a Plaintiff proceeding *pro se* - it should not be given legal validity upon removal that it did not have when originally filed. Finally, both of Plaintiff's claims against Anthem are preempted by federal statute, and the breach of fiduciary duty claim [*19] against Anthem is barred by governmental discretionary function immunity.

As the Court has granted Defendants' Motions to Dismiss, Dr. Gennari's 12(f) Motion to Strike is moot.

Accordingly it is hereby

ORDERED that Defendant Anthem's Motion to Dismiss is GRANTED. It is further

ORDERED that Defendant Gennari's Motion to Dismiss is GRANTED. It is further

ORDERED that Defendant Gennari's Motion to Strike is DENIED.

This case is dismissed and the Clerk is directed to enter final judgment pursuant to *Fed. R. Civ. Pro. 58* in favor of the defendant.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this 8<th> day of November, 2007.

**/s/**

**Gerald Bruce Lee**

**United States District Judge**

Alexandria, Virginia

11/8/07

**FINAL JUDGMENT**

THIS MATTER is before the Court on Defendants

Michael J. Gennari and Anthem Health Plans of Virginia Inc.'s Motions to Dismiss. In its previous Memorandum Order of November 2, 2007, the Court granted Defendants' Motions to Dismiss. From the foregoing, it is hereby

ORDERED that JUDGMENT is ENTERED in favor of Defendant Michael J. Gennari and against Plaintiff Benjamin F. Russell. It is further

ORDERED that JUDGMENT is ENTERED in favor of Defendant Anthem [*20] Health Plans of Virginia Inc. and against Plaintiff Benjamin F. Russell.

The Clerk is DIRECTED to ENTER JUDGMENT pursuant to *Federal Rule of Civil Procedure 58*.

The Clerk is directed to forward a copy of this Order to Counsel.

Entered this 8<th> day of November, 2007.

/s/

Gerald Bruce Lee

United States District Judge

Alexandria, Virginia

11/8/07